**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**ROSE HILL CUMBERLAND**
**PRESBYTERIAN CHURCH**                                                                          **PLAINTIFF**

**VS.**                                        **NO. 4:23-CV-00335 LPR**

**CHURCH MUTUAL**
**INSURANCE COMPANY SI**                                                         **DEFENDANT**

<u>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

Comes the Plaintiff, Rose Hill Cumberland Presbyterian Church, and for its motion for

summary judgment, states:

1.      Plaintiff is entitled to summary judgment under Federal Rules of Civil Procedure

56 because there is no genuine dispute regarding any material fact, and it is entitled to judgment

as a matter of law.

2.      It should be undisputed that Defendant sold Plaintiff a policy of insurance and

Defendant has a duty to defend.

3.      A brief in support is being filed contemporaneously with this motion and is

incorporated by reference along with the following exhibits.

4.      Exhibits:

Exhibit A, Lien filed against Plaintiff

Exhibit B, Lawsuit filed against Plaintiff

Exhibit C, Affidavit of Elizabeth Pace

Exhibit D, Business Records Affidavit of Dalton Schmidt, Service Restoration

Exhibit E, Bates No. 902, Defendant's acceptance of claim

Exhibit F, Notice of Loss

Exhibit G, Policy Declarations Page

Exhibit H, Emails from Plaintiff's attorney requesting Defendant provide a defense

Exhibit I, relevant portions of the subject insurance policy

Exhibit J, Sections I and IV of Defendant's insurance policy requiring Defendant to either pay or defend Plaintiff.

WHEREFORE, Plaintiff requests this Court grant its motion for summary judgment, and for all other proper relief, including attorney's fees.

Respectfully submitted,

John Ogles
Arkansas Bar No. 89003
Texas Bar No. 00797922
OGLES LAW FIRM, P.A.
200 S. Jeff Davis
P.O. Box 891
Jacksonville, AR 72078
(501) 982-8339
jogles@aol.com

## Contractors Notice of Intention
## To File Claim of Lien
(This is not a Mechanic's Lien. It is a notice required by state law.)

Date: December 13, 2022

| To Owner or Reputed Owner: | From Lien Claimant: |
|---|---|
| Name: Rosehill Cumberland Church | Name: Service Restoration, Inc. |
| | Address: 300 W. 83rd Street |
| Address: 2133 Highway 83 North | Bloomington, MN 55420 |
| Monticello, AR 71655 | |
| | Phone: 612-223-6160 |

**Please take notice that the undersign lien claimant intends to file a Mechanic's Lien against your property if payment is not made for moneys owed as follows:**

**Project Name:** Rosehill Water Mitigation and Mold Removal Project

**Property Subject to Lien:** 2133 Highway 83 North, Monticello, AR 71655

**General description of construction services furnished by Lien Claimant:**

Labor and materials for water mitigation work and mold removal.

**Amount Due: Through 12/13/2022 is $232,215.09.** Unpaid invoice(s) attorney fees and court cost will be requested.

**Name and address of Prime contractor or subcontractor with whom the undersigned entered into a contract order with:**
Rosehill Cumberland Church Contact Jacob Hayes
2133 Highway 83 North
Monticello, AR 71655

The above- described work was provide to your property, at your instance, by the Claimant. If payment is not made within ten days (10) of receipt of this demand, Claimant intends to file a Mechanics Lien, without further notice. If you have any questions or wish to make payment arrangements, please contact Service Restoration, Inc. immediately.

Authorized agent for Service Restoration, Inc.

Exhibit ___A___

**Service Restoration, Inc.**
300 W. 83rd Street
Bloomington, MN 55420
612-223-6160

December 13, 2022

Rosehill Cumberland Church
2133 Highway 83 North
Monticello, AR 71655

Dear Rosehill Cumberland Church :

Service Restoration, Inc. has begun the MECHANIC'S LIEN process for the labor and
material provided to 2133 Highway 83 North, Monticello, AR 71655 .

We have enclosed a statement for your review. This notice states if payment is not made
within ten days (10) of receipt of this demand, Claimant intends to file a Mechanic's
Lien, without further notice. If you have any questions or wish to make payment
arrangements, please contact Service Restoration, Inc.

A Mechanic's Lien on your property has multiple negative consequences against you as a
property owner. A lien on your property will make it difficult to sell or refinance your
home. In addition, a lien against your property can lead to a foreclosure lawsuit and
possible loss of your property.

If you do have questions about the notice you should call your contractor or project
manager.

Thank you,

Authorized Agent for Service Restoration, Inc.

EXHIBIT ___B___

Filed For Record
Drew County, AR
Beverly Burks, Circuit Clerk
By_____

JUL 1 7 2023

AM 1/2/3/4/5/6/7/8/9/10/11/12PM

## IN THE CIRCUIT COURT OF DREW COUNTY, ARKANSAS
### CIVIL DIVISION

SERVICE RESTORATION INC.                                    PLAINTIFF

VS.                          CASE NO. CV-23-128-3

ROSE HILL CUMBERLAND
PRESBYTERIAN CHURCH                                        DEFENDANT

### COMPLAINT

Plaintiff Service Restoration Inc. (d/b/a Service Restoration USA), for its Complaint against Defendant Rose Hill Cumberland Presbyterian Church states and alleges the following:

1.    Plaintiff ("Service Restoration") is a Minnesota corporation registered with the Arkansas Secretary of State as a foreign corporation. Plaintiff is in the business of providing emergency disaster cleanup and restoration services to property owners.

2.    This case arises from a time-and-materials contract between Service Restoration and Defendant Rose Hill Cumberland Presbyterian Church for restoration services at Rose Hill's church property at 2133 Highway 83 North, Monticello, Drew County, Arkansas. A copy of the contract is attached hereto and incorporated herein as Exhibit 1.

3.    This Court has jurisdiction over the subject matter of Service Restoration's Complaint and over the parties herein under Ark. Code Ann. § 16-13-201. Venue is proper in this Court under Ark. Code Ann. § 16-60-111.

4.    On July 27, 2022, a church building belonging to Rose Hill Cumberland Presbyterian Church (hereinafter, "Rose Hill") sustained considerable damage due to flooding

Exhibit ___B___

and water infiltration caused by broken plumbing. Rose Hill immediately contacted its property and casualty insurer, Church Mutual Insurance, S.I., to start a claim for assistance in mitigating the damages and loss and for restoration services to the property. Church Mutual opened a claim file for Rose Hill and assigned it claim number 001-01-251075.

6.     On time-and-materials contracts signed by Jacob Hayes on Rose Hill's behalf, Service Restoration commenced work on or about July 27, 2022. Service Restoration performed water mitigation, mold removal, contents restoration and storage services for several weeks, until approximately October 3, 2022. Service Restoration completed the project with sampling, laboratory testing, and reporting on mold and asbestos levels in November 2022.

7.     Upon completion of the project Service Restoration submitted four invoices to Rose Hill and Church Mutual for payment for services rendered. The invoices are attached hereto and incorporated herein as Exhibits 2 through 5. The total of the invoices was $238,740.09.

9.     Church Mutual issued payment to Rose Hill and Service Restoration in the amount of $128,672.52. Rose Hill withheld $5,000.00 from this payment and forwarded the balance of $123,672.52 to Service Restoration. Rose Hill continues to carry a balance on its account with Service Restoration in the amount of $115,067.57.

10.     Service Restoration timely filed its mechanics and materialmen's lien against Rose Hill's property and made demand on Rose Hill for the full amount of its invoices.

### Count 1 – Breach of Contract against Plaintiff

11.     Service Restoration and Rose Hill entered a valid, enforceable contract for emergency disaster mitigation and restoration services at Rose Hill's facility in Monticello, Arkansas. A copy of the contract is attached as Exhibit 1.

12.     Service Restoration fully performed on all of its contractual obligations and invoiced Rose Hill according to the terms and prices Rose Hill agreed to pay Service Restoration for its services.

13.     Rose Hill has breached its contract with Service Restoration by failing to pay Service Restoration's invoices when due.

14.     As a result of Rose Hill's breach of contract Service Restoration sustained damages in the amount of $115,067.57 plus its costs and attorney fees incurred as a result of having to bring this action.

WHEREFORE, Plaintiff Service Restoration Inc. prays that this Court enter judgment in its favor against Defendant Rose Hill Cumberland Presbyterian Church in the amount of $115,067.57, plus its costs and a reasonable attorney fee incurred as a result of having to bring this cause of action to collect on its open account.

Respectfully submitted,

SERVICE RESTORATION INC.

By: _____
Monty V. Baugh (Ark. Bar No. 2008138)
Monty V. Baugh, PLC
900 South Shackleford Road, Suite 300
Little Rock, AR  72211
(501) 690-5086
monty@montybaugh.com

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ROSE HILL CUMBERLAND**
**PRESBYTERIAN CHURCH**                                              **PLAINTIFF**

**VS.    NO. 4:23-CV-00335 LPR**

**CHURCH MUTUAL**
**INSURANCE COMPANY SI**                                              **DEFENDANT**

<u>**AFFIDAVIT**</u>

**STATE OF ARKANSAS**

**COUNTY OF DREW**

I, Elizabeth Pace, make the following statement on oath:

My name is Elizabeth Pace. I am over the age of 18 years. I graduated from the University of Arkansas at Monticello (UAM) in 1987. I have worked at UAM since 1988.   I am currently employed as the Director of Procurement Services.

I am an Elder at Plaintiff Rose Hill Cumberland Presbyterian Church. I have been a member of Rose Hill church since 1989 to the best of my knowledge.

On July 23, 2022, we discovered water damage at our church. I spoke with Church Mutual representative Abelardo DeJesus on July 26, 2022 and was instructed by Mr. DeJesus to hire a restoration company immediately. I asked Jacob Hayes, the Chair of the Building and

1

Exhibit   C

Grounds Committee at Rose Hill church to find a restoration company. Mr. Hayes hired Service Restoration.

Abelardo DeJesus asked me to send pictures of the damage from the flood so I did.

In September or October 2022, our church received a check for $45,000 for repairs and reconstruction of the church.

In October 2022, I had many conversations with Bambi Hickey at Church Mutual concerning the amount of the claim.   Church Mutual requested that our contractor submit a detailed estimate of the repairs and reconstruction of the church.

Church Mutual paid approximately $231,000 that was used to pay toward the repairs and reconstruction of the church.

Defendant Church Mutual never told me that this damage was not covered. Defendant never told me this claim was not covered by the insurance that our church paid an annual premium of $6,948.00.

Further the affiant sayeth not.

_Elizabeth Pace_

Elizabeth Pace

SUBSCRIBED AND SWORN to before me this __13__ day of ___March___, 2024.

_Sage Loyd_

Notary Public

My Commission Expires:

2/28/26

2

SAGE LOYD
NOTARY PUBLIC, ARKANSAS
DREW COUNTY
COMMISSION # 12347109
MY COMMISSION EXP. 02/28/2026

## **BUSINESS RECORDS AFFIDAVIT**

STATE OF MINNESOTA   )
                          )ss:
COUNTY OF HINNEPIN   )

The undersigned, being first duly sworn upon her oath, deposes and states as follows:

1. My name is Dalton Schmidt. I am over 18 years of age and competent to testify.

2. I am a custodian of records for Service Restoration Inc.

3. I have personal knowledge of the facts to which I testify herein.

4. Attached hereto, collectively as Exhibit A, are thirty (30) pages of records of Service Restoration Inc., regarding the account of Rose Hill Cumberland Presbyterian Church in Monticello, Arkansas.

5. The said pages of records are kept by Service Restoration Inc. in the regular course of business.

6. It is the regular practice of Service Restoration Inc. for employees or representatives with knowledge of the act, event, incident, order, transaction, invoice, condition, photo, video recording, audio recording, opinion, or diagnosis, to make the record, or to transmit information thereof to be included in such record.

7. The said records were made at or near the time of occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters.

8. The said records attached hereto are exact duplicates of the originals.

Exhibit  D 

FURTHER, AFFIANT SAYETH NOT.

By: _____

Dalton Schmidt, Affiant

Subscribed and sworn to or affirmed before me this 13 day of March, 2024, by Dalton Schmidt, personally known to me or sufficiently proven.

_____

Notary Public

My Commission Expires:

01/31/2027



RYAN JAMES MEYERS
Notary Public-Minnesota
My Commission Expires Jan. 31, 2027

## ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH
## EMAIL CHAIN WITH INSURANCE ADJUSTERS

**07.29.22** - Mr. DeJesus was notified of mold growth and asked for a photo report. That report and additional photos were sent the same day

**08.02.22** - Wes included Mr. DeJesus and all parties involved stating microbial growth was found and that once found we stopped air movement and contacted the insurance company as well as Atoka Environmental (who Church Mutual has previously used). Mr. DeJesus was notified that Dehumidifiers and Air Scrubbers would continue to run to stabilize the environment.

**08.03.22** - Wes asked Mr. DeJesus if Tim Toler (the independent adjuster) had made it onsite yet and that Atoka Enviromental would be arriving this week to put together a report.

**08.03.22** - Wes sent additional photos to Mr. DeJesus showing present microbial growth. At the bottom of the email, there is a note from the project management system stating Wes called Mr. DeJesus to confirm coverage as Tim Toler was supposed to be on site on 08.02.22, as Mr. DeJesus stated coverage could not be confirmed nor denied until Tim Toler was onsite.

**08.04.22** - Wes emailed Mr. DeJesus stating Atoka Enviromental would be on site on 08.05.22 to assess the environment, potentially perform an asbestos test and air quality test if they deem it necessary, but the report would take a few days. Wes notified Mr. DeJesus of the number of pieces of equipment still stabilizing the environment and what the present humidity level was.

**08.11.22** - Wes emails Mr. DeJesus asking if Tim Toler has made it onsite yet or if his report has been submitted. ATOKA also just received the air quality report, and it was not good, but they needed authorization to write a protocol remediation. Wes also notified Mr. DeJesus that equipment was still running to continue to stabilize the environment.

**08.15.22** - Wes notified Mr. DeJesus that the Atoka report was back and submitted to Mr. DeJesus. Wes asked if coverage was confirmed yet as Tim Toler was supposed to submit his report 08.15.22. Atoka protocol report attached, which also states stabilization equipment is continue to be needed.

**08.17.22** - Wes followed up with Mr. DeJesus stating that they had just finished a call with each other. In the email, it outlines that Mr. DeJesus still hasn't received Mr. Toler's report and you would need time to review once that was submitted. Wes notified Mr. DeJesus that the equipment continues to run to stabilize the environment.

**08.24.22** - Wes reaches out to Mr. DeJesus superior stating he has called multiple times since 08.17.22 but has not heard anything. Wes receives an out-of-office reply from the superior, but Mr. DeJesus also responds stating he would call him later.

**08.24.22** - Wes followed up with Mr. DeJesus stating that they had just finished a call with each other (as noted right before this). In the email, Wes summarizes the conversation and asks Mr. DeJesus to correct any inaccuracies - "You have completed your review of the file and have confirmed coverage on this claim and confirmed $50,000 in mold coverage. All equipment that is still currently running onsite will go onto the water portion of the claim. We will begin working on our water mitigation invoice/estimate to submit to you for review and begin working on an estimate to remediate the protocol written by ATOKA. Hope to have this completed by the end of the week. We are able to begin the remediation work as soon as the preliminary estimate is approved. If you have any questions or concerns, please do not hesitate to reach me at anytime."

**08.25.22** - Wes again summarizes a call he had with Mr. DeJesus and again, asks for any inaccuracies to be corrected. "It was a pleasure speaking with you today and I appreciate your help with this claim. This is just a summary of what we discussed, please feel free to correct me if I misrepresent you.

You would like for all drywall removal per ATOKA's protocol to be put under the water portion of this claim, which we will begin removal tomorrow 8/26/22 once negative pressure is established. We will remove drywall, HEPA vacuum, and clean stud walls per CAT 3 WTR protocol. This will leave only HEPA vacuuming, cleaning, and potentially encapsulation for the mold portion of this claim. We will clean contents inside impacted work areas, as described in ATOKA's protocol, under the insured contents coverage, which will be billed separately. We will not be cleaning the church pews as you said they are to be non- salvaged, which we can remove under the water portion of the claim if this is what the insured wants done. Once the water portion of this claim is completed, we will submit all associated documentation and begin working on the mold remediation. All work is going to be billed through time and materials, we will provide weekly updates unless otherwise instructed.

**09.01.22 -** Brian Lee (Operations Manager at the time for Service Restoration) sends a summary of 08.31.22 work performed and 09.01.22 goals to Mr. DeJesus

**09.21.22 -** Invoices and documentation submitted to Mr. DeJesus

**09.21.22** - Out of office response from Mr. DeJesus stating "9/21/22 RECEIVED: Dejesus, Abelardo [EXTERNAL] I will be out of the office Friday September 16, 2022, and will be returning on Tuesday September 27, 2022. I will respond to your email when I return, should you need immediate assistance please email John Hughes at jhughes@churchmutual.com"

**11.10.22** - Emily Manske (Hoss) emails Mr. DeJesus stating she and Mr. DeJesus spoke the previous day "I wanted to touch base regarding our conversation yesterday where it was stated that the three invoices Service Restoration submitted would not be reviewed until a rebuild scope is complete.

Upon submission of each invoice detailed information including sketches, photos, notes and work scope were included. The mitigation invoice was submitted on 9/21, mold on 10/7 and contents on 10/13. We do need to be paid for our incurred costs as work has been complete for 2 months now, so

I ask that the invoices be audited so we can move forward with the claim process. Additionally, who is the audit company? We've worked with the majority of 3rd party auditors Church Mutual uses and they always ask us for additional documentation if need be. We're happy to aid them with any missing information. Please let me know once the review starts, or put me in contact with the lead auditor so we can continue to track progress

**11.10.22 (2 hours later) -** Mr. DeJesus states this job is now being sent to Code .

**11.10.22 (3 hours later) -** Ricardo Robles that time is of the essence to protect our rights and that the refusal to review anything is creating these issues. "Per our last conversation, on 11/7/22 when I submitted the supplemental invoice, you had told me that the review process was already underway and would be completed shortly. Is there something that has changed in the last 3 days? We do need to be paid shortly, we do have our lien rights that are approaching and would hate to have to protect our legal rights because you (Church Mutual) refuse to review the documentation and invoices provided. This is highly unregular as when we've dealt with Church Mutual in the past, we usually get contacted right away by one of your reviewers and they use all documentation that we submit for the basis of their review. I have never heard of any carrier needing to wait for the rebuild estimate to review mitigation invoices"

## Re: 000-01-250175 ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH

Wes Kirtley <wes.k@servicerestoration.com>

Fri 7/29/2022 3:19 PM

To:Dejesus, Abelardo <adejesus@churchmutual.com>;Ricardo Robles <ricardo.r@servicerestoration.com>;Cody Williams <Cody.W@servicerestoration.com>

Abelardo,

I just spoke with Atoka an Environmental Engineering And Environmental Consulting firm that Church Mutal primary uses in my area. They recommended for the loss site to not be disturbed until they can assess the loss site. They are scheduled to be onsite next week, but will let me know either this afternoon or Monday on a more approximate time. The equipment being used to stabilize and dry the loss site includes 5 XL dehumidifiers and 6 (2000cfm) AFDs. We have contained the impacted area and removed all impacted flooring/carpet. Please let me questions or concerns, I tired reaching out to the field adjuster Tim Toler but had to leave a voicemail.

Best Regards,

**Wes Kirtley**
**Arkansas Territory Manager**



7821 Doyle Springs Rd Suite F
Little Rock, AR 72209
**www.servicerestoration.com**
Office: (612) 235-6863 |  Direct: (501) 519-9772

---

**From:** Dejesus, Abelardo <adejesus@churchmutual.com>
**Sent:** Friday, July 29, 2022 11:06 AM
**To:** Wes Kirtley <wes.k@servicerestoration.com>
**Subject:** RE: 000-01-250175 ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH

[EXTERNAL]
Hello Wes,

I tried calling and keep getting a busy signal. Can you confirm your number 501-519-8772?

Abelardo DeJesus
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 536-5577
Main:  (800) 554-2642, Option 9, Ext. 4636
Fax: 715-539-4651
Team Leader – David Richmond (715) 804-7187 | drichmond@churchmutual.com

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

**From:** DeJesus, Abelardo
**Sent:** Friday, July 29, 2022 12:01 PM
**To:** wes.k@servicerestoration.com
**Subject:** 000-01-250175 ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH

Hello Wes,

As per our conversation please reply with your photos.


Thank you

Abelardo DeJesus
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 536-5577
Main: (800) 554-2642, Option 9, Ext. 4636
Fax: 715-539-4651
Team Leader – David Richmond (715) 804-7187 | drichmond@churchmutual.com

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

## Re: 000-01-250175 ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH

Wes Kirtley <wes.k@servicerestoration.com>

Wed 8/3/2022 11:18 AM

To:Dejesus, Abelardo <adejesus@churchmutual.com>;Ricardo Robles <ricardo.r@servicerestoration.com>;Cody Williams <Cody.W@servicerestoration.com>

Abelardo,

Good morning, I left you a voicemail in regards to this claim. I was checking to see if Tim Toler made it onsite yesterday and if coverage has been confirmed yet. Atoka will be onsite this week and I will let you know as soon as a time and day are given. We removed 1 dehumidifier from the loss site and hopefully can remove another today as we get the humidity under control.

Thanks,

**Wes Kirtley**
**Arkansas Territory Manager**



7821 Doyle Springs Rd Suite F
Little Rock, AR 72209
**www.servicerestoration.com**
Office: (612) 235-6863 | Direct: (501) 519-9772

---

**From:** Dejesus, Abelardo <adejesus@churchmutual.com>
**Sent:** Friday, July 29, 2022 11:06 AM
**To:** Wes Kirtley <wes.k@servicerestoration.com>
**Subject:** RE: 000-01-250175 ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH

[EXTERNAL]
Hello Wes,

I tried calling and keep getting a busy signal. Can you confirm your number. 501-519-8772?

Abelardo DeJesus
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 536-5577
Main:  (800) 554-2642, Option 9, Ext. 4636
Fax: 715-539-4651
Team Leader – David Richmond (715) 804-7187 | drichmond@churchmutual.com

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (Inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

**From:** Dejesus, Abelardo
**Sent:** Friday, July 29, 2022 12:01 PM
**To:** wes.k@servicerestoration.com
**Subject:** 000-01-250175 ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH

Hello Wes,

As per our conversation please reply with your photos.


Thank you

Abelardo DeJesus
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 536-5577
Main:  (800) 554-2642, Option 9, Ext. 4636
Fax: 715-539-4651
Team Leader – David Richmond (715) 804-7187 | drichmond@churchmutual.com

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

## Re: AR122-0110-WTR: 000-01-251075, Rosehill Cumberland Presbyterian Church

Jacob Ashby <jashby@hotmail.com>

Wed 8/3/2022 12:43 PM

To:Wes Kirtley <wes.k@servicerestoration.com>;Ricardo Robles <ricardo.r@servicerestoration.com>;Abby Schramer <abby.s@servicerestoration.com>

[EXTERNAL]

I was in contact with Timothy Toler yesterday and did not perform a site visit.
I hope that he and I will have the site visit soon to progress further in this process.

Attached is some evidence of growth on walls in bathrooms





Get Outlook for iOS

**From:** support@nextgearsolutions.net <support@nextgearsolutions.net> on behalf of Wes Kirtley <wes.k@servicerestoration.com>
**Sent:** Wednesday, August 3, 2022 11:10:47 AM
**To:** jashby@hotmail.com <jashby@hotmail.com>; ricardo.r@servicerestoration.com <ricardo.r@servicerestoration.com>; abby.s@servicerestoration.com <abby.s@servicerestoration.com>
**Subject:** AR122-0110-WTR: 000-01-251075, Rosehill Cumberland Presbyterian Church

8/3/22 Called Abelardo DeJesus to confirm coverage as the IA Tim Toler was suppose to make site visit yesterday. Abelardo was not able to confirm or deny coverage until Tim made a site visit. I will email Abelardo now.

## Re: 000-01-250175 ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH

Wes Kirtley <wes.k@servicerestoration.com>

Thu 8/4/2022 2:55 PM

To:Dejesus, Abelardo <adejesus@churchmutual.com>;Ricardo Robles <ricardo.r@servicerestoration.com>;Cody Williams <Cody.W@servicerestoration.com>;jashby@hotmail.com <jashby@hotmail.com>

All,

I just spoke with Atoka and they will be onsite tomorrow between 9-10am. They will be assessing the loss site and conducting asbestos and air quality test if they feel it is necessary. Hopefully will have test results first of the week. We will continue to run the 4 dehumidifiers and the 6 (2000cfm) air scrubbers until test results come back. Humidity was still over 50% today inside the impacted area. Please let me know if you have any questions or concerns.

Thank You,

Wes Kirtley
**Arkansas Mitigation Manager**
image
7821 Doyle Springs Rd Suite F,

Little Rock, AR 72209

**www.servicerestoration.com**

Office: (612) 235-6863 |   Direct: (501) 519-9772

---

**From:** Wes Kirtley <wes.k@servicerestoration.com>
**Sent:** Wednesday, August 3, 2022 11:18:13 AM
**To:** Dejesus, Abelardo <adejesus@churchmutual.com>; Ricardo Robles <ricardo.r@servicerestoration.com>; Cody Williams <Cody.W@servicerestoration.com>
**Subject:** Re: 000-01-250175 ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH

Abelardo,

Good morning, I left you a voicemail in regards to this claim. I was checking to see if Tim Toler made it onsite yesterday and if coverage has been confirmed yet. Atoka will be onsite this week and I will let you know as soon as a time and day are given. We removed 1 dehumidifier from the loss site and hopefully can remove another today as we get the humidity under control.

Thanks,

**Wes Kirtley**
**Arkansas Territory Manager**



7821 Doyle Springs Rd Suite F

Little Rock, AR 72209

**www.servicerestoration.com**

Office: (612) 235-6863 |   Direct: (501) 519-9772

**From:** Dejesus, Abelardo <adejesus@churchmutual.com>
**Sent:** Friday, July 29, 2022 11:06 AM
**To:** Wes Kirtley <wes.k@servicerestoration.com>
**Subject:** RE: 000-01-250175 ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH

[EXTERNAL]
Hello Wes,

I tried calling and keep getting a busy signal. Can you confirm your number 501-519-8772?

Abelardo DeJesus
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 536-5577
Main: (800) 554-2642, Option 9, Ext. 4636
Fax: 715-539-4651
Team Leader – David Richmond (715) 804-7187 | drichmond@churchmutual.com

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

**From:** Dejesus, Abelardo
**Sent:** Friday, July 29, 2022 12:01 PM
**To:** wes.k@servicerestoration.com
**Subject:** 000-01-250175 ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH

Hello Wes,

As per our conversation please reply with your photos.

Thank you

Abelardo DeJesus
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 536-5577
Main: (800) 554-2642, Option 9, Ext. 4636
Fax: 715-539-4651
Team Leader – David Richmond (715) 804-7187 | drichmond@churchmutual.com

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

# ATOKA., Inc,

*Professional Environmental Consulting Services*

August 12, 2022

Service Restoration
7821 Doyle Springs Road Suite F
Little Rock, AR 72209
ATTN: Wes Kirtley

RE: Limited mold testing/moisture assessment and mold remediation protocol for Rose Hill
   Cumberland Presbyterian, Monticello, AR 71655. ATOKA, Inc., reference # 22-406

Mr. Kirtley,

On August 4, 2022, Mr. Adam Henderson and Mr. Fredrick Osborn, of our Hot Springs office, performed a visual assessment, sampling for mold within wall cavities and on exposed building substructure, and checking for the presence of moisture in the southeastern portion of the structure made up of the sanctuary, the ingress and egress foyer west of the sanctuary, restrooms west of the foyer, and a hallway wrapping around the southwest section of the foyer. The assessment was performed to determine if mold was present, what type of mold was present, and the extent of water damage present related to a toilet west of the sanctuary area of the structure overflowing and remaining undiscovered for approximately one (1) week. The assessment was limited in scope to those areas mentioned above as some of the building materials had been disturbed prior to ATOKA's visit and the HVAC system(s) servicing these areas had remained in operation up to and including the time of ATOKA's visit. The central HVAC air handling unit fan(s) were in operation during the interior sampling events. The indoor wall cavity sample(s) were collected in areas representative of the identified interior areas of the structure and from potentially affected areas based on visual observations. All doors and windows to the exterior of the structure were closed.

Containment in place was limited at the time of the assessment to a piece of poly secured to the closed doorway between the east sanctuary areas and the southwest fellowship hall. Multiple dehumidifiers, air scrubbers, and a Vapor Shark were in operation at the time of the assessment. Wall cavity air sample(s) were collected on Air-O-Cell (AOC) spore trap cassettes with a high-volume air pump calibrated at ten (10) liters per minute for three (3) minutes leading to a total volume collected of thirty (30) liters per AOC manufacturer instructions. All samples collected were submitted to ATOKA Inc.'s Environmental Laboratory for microbiological (fungi) identification and quantification. Samples were analyzed by a Pan American Aerobiology Certification Board (PAACB) Mycologist # 05150160.

Per your request, ATOKA, Inc. performed a limited assessment for mold at the aforementioned structure. ATOKA, Inc., visually inspected the interior areas of concern to identify where there was visible evidence of suspected mold growth or areas where there was an indication of moisture accumulation or intrusion. The assessment included a visual assessment, collection of moisture readings, wall cavity air samples, BioTape samples, and mold analysis. The assessment included the interior affected areas and presumed unaffected areas of the southeastern portion of the structure.

During ATOKA, Inc.'s assessment, visible mold was observed on the west wall of the southwest restroom, on the west wall of the hallway wrapping around the southwest section of the foyer (BioTape B2951699), and along the base of walls within the west foyer. The BioTape sample collected from an exposed wall joist on the west wall of the hallway wrapping around the southwest section of the foyer identified a 2+, or moderate growth (26%-50% coverage), of *Aspergillus*. Insect fragments were also detected on this sample. A BioTape sample (B2993344) was collected from an exposed wall joist on the south wall of the sanctuary. This sample identified a < 1+, or no growth/miscellaneous spores (<10% coverage), of *Penicillium/Aspergillus*.

Wall cavity samples were collected from a wall cavity in the west wall of the hallway wrapping around the southwest section of the foyer (3444 2117) and a wall cavity on the northeast side of the sanctuary north of the east stage (3444 2099). Total airborne counts include viable and non-viable spores and are recorded as the total number of mold spores counted per cubic meter ($\#/m^3$) of air sampled.

Wall cavity air sample #3444 2117 was collected from a wall cavity in the west wall of the hallway wrapping around the southwest section of the foyer. Laboratory analysis found <u>unacceptable</u> total indoor airborne mold spore counts of 252,333 spores/$m^3$ comprised of a diverse population dominated by *Penicillium/Aspergillus* (244,167 spores/$m^3$) like molds, *Cladosporium* (7,500 spores/$m^3$) and *Stachybotrys* sp., (Black Mold [500 spores/$m^3$]) identified in the air sample.

Wall cavity air sample #3444 2099 was collected from a wall cavity on the northeast side of the sanctuary north of the east stage. Laboratory analysis found <u>unacceptable</u> total indoor airborne mold spore counts of 5,667 spores/$m^3$ comprised of a diverse population dominated by *Stachybotrys* sp., (Black Mold [4,667 spores/$m^3$]) and *Penicillium/Aspergillus* (1,000 spores/$m^3$) like molds identified in the air sample.

Total (viable & non-viable) airborne mold spore counts and identification (to the Genera level) are recorded in the ATOKA Inc. Environmental Laboratory report located in the appendix of this report. Molds identified and mold concentrations are representative of conditions existing in the identified areas at the time of testing.

Guidelines for interpreting wall cavity samples collected using the AOC-WC; concentrations of *Aspergillus/Penicillium* (Asp/Pen) spores (spores/$m^3$)

| Asp/Pen (spores/$m^3$) | SPORE Type | COMMENT |
|---|---|---|
| < 1,000 | Environmental fungi dominant | No evidence of a substantial water intrusion |
| 1,000 - 10,000 | Contaminant fungi dominant | Probable evidence of a substantial water intrusion |
| > 10,000 | Contaminant fungi dominant | Evidence of substantial water intrusion |

Based on these guidelines the wall cavity samples collected an analyzed indicate evidence of substantial water intrusion and mold contamination in the wall cavities sampled that could potentially adversely impact indoor air quality with respect to airborne mold spores and volatile organic compounds (VOCs) associated with mold growth.

Moisture readings were collected from multiple building components within the identified areas using a calibrated Delmhorst BD-2100 moisture meter. Readings were taken from various height levels of the materials within the identified areas of the structure. No visible indications of water damage or staining

were observed therefore, no moisture readings or sampling activities were conducted in the northeast wing, the southeast pastor's office, or the control room open to the sanctuary's air space.

Readings collected are described in the following table:

| Drywall moisture readings | |
|---|---|
| **West Wall of NW restroom** | |
| NW drywall (low) | 0.1 |
| W drywall (low) | 0.5 (borderline damp) |
| W drywall (mid) | 0.3 |
| | |
| **West Wall of Sanctuary** | |
| W drywall (low) | 0.2; 0.2 |
| | |
| **West Wall of hallway wrapping around the southwest section of the foyer** | |
| W drywall (low) | 0.1; 0.2 |
| | |
| **Southwest Stage control center** | |
| SW drywall (low) | 0.2 |
| | |
| **Northeast Stage piano center** | |
| NW drywall (low) | 0.2 |
| | |
| **Wood moisture readings** | |
| SE corner of sanctuary (low) | 10.5 |
| Center of E sanctuary wall (low) | 10.7 |
| SW corner of sanctuary (low) | 11.7 |
| NW restroom baseboard (low) | 10.4 |
| Water heater closet (low) | 7.7 |
| SW restroom entry baseboard (low) | 8.6 |
| NW corner of sanctuary (low) | 6.9 |
| N wall of sanctuary (low) | 9.6 |
| NE corner of sanctuary (low) | 8.9 |
| Base of pew near E side of sanctuary | 7.4 |
| Base of pew near W side of sanctuary | 7.1 |
| S corner of W wall of foyer | 9.4 |
| N corner of W wall of foyer | 8.2 |

| Legend |
|---|
| Green = **Dry** |
| = **Damp** |
| Red = **Wet** |

Delmhorst BD-2100 moisture scale:
Gypsum Scale #3 Green - 0% to 0.5% Yellow - 0.5 to 1% Red - > 1
Wood Scale #1 Green - 6% to 15% Yellow - 15% to 17% Red - > 17%

Typically, when a mold problem exists in a structure or work place the symptoms are chronic and can become severe and the structure or work area can become uninhabitable for occupants sensitive to the allergens present. People who are experiencing sinus, allergy and upper respiratory problems or who may have compromised immune systems, due to illness and lack of general physical well-being are generally more sensitive to all airborne allergens that may include but are not limited to pollens, pet dander, house dust, dust mites, insect casings, rodent droppings, and mold spores and cannot function in areas where high airborne allergen levels persist or where visible mold is apparent and has the potential for disturbance. Based on the findings it is ATOKA, Inc.'s recommendation that the following actions be performed to mitigate moisture, mold and the potential for airborne mold spore exposure hazard in the areas assessed.

Based on the elevated indoor airborne mold spore counts and visible mold present it was evident that airborne mold had adversely impacted the indoor air quality with respect to airborne mold spores and that the wet building components discovered had altered indoor environmental conditions so that sustained mold growth was apparent throughout the area(s) assessed.

Before any remediation activities are performed, or in conjunction with the remediation activities, all water leaks, sources of moisture intrusion that would impact the inside of the occupied areas and humidity should be addressed. Proper mold removal and cleaning can only be performed once all sources of water intrusion and/or elevated humidity inside of the structure are eliminated. It appeared that the source of moisture intrusion, identified as the overflowing of a toilet in the southwest restroom of the sanctuary, had been addressed and corrected prior to ATOKA's assessment. If wet conditions exist and water damage, water-stained and moldy materials are not removed and sources of moisture intrusion and humidity are not controlled it is impossible to permanently remove the mold and restore the area(s) to good condition because the mold will likely eventually return.

The affected work areas for mold include the entirety of the southeast area of the structure as previously discussed, the wing northeast of the sanctuary proper, the pastor's office southeast of the sanctuary proper, and the control room overlooking the sanctuary's main floor. Some gross removal had taken place prior to ATOKA's assessment of the identified areas along with multiple dehumidifiers, air scrubbers, and a Vapor Shark odor control machine set up and running in order to dry out affected building materials and attempt to control odor as well as airborne mold spores disturbed during the removal of gross material activities within the aforementioned areas. ATOKA, Inc., recommends that the apparent mold growth identified in this assessment be remediated to prevent further growth of these molds and to prevent further contamination of affected substrates and aerosolization of the mold spores that adversely impact indoor air quality with respect to airborne mold. If sources of moisture and wet materials (environmental conditions) are not controlled and removed it is impossible to permanently remove the mold.

General recommendations for mold remediation in the aforementioned areas:

1. ATOKA, Inc. recommends that the mold remediation contractor selected to perform mold removal activities be a trained and certified mold abatement contractor. The contractor is responsible for

conducting all abatement activities according to the Institute of Inspection, Cleaning and Restoration Certification (IICRC) IICRC Standard & Reference Guide for Professional Mold Remediation (S520).

2. Contractor should install airtight 6-mil poly barriers and construct work area containment(s) that include all areas where the removal and cleaning of moldy materials will occur. In the sanctuary, the ingress and egress foyer west of the sanctuary, restrooms west of the foyer, and the hallway wrapping around the southwest section of the foyer, take out all walls (including the partial walls north and south of the east stage in the sanctuary) up to a minimum height of thirty-six (36) inches or at least six (6) inches above visibly moldy or water-stained wall substructure and remove associated existing insulation. HEPA vacuum and wet wipe all visible mold from walls, studs and non-porous flooring and treat with antimicrobial. Remove carpeting down to concrete/subfloor. Once all mold removal is completed, HEPA vac and wet wipe all surfaces in the work area(s) and treat with anti-microbial product.

3. Contractor is to apply an EPA-approved bactericide/fungicide/cleaner (or similar treatment compound) to disinfect non-porous surfaces where mold growth has been verified (i.e. - furniture, contents, walls, etc.). Application is made during "wipe-down" of all non-porous surfaces not otherwise treated or removed. It is further stated that products shall be free of chemical odor and safe for indoor environmental use and EPA approved. Suggested Products: Fungicide solution -BBJ Peroxi-Cleanse (mold & mildew cleaner), Foster 40-80 First Defense (for walls and surfaces), and Foster 40-23 Duct Liner Insulation Sealer or Serum 2000™ Polymer Coating for sealing. NOTE: Contractor may use comparable fungicide products for disinfection according to all manufacturer's instructions.

4. Establish a negative-pressure atmosphere inside each contained work area where the removal or cleaning of moldy materials will occur. Convert to air scrubbing mode once all cleaning is done.

5. Contents, furniture and movable fixtures should be cleaned on site or if necessary, removed, cleaned and restored to IICRC S 520 Condition 1 off site.

6. Install dehumidification equipment to dry environmental conditions to within acceptable levels.

7. Install a sufficient number of HEPA air filtration units to scrub four (4) air changes of interior air volume per hour during all mold remediation activities. Air scrubbing should be performed in the contained affected work area(s) before, during and after all post-remediation testing has been completed.

8. HEPA air scrubbing, HEPA vacuuming and damp wipe cleaning of all contents, fixtures and surfaces should be performed in the entirety of the work area(s) following all mold removal activities. This will include the wing northeast of the sanctuary proper, the pastor's office southeast of the sanctuary proper, and the control room overlooking the sanctuary's main floor. All carpet and rugs should be HEPA vacuumed and then professionally cleaned. All porous contents and furnishings (curtains, upholstered furniture, clothes, linens, etc.) should be HEPA vacuumed and then laundered and stored off site until mold remediation is complete.

9. All personnel working in the work area should wear full-face negative pressure or full-face positive air purifying respirators (PAPR), goggles, gloves and any other appropriate PPE. Contractors engaged in the cleaning procedures should be advised of the potential mold spore exposure, airborne particulate (nuisance dust) and potential asbestos dust exposure hazards if applicable.

10. Retain a licensed HVAC contractor to thoroughly clean the air handler units (fan, fan case, coils, coil box, coil condensate pan, return air plenum, supply air plenum) and the air distribution duct system(s) with damp decontamination methods and HEPA vacuuming. according to NADCA 2006 cleaning guidelines. The licensed HVAC contractor shall also thoroughly check the operation of the air conditioning system(s) to ensure that the AC unit(s) is removing the maximum amount of

moisture from the air and operating efficiently.  The HVAC contractor should check for air leaks, missing and damaged duct insulation and make the appropriate repairs.

11. HVAC equipment testing should include the following parameters to provide verification of equipment efficiency and measurements should be compared to the manufacturers specifications for the specific equipment being tested:

RH - Relative Humidity %
DP - Dew Point Temperature
WB - Wet Bulb Temperature
DB - Dry Bulb Temperature
SH - Super Heat Temperature
SC - Super Cool Temperature
LP - Liquid Pressure measured in psi
SP - Suction Pressure measured in psi
OA - Outdoor Ambient Temperature
ORH - Outdoor Relative Humidity
TD - Temperature drop across the coil
SRH - Supply Air Relative Humidity

12. Discard water damaged and unwanted contents (if present).

13. Air scrubbers should remain in operation during all cleaning activities and for forty-eight (48) hours following all final cleaning.

14. The area(s) should be tested with air sampling and a visual assessment to verify that the mold remediation was successful before replacing any new materials and before these areas are opened for occupation.

Optional actions to help improve overall indoor air quality and reduce indoor moisture:

1.  Upgrade HVAC air filters to a MERV 6 or 8 efficiency rating for better IAQ with respect to small airborne particulate.  Install correct size filter media for efficient filtration.

2.  Install a dehumidification system to keep interior areas dry.

This report was prepared for the exclusive use of Service Restoration and/or it's assignees and is not intended for any other purpose. Our report is based on the information available to us at the time of the investigation and the conditions observed during the site visit. The information in the report is based on a non-destructive visual inspection and sample results made available by ATOKA Inc's Environmental Laboratory for ATOKA, Inc.'s review. Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions, if necessary, as warranted by the discovery of additional information.

The undersigned has fully participated in the sampling analysis and the evaluation of the environmental conditions existing in the designated interior areas of the structure. ATOKA, Inc. was retained to provide the services stated herein, and to the best of our knowledge, the results are valid and accurate. Be advised that the results of this investigation represent the conditions found during the site assessment. ATOKA, Inc.'s opinions, conclusions and recommendations are based solely on the visual and physical conditions discovered in the structure at the time of the investigation. ATOKA, Inc. did

not perform destructive sampling or invasive investigative techniques and cannot be responsible for undiscovered physical or visual information requiring destructive methods that influences the IAQ of this structure. Assumptions are made and conclusions are drawn based on the physical data gathered during the investigation.

Respectfully submitted,

Adam Henderson
ATOKA, Inc.

Fredrik Osborn
ATOKA, Inc.

11701 I-30, Bldg. 1, Ste. 119
Little Rock, AR 72209

Office: 501-455-1700
Fax: 501-455-1864

ATOKA, INC.
**CHAIN OF CUSTODY/ANALYSIS REQUEST FORM**

| ATOKA PROJECT NO. | CLIENT/OWNER | | SAMPLE LOCATIONS |
|---|---|---|---|
| 72.406 | Name SERVICE RESTORATION | | Name Rose Hill CUMBERLAND PRESBYTERIAN |
| | Address 7821 DOYLE SPRINGS RD | | Address 2153 AR-83 |
| | City, State, ZIP LITTLE ROCK, AR 72209 STE F | | City, State, ZIP MONTICELLO, AR 71655 |
| | Phone # | | E-mail: |

| SAMPLERS SIGNATURE | SAMPLE TYPE | SAMPLE CONDITION: | TURN AROUND TIME |
|---|---|---|---|
| [signature] | Bulk ☐  Air ☒  Food ☐  Soil ☐  Water ☐  Swab ☐  Other ☐ | ☐ Satisfactory          Temp °C____ | ☐ 4 hours |
| | | ☐ Unsatisfactory | ☐ 2 days |
| | | ☐ Rejected - Reason ____ | ☒ Standard (3-5 days) |
| Printed DAN HENDERSON | Air: Micro-5☐  Air-O-Cell☒  Cyclex-D☐  Biotest☐  Plate☐ <br> Surface: Sponge ☐  Cotton Tip ☐  Tape Lift ☒  Other ☐ | | ☐ Std Protocol |

| FIELD SAMPLE # | DATE COLLECTED | TIME | SAMPLE LOCATION/DESCRIPTION: | Volume of Air Liters | TEST REQUESTED | ATOKA LAB ID # |
|---|---|---|---|---|---|---|
| 82993344408 | 08/05/22 | | CEILING OF | | Mold Count + ID | E22-0805-3 |
| 344471117 | | | SANCTUARY WALL JOIST | 3 mins <br> 10 L/min 30 L | | E22-0805-1 |
| 82951A9 | | 1100 | WALL JOIST OF MEN'S ROOM | | | E22-0805-15 |
| 344419299 | | 1127 | WALL JOIST WEST HALL | 3 mins <br> 10 L/min (30L) | | E22-0805-16 |
| | | | NE CORNER OF SANCTUARY | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| RELINQUISHED BY | DATE/TIME | RECEIVED BY | RELINQUISHED BY | DATE/TIME |
|---|---|---|---|---|
| [signature] | 08/05/22 | RECEIVED BY LABORATORY | | |
| PRINTED DAN HENDERSON | | PRINTED Mike Villines | PRINTED | |

| RECEIVED BY | DATE/TIME | SPECIAL INSTRUCTIONS |
|---|---|---|
| | DATE/TIME 08 Aug 22 | |
| PRINTED | 5:00 PM | |

# ATOKA, Inc. Environmental Laboratory

**ATOKA Job #**    22-406
11701 I-30 East, Ste. 119
Little Rock, AR 72209
Phone: 501-455-1700
Fax: 501-455-1864

**Report Date:** 8/10/2022
**Collection Date:** 8/5/2022
**Received Date:** 8/9/2022
**Analysis Date:** 8/10/2022
**Project Name:** Service Restoration / Rose Hill Cumberland Presbyterian
**Received By:** Chance Villines

## Industrial Hygiene & Quality Assurance Testing - AOAC # 151755

| Sample ID #: | 3444 2117 | | | 3444 2099 | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Lab Sample Number: | E22-0805-4 | | | E22-0805-6 | | | | | |
| Volume: Liters | 30 | | | 30 | | | | | |
| Sample Location: | W. wall - hall W of men's room | | | NE Corner of sanctuary | | | | | |
| Spore Types: | Raw Count | Count/m³ | % of Total | Raw Count | Count/m³ | % of Total | Raw Count | Count/m³ | % of Total |
| Acremonium group | | | | | | | | | |
| Alternaria / Ulocladium | | | | | | | | | |
| Ascospores | | | | | | | | | |
| Aureobasidium | | | | | | | | | |
| Basidiospores | | | | | | | | | |
| Bipolaris/Drechslera | | | | | | | | | |
| Cercospora | | | | | | | | | |
| Chaetomium | | | | | | | | | |
| Cladosporium | 225 | 7500 | 3.0% | | | | | | |
| Curvularia | 1 | 33 | 0.0% | | | | | | |
| Epicoccum | | | | | | | | | |
| Fusarium | | | | | | | | | |
| Nigrospora | | | | | | | | | |
| Oidium | | | | | | | | | |
| Penicillium/Aspergillus | 7325 | 244167 | 96.8% | 30 | 1000 | 17.6% | | | |
| Pestalotiopsis group | | | | | | | | | |
| Pithomyces | | | | | | | | | |
| Rusts | | | | | | | | | |
| Scopulariopsis | | | | | | | | | |
| Smuts/Myxomycetes | 3 | 100 | 0.0% | | | | | | |
| Stachybotrys | 15 | 500 | 0.2% | 140 | 4667 | 82.4% | | | |
| Torula | | | | | | | | | |
| Trichocladium | 1 | 33 | 0.0% | | | | | | |
| Trichoderma | | | | | | | | | |
| Unidentifiable Spores | | | | | | | | | |
| **Total Fungi** | 7570 | 252333 | 100% | 170 | 5667 | 100% | 0 | 0 | 0% |
| Hyphal Fragments | 50 | | | 1 | | | | | |
| Pollen | 11 | | | 1 | | | | | |
| Insect Fragments | 16 | | | 2 | | | | | |
| Skin Fragments* | 1+ | | | 1+ | | | | | |
| Fibrous Particulate* | 3+ | | | 2+ | | | | | |
| Background* | 4+ | | | 4+ | | | | | |
| Analytical Sensitivity | | 33 | | | 33 | | | | |

1. Method 080- AIHA Field Guide for the Determination of Biological Contaminants; Larone , Medically Important Fungi; Barnett & Hunter, Illustrated Genera of Imperfect Fungi. 2: "-" Represents a spore count of less than the sensitivity calculated based on sample volume. 3. "*" Reported as a numerical value between 1 - 4 (1 = Low, 4 = High). 4. When raw counts exceed stopping rules, raw based on the percentage counts are extrapolated based on the percentage analyzed. Overloading is denoted when high particulate matter obscures spores and causes inaccurate detection and quantification of mold spores.
Related Comments: High levels of non-biological particulate detected on both samples may have reduced accuracy of spore detection and enumeration.

 

Chance Villines, VEL, LLC, Mycologist (PAACB 05150160)      Joe Henry, Lab Manager



**ATOKA, INC.**

11701 I 30 - Suite 119          Phone (501) 455-1700
Little Rock, AR 72209          FAX (501) 455-1864

*IDUSTRIAL HYGIENE AND QUALITY ASSURANCE TESTING - AOAC LPT LABORATORY #151755*

GENERAL REPORT                    FINAL REPORT

| | |
|---|---|
| Sample Received By: | CV |
| Laboratory Completion Date: | 10AUG22 |

Report Date:     August 10, 2022

Client:          Service Restoration
                 7821 Doyle Springs Road - Ste F          Analyst:
                 Little Rock, AR 72209

| | |
|---|---|
| Collection Date: | August 5, 2022 |
| Received Date: | August 9, 2022 |

RE:              E22-0805-5

| | |
|---|---|
| Analysis Date: | August 10, 2022 |

Project:         22-406 / Rose Hill Cumberland Presbyterian, 2133 AR-83, Monticello, AR 71655

Method           AIHA *Field Guide for the Determination of Biological Contaminants;* Larone, *Medically Important Fungi;*
                 Barnett & Hunter, *Illustrated Genera of Imperfect Fungi;* M B Ellis, *Dematiaceous Hyphomycetes;*
                 Hanlin, *Illustrated Genera of Ascomycetes*

RESULTS                              **BIOTAPE ANALYSIS**

| Laboratory ID | E22-0805-3 | E22-0805-5 | |
|---|---|---|---|
| Sample ID | B2993344 | B2951699 | |
| Location | Center of S sanctuary - wall joist | E wall joist - west wall | |
| 4 +<br>Very Heavy Growth<br>(>75% coverage) | | | |
| 3 +<br>Heavy Growth<br>(51%-75% coverage) | | | |
| 2 +<br>Moderate Growth<br>(26%-50% coverage) | | Aspergillus (S,C,H) | |
| 1+<br>Light Growth<br>(10%-25% coverage) | | | |
| < 1+<br>Very Light Growth<br>(<10% coverage) | | | |
| < 1+<br>No Growth<br>Miscellaneous spores<br>(<10% coverage) | Penicillium/Aspergillus (S) | | |
| Related Comments | | Insect fragments detected. | |

S=spores, C=conidiophores, H=hyphae, A=ascocarps, P=pycnidia, Sp=sporangia, Ca=capillitia

ATOKA, INC.  Environmental & Food Safety Laboratory

## RE: 000-01-251075

Dejesus, Abelardo <adejesus@churchmutual.com>

Wed 8/24/2022 1:05 PM

To:Wes Kirtley <wes.k@servicerestoration.com>;Richmond, David <drichmond@churchmutual.com>
Cc:Candace Anderson <Candace.a@servicerestoration.com>;Ricardo Robles <ricardo.r@servicerestoration.com>

[EXTERNAL]
Hello Wes,

I will be reaching out to you later this afternoon. Thank you

Abelardo DeJesus
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 536-5577
Main:  (800) 554-2642, Option 9, Ext. 4636
Fax: 715-539-4651
Team Leader – David Richmond (715) 804-7187 | drichmond@churchmutual.com

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

**From:** Wes Kirtley <wes.k@servicerestoration.com>
**Sent:** Wednesday, August 24, 2022 1:00 PM
**To:** Dejesus, Abelardo <adejesus@churchmutual.com>; Richmond, David <drichmond@churchmutual.com>
**Cc:** Candace Anderson <Candace.a@servicerestoration.com>; Ricardo Robles <ricardo.r@servicerestoration.com>
**Subject:** 000-01-251075

CAUTION This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and are expecting the email. If you are in doubt, verify with the sender.

**000-01-251075**
Rosehill Church
2133 AR-83
Monticello, AR 71655

All,

I have called several times since I have last spoke to Abelardo on 8/17. Please provide an update on this claim when available.

Thank You

**Wes Kirtley**

**Mitigation Manager**



7821 Doyle Springs Rd Suite F

Little Rock, AR 72209

**www.servicerestoration.com**

Office: (952) 403-1158 | Direct: (501) 519-9772

## Claim #000-01-251075

Brian Lee <Brian.L@servicerestoration.com>

Thu 9/1/2022 4:19 PM

To:jashby@hotmail.com <jashby@hotmail.com>;Dejesus, Abelardo <adejesus@churchmutual.com>
Cc:Dan Schmidt <dan.s@servicerestoration.com>;Wes Kirtley <wes.k@servicerestoration.com>;Cody Williams
<Cody.W@servicerestoration.com>;Ricardo Robles <ricardo.r@servicerestoration.com>;James Vargas
<James.V@servicerestoration.com>;Abby Schramer <Abby.s@servicerestoration.com>

Please see the daily update report from Project Manager Cody Williams for Rosehill
Cumberland Presbyterian Church 8-31-2022

Appreciate your time,

**BRIAN LEE**
**Corporate Mitigation Manager**
*Master Fire & Smoke Restorer*
*Master Textile Cleaner*
*Master Water Restorer*
*IICRC #50013*



300 W 83rd Street
Bloomington, MN, 55420
**www.servicerestoration.com**
Office: (952) 403-1158 | Direct: (952) 207-0152

---

**From:** Cody Williams <Cody.W@servicerestoration.com>
**Sent:** Thursday, September 1, 2022 3:18 PM
**To:** Brian Lee <Brian.L@servicerestoration.com>; Wes Kirtley <wes.k@servicerestoration.com>
**Subject:** Re: Rose hill

Today's Progress:

1. Completed all pack out of the Sanctuary
2. Completed all pack out in entrance hall
3. Replaced all pleated air filters in air scrubbers and dehumidifier
4. Reset equipment to continue the stabilization of the property.

Tomorrow's Goals:

1. Finish pack out and remove from site
2. Remove debris from site
3. Start demolition in choir room

Goals for being complete:

1. Goals of pack out tomorrow
1. Goals of completion of water loss this Friday 9/2/22
2. Goals of completion of overall job by next Friday 9/9/22

## Re: 000-01-251075

### Ricardo Robles <ricardo.r@servicerestoration.com>

Thu 11/10/2022 1:27 PM

To:Dejesus, Abelardo <adejesus@churchmutual.com>;drichmond@churchmutual.com <drichmond@churchmutual.com>
Cc:Emily Hoss <Emily.h@servicerestoration.com>;Dan Schmidt <dan.s@servicerestoration.com>;Emily Hoss
<Emily.h@servicerestoration.com>;Brian Lee <Brian.L@servicerestoration.com>;jashby@hotmail.com <jashby@hotmail.com>;
Wes Kirtley <wes.k@servicerestoration.com>

Hello,

Thank you for the clarification. I look forward to hearing from Code Blue early next week with the
finished review.

I appreciate your time,

**Ricardo Robles**
**Corporate - Assistant Mitigation Manager**
**Estimator**



**Service Restoration**
Complete Restoration Services

300 W 83rd Street
Bloomington, MN, 55420
**www.servicerestoration.com**
Office: (952) 403-1158 | Direct: (612) 427-5403

---

**From:** Dejesus, Abelardo <adejesus@churchmutual.com>
**Sent:** Thursday, November 10, 2022 1:20 PM
**To:** Ricardo Robles <ricardo.r@servicerestoration.com>
**Cc:** Emily Hoss <Emily.h@servicerestoration.com>
**Subject:** RE: 000-01-251075

[EXTERNAL]
Ricardo & Emily,

I spoke with management and Code Blue and I misunderstood. You will be contacted by our audit team when they
have had time to review.

Thank you

Abelardo DeJesus
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 536-5577
Main:  (800) 554-2642, Option 9, Ext. 4636
Fax: 715-539-4651
Team Leader – David Richmond (715) 804-7187 | drichmond@churchmutual.com

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20.  S.I. = a stock insurer.

**From:** Ricardo Robles <ricardo.r@servicerestoration.com>
**Sent:** Thursday, November 10, 2022 2:08 PM
**To:** Emily Hoss <Emily.h@servicerestoration.com>; Dejesus, Abelardo <adejesus@churchmutual.com>; jashby@hotmail.com; Richmond, David <drichmond@churchmutual.com>
**Cc:** Dan Schmidt <dan.s@servicerestoration.com>; Wes Kirtley <wes.k@servicerestoration.com>; Brian Lee <Brian.L@servicerestoration.com>
**Subject:** Re: 000-01-251075

CAUTION This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and are expecting the email. If you are in doubt, verify with the sender.

Good afternoon Abe,

Per our last conversation, on 11/7/22 when I submitted the supplemental invoice, you had told me that the review process was already underway and would be completed shortly. Is there something that has changed in the last 3 days?

We do need to be paid shortly, we do have our lien rights that are approaching and would hate to have to protect our legal rights because you (Church Mutual) refuse to review the documentation and invoices provided. This is highly unregular as when we've dealt with Church Mutual in the past, we usually get contacted right away by one of your reviewers and they use all documentation that we submit for the basis of their review. I have never heard of any carrier needing to wait for the rebuild estimate to review mitigation invoices.

Please push this review forward to avoid any additional costs on our mutual customer.

Thank you,

**Ricardo Robles**
**Corporate - Assistant Mitigation Manager**
**Estimator**



300 W 83rd Street
Bloomington, MN, 55420
**www.servicerestoration.com**
Office: (952) 403-1158 |  Direct: (612) 427-5403

**From:** Emily Hoss <Emily.h@servicerestoration.com>
**Sent:** Thursday, November 10, 2022 11:40 AM

**To:** adejesus@churchmutual.com <adejesus@churchmutual.com>; jashby@hotmail.com <jashby@hotmail.com>; drichmond@churchmutual.com <drichmond@churchmutual.com>
**Cc:** Ricardo Robles <ricardo.r@servicerestoration.com>; Dan Schmidt <dan.s@servicerestoration.com>; Wes Kirtley <wes.k@servicerestoration.com>
**Subject:** 000-01-251075

Good morning Abelardo,

I wanted to touch base regarding our conversation yesterday where it was stated that the three invoices Service Restoration submitted would not be reviewed until a rebuild scope is complete. Upon submission of each invoice detailed information including sketches, photos, notes and work scope were included. The mitigation invoice was submitted on 9/21, mold on 10/7 and contents on 10/13. We do need to be paid for our incurred costs as work has been complete for 2 months now, so I ask that the invoices be audited so we can move forward with the claim process.

Additionally, who is the audit company? We've worked with the majority of 3rd party auditors Church Mutual uses and they always ask us for additional documentation if need be. We're happy to aid them with any missing information.

Please let me know once the review starts, or put me in contact with the lead auditor so we can continue to track progress.

Thank you,

**Emily Hoss**
**Corporate Content Manager**
**Estimator**



300 W 83rd Street
Bloomington, MN, 55420
**www.servicerestoration.com**
Office: (612) 235-6863 | Direct: (612) 427-5404

Claim: 000-01-251075

2nd attempt at contacting the POC and the church

Karen Bayless 870-367-0803 karen.bayless@billies.org- I left a voice message asking for a return call.

Church Karen Bayless 870-367-0803 - I left a voice message asking for a return call.

Emailed Karen Bayless
-Abelardo Dejesus (07/26/2022 8:56 AM)

Initial reserves set to $5. Appears to be a covered loss.

Customer Contact - Customer contacted today.
-Abelardo Dejesus (07/25/2022 3:38 PM)

Coverage - Water-Plumbing

Status - IA to inspect exterior and interior of loss location

Resolution: Strategy & Action Items =

-F/U in 10 days for IA report & photo outcome of inspection.

-Make cov. determ. if possible, based in investigation outcome.

-F/U w/ insured in 12 days to provide status of claim.
-Abelardo Dejesus (07/25/2022 3:37 PM)

Damages - Water-Plumbing

Prior Loss History - No priors pulled up
-Abelardo Dejesus (07/25/2022 3:37 PM)

Cause of Loss - Water-Plumbing

Page 85

Mar 24, 2023 6:55 AM

CM902



Exhibit ___E___



PROTECTING
THE GREATER
GOOD'

**Church Mutual**
INSURANCE

# STATEMENT OF LOSS

**Insured Name:** *Rose Hill Cumberlan Presbyterian Church*

| CLAIM NO.   000-01-251075 | ACTUAL LOSS | REPLACEMENT LOSS (Total Claim) | DEPRECIATION (Outstanding Reserve) | ACV PAYMENT (Paid to Date) |
|---|---|---|---|---|
| **BUILDING** | | | | |
| 001/001 Church & Cemetery | $0.00 | $103,040.89 | $0.00 | $103,040.89 |
| Mititgation | $0.00 | $96,581.90 | $0.00 | $96,581.90 |
| Pack-out | $0.00 | $10,569.86 | $0.00 | $10,569.86 |
| Core Property Enhancement Endorse | $0.00 | $0.00 | $0.00 | $0.00 |
| Limited Coverage For Fungus | $0.00 | $0.00 | $0.00 | $0.00 |
| with $50K Limit | $0.00 | $21,520.76 | $0.00 | $21,520.76 |
| | | | | |
| | | | | |
| **TOTAL BUILDING CLAIM** | $0.00 | $231,713.41 | | |
| *WITHHOLDING* | | | $0.00 | |
| **TOTAL ACV CLAIM** | | | | $231,713.41 |
| **CONTENTS** | | | | |
| | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | |
| **TOTAL CONTENTS CLAIM** | $0.00 | $0.00 | | |
| *WITHHOLDING* | | | $0.00 | |
| **TOTAL ACV CLAIM** | | | | $0.00 |
| **ADDITIONAL COVERAGES** | | | | |
| | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| | | | | |
| **COVERAGE EXTENSIONS** | | | | |
| | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | | $0.00 |
| | | | | $0.00 |
| **TOTALS** | $0.00 | $231,713.41 | $0.00 | $231,713.41 |
| NONRECOVERABLE WITHHOLDING | | | | |
| RECOVERABLE WITHHOLDING UPON COMPLETION | | | $0.00 | |
| | | | LESS DEDUCTIBLE | $1,000.00 |
| | | | | $230,713.41 |
| | | | LESS ADVANCES | $220,441.41 |
| **GRAND TOTAL** | | | | $10,272.00 |

Exhibit ___F___




Service Restoration, Inc.
300 W. 83rd Street
Bloomington, MN 55420
(952) 403-1158

Invoice #:
Project #: AR122-0110-CON
Invoice Type: Progress
Invoice Date: 10/4/2022

# PROJECT DETAILS

Project Type: Commerical
Client Name: Rosehill Cumberland Presbyterian Church
2133 AR-83
Monticello , AR , 71655

Attention: Jacob Hayes
Project Name: Rosehill Cumberland Presbyterian Church
Project Address:  2133 AR-83
Monticello , AR , 71655

# BILLING TOTAL

## TOTAL: $49,048.69

Service Restoration, Inc.
300 W. 83rd Street
Bloomington, MN 55420
(952) 403-1158

# INVOICE

| | |
|---|---|
| Claim #: | 000-01-251075 |
| Invoice Due Date | 11/3/2022 |
| Invoice Number | |
| Invoice Date | 10/4/2022 |
| Job / Project Number | AR122-0110-CON |
| Project Manager | Cody Williams |

Federal Tax ID #: 36-4801305

| BILL TO INFORMATION: |
|---|
| Rosehill Cumberland Presbyterian Church |
| 2133 AR-83 |
| Monticello , AR , 71655 |
| jashby@hotmail.com |

| PROJECT INFORMATION: |
|---|
| Attn: Jacob Hayes |
| Rosehill Cumberland Presbyterian Church |
| 2133 AR-83 |
| Monticello , AR , 71655 |

## INVOICE SUMMARY DETAIL

| Billing Categories \| Billing Details Attached | INVOICE | Invoice Category Totals |
|---|---|---|
| Billable Labor | | $12,789.88 |
| Associated Labor Fees | | $378.92 |
| Materials and Consumables | | $3,465.05 |
| Equipment and Tools | | $28,270.00 |
| Reimbursable Items | | $198.40 |

| REMIT PAYMENT TO: | | |
|---|---|---|
| Service Restoration, Inc. | Invoice Sub Total | $45,102.24 |
| 300 W. 83rd Street | Off-Site Logistical / Mobilization Fee | $0.00 |
| Bloomington, MN 55420 | Other / Additional Fees | $0.00 |
| | Tax Total | $3,946.45 |
| | Previous Payments / Credits | $0.00 |
| | Invoice Total Amount Due | $49,048.69 |

*Bill Processed by T&M Pro™ - www.timeandmaterial.com*

Job / Project Number
AR122-0110-CON

Invoice Number

Customer: Rosehill Cumberland Presbyterian Church
Job / Project #: AR122-0110-CON

Invoice #:
Invoice Date: 10/4/2022

| BILLING CATEGORY SUMMARY | TOTAL BILLED | SALES TAX % | SALES TAX $ | TOTAL |
|---|---|---|---|---|
| LABOR | $12,789.88 | 8.7500 | $1,119.11 | $13,908.99 |
| LABOR ASSOCIATED FEES | $378.92 | 8.7500 | $33.16 | $412.08 |
| PREVAILING WAGE BENEFITS | | 8.7500 | | |
| HOTEL | | 8.7500 | | |
| SPECIALTY ITEMS | | 8.7500 | | |
| MATERIALS / CONSUMABLES | $3,465.05 | 8.7500 | $303.19 | $3,768.24 |
| EQUIPMENT / TOOLS | $28,270.00 | 8.7500 | $2,473.63 | $30,743.63 |
| EQUIPMENT ASSIGNED VEHICLES | | 8.7500 | | |
| SUBCONTRACTOR / VENDORS | | 8.7500 | | |
| LABOR MANAGEMENT FEE | | 8.7500 | | |
| REIMBURSABLE | $198.40 | 8.7500 | $17.36 | $215.76 |
| EQUIPMENT CAPS (CREDIT) | | | | |
| BILLING TERMS CAPS (CREDIT) | | | | |
| OFF-SITE LOGISTICAL SUPPORT | | 8.7500 | | |
| OTHER / ADDITIONAL FEES | | 8.7500 | | |
| TOTALS | $45,102.24 | | $3,946.45 | $49,048.69 |

SALES TAX SUMMARY
T&M Pro™ - ©2008-2021 - All Rights Reserved





Client Name: Rosehill Cumberland Presbyterian Church
Job/project #: AR122-0110-CON

Invoice #:
Invoice Date: 10/4/2022

# BILLABLE LABOR DETAILS

## TOTAL: $12,789.88

Client Name: Rosehill Cumberland Presbyterian Church

Job / Project #: AR122-0110-CON

Invoice #:

Invoice Date: 10/4/2022

| Name | Title | Work Description | Hourly Rate | Date | Reg. Hours | PR Hours | Reg. Rate | PR Rate | Total |
|---|---|---|---|---|---|---|---|---|---|
| Alisha Stone | CPM | Project Manager | $93.85 | THU-9/1/2022 | 7.97 | | $747.98 | | $747.98 |
| Kyler Neubauer | CIRT | Technician | $64.95 | THU-9/1/2022 | 8.25 | 1.42 | $535.84 | $138.34 | $674.18 |
| Cody Williams | CIRT | Technician | $64.95 | THU-9/1/2022 | 10.00 | 1.63 | $649.50 | $158.80 | $808.30 |
| Charaine Ray | CIRT | Technician | $64.95 | THU-9/1/2022 | 8.22 | | $533.89 | | $533.89 |
| Alisha Stone | CPM | Project Manager | $93.85 | FRI-9/2/2022 | 9.00 | 0.50 | $844.65 | $70.39 | $915.04 |
| Charaine Ray | CIRT | Technician | $64.95 | FRI-9/2/2022 | 8.00 | | $519.60 | | $519.60 |
| Alisha Stone | CPM | Project Manager | $93.85 | TUE-9/6/2022 | 8.00 | 0.50 | $750.80 | $70.39 | $821.19 |
| Charaine Ray | CIRT | Technician | $64.95 | TUE-9/6/2022 | 9.00 | 0.50 | $584.55 | $48.71 | $633.26 |
| Alisha Stone | CPM | Project Manager | $93.85 | WED-9/7/2022 | 5.00 | | $469.25 | | $469.25 |
| Jamal Doss | CIRT | Technician | $64.95 | WED-9/7/2022 | 5.00 | | $324.75 | | $324.75 |
| Oharine Ray | CIRT | Technician | $64.95 | WED-9/7/2022 | 4.25 | | $276.04 | | $276.04 |
| Daniel Norman | CIRT | Technician | $64.95 | WED-9/7/2022 | 4.00 | | $259.80 | | $259.80 |
| Trayvon Molder | CIRT | Technician | $64.95 | WED-9/7/2022 | 2.25 | | $146.14 | | $146.14 |
| Jeff Linker | CIRT | Technician | $64.95 | WED-9/7/2022 | 5.00 | | $324.75 | | $324.75 |
| Alisha Stone | CPM | Project Manager | $93.85 | MON-9/12/2022 | 8.67 | | $813.68 | | $813.68 |
| Daniel Norman | CIRT | Technician | $64.95 | MON-9/12/2022 | 7.50 | | $487.13 | | $487.13 |
| Jamal Doss | CIRT | Technician | $64.95 | MON-9/12/2022 | 9.00 | | $584.55 | | $584.55 |
| Alisha Stone | CPM | Project Manager | $93.85 | TUE-9/13/2022 | 8.58 | | $805.23 | | $805.23 |
| Jeff Linker | CIRT | Technician | $64.95 | FRI-9/16/2022 | 0.20 | | $12.99 | | $12.99 |
| Trayvon Molder | CIRT | Technician | $64.95 | FRI-9/16/2022 | 0.20 | | $12.99 | | $12.99 |
| Jamal Doss | CIRT | Technician | $64.95 | FRI-9/16/2022 | 0.20 | | $12.99 | | $12.99 |
| Daniel Norman | CIRT | Technician | $64.95 | FRI-9/16/2022 | 0.20 | | $12.99 | | $12.99 |
| Wes Kirdey | PC | Project Coordination | $130.00 | WED-10/12/2022 | 0.25 | | $32.50 | | $32.50 |
| Kristen Patterson | MITT | Technician | $73.12 | WED-10/12/2022 | 1.00 | | $73.12 | | $73.12 |
| Kyler Neubauer | MITT | Technician | $73.12 | WED-10/12/2022 | 1.00 | | $73.12 | | $73.12 |
| Kelli Jesseman | CIRS | Project Manager | $79.25 | THU-5/11/2023 | 8.85 | 2.15 | $701.36 | $255.58 | $956.94 |
| Enrique Sesma | CIRT | Technician | $64.95 | THU-5/11/2023 | 4.82 | 1.57 | $313.06 | $152.96 | $466.02 |
| Graelbi Rodriguez | CIRT | Technician | $64.95 | THU-5/11/2023 | 4.80 | 3.08 | $311.76 | $300.07 | $611.83 |
| Alisha Stone | CIRT | Technician | $64.95 | THU-5/11/2023 | 4.72 | 0.75 | $306.56 | $73.07 | $379.63 |
| | | | | | 153.93 | 12.10 | $11,521.57 | $1,268.31 | $12,789.88 |

BILLABLE LABOR DETAILS
T&M Pro™ - ©2008-2021

1/1

Client Name: Rosehill Cumberland Presbyterian Church

Invoice #:

Job / Project #: AR122-0110-CON

Invoice Date: 10/4/2022

| Name | Labor Classification | Work Description | Date | Time In | Time Out | Lunch/Break | Total |
|------|---------------------|-----------------|------|---------|----------|-------------|-------|
| Alisha Stone | Contents Project Manager | Project Manager | 9/1/2022 | 08.45 | 17.05 | 00.22 | 07.97 |
| Kyler Neubauer | Contents/Inventory/Restoration Technician | Technician | 9/1/2022 | 08.45 | 18.47 | 00.22 | 09.67 |
| Cody Williams | Contents/Inventory/Restoration Technician | Technician | 9/1/2022 | 05.42 | 19.00 | 01.40 | 11.63 |
| Charaine Ray | Contents/Inventory/Restoration Technician | Technician | 9/1/2022 | 08.30 | 17.05 | 00.22 | 08.22 |
| Alisha Stone | Contents Project Manager | Project Manager | 9/2/2022 | 08.00 | 18.00 | 00.30 | 09.50 |
| Charaine Ray | Contents/Inventory/Restoration Technician | Technician | 9/2/2022 | 08.00 | 16.30 | 00.30 | 08.00 |
| Alisha Stone | Contents Project Manager | Project Manager | 9/6/2022 | 09.00 | 18.00 | 00.30 | 08.50 |
| Charaine Ray | Contents/Inventory/Restoration Technician | Technician | 9/6/2022 | 08.00 | 18.00 | 00.30 | 09.50 |
| Alisha Stone | Contents Project Manager | Project Manager | 9/7/2022 | 08.00 | 13.00 | | 05.00 |
| Jamal Doss | Contents/Inventory/Restoration Technician | Technician | 9/7/2022 | 08.00 | 13.00 | | 05.00 |
| Oharine Ray | Contents/Inventory/Restoration Technician | Technician | 9/7/2022 | 08.45 | 13.00 | | 04.25 |
| Daniel Norman | Contents/Inventory/Restoration Technician | Technician | 9/7/2022 | 09.00 | 13.00 | | 04.00 |
| Trayvon Molder | Contents/Inventory/Restoration Technician | Technician | 9/7/2022 | 10.45 | 13.00 | | 02.25 |
| Jeff Linker | Contents/Inventory/Restoration Technician | Technician | 9/7/2022 | 08.00 | 13.00 | | 05.00 |
| Alisha Stone | Contents Project Manager | Project Manager | 9/12/2022 | 08.00 | 17.00 | 00.20 | 08.67 |
| Daniel Norman | Contents/Inventory/Restoration Technician | Technician | 9/12/2022 | 09.00 | 17.00 | 00.30 | 07.50 |
| Jamal Doss | Contents/Inventory/Restoration Technician | Technician | 9/12/2022 | 08.00 | 17.00 | | 09.00 |
| Alisha Stone | Contents Project Manager | Project Manager | 9/13/2022 | 08.00 | 16.50 | 00.15 | 08.58 |
| Jeff Linker | Contents/Inventory/Restoration Technician | Technician | 9/16/2022 | 15.00 | 15.12 | | 00.20 |
| Trayvon Molder | Contents/Inventory/Restoration Technician | Technician | 9/16/2022 | 15.00 | 15.12 | | 00.20 |
| Jamal Doss | Contents/Inventory/Restoration Technician | Technician | 9/16/2022 | 15.00 | 15.12 | | 00.20 |
| Daniel Norman | Contents/Inventory/Restoration Technician | Technician | 9/16/2022 | 15.00 | 15.12 | | 00.20 |
| Wes Kirtley | Project Coordinator | Project Coordination | 10/12/2022 | 13.00 | 13.15 | | 00.25 |
| Kristen Patterson | Mitigation Technician | Technician | 10/12/2022 | 12.00 | 13.00 | | 01.00 |
| Kyler Neubauer | Mitigation Technician | Technician | 10/12/2022 | 12.00 | 13.00 | | 01.00 |
| Kelli Jesseman | Contents/Inventory/Restoration Technician | Project Manager | 5/11/2023 | 08.09 | 19.09 | | 11.00 |
| Enrique Sesma | Contents/Inventory/Restoration Technician | Technician | 5/11/2023 | 12.11 | 18.34 | | 06.39 |
| Graelbi Rodriguez | Contents/Inventory/Restoration Technician | Technician | 5/11/2023 | 12.12 | 20.05 | | 07.88 |
| Alisha Stone | Contents/Inventory/Restoration Technician | Technician | 5/11/2023 | 12.17 | 17.45 | | 05.47 |
| | | | | | | | 166.02 |

LABOR TIME DETAILS - BILLABLE LABOR AND ASSOCIATED LABOR FEES

T&M Pro™ - ©2008-2021

1/1

Client Name: Rosehill Cumberland Presbyterian Church

Job / Project #: AR122-0110-CON

Invoice #:

Invoice Date: 10/4/2022

| Name | Title | Hourly Rate | Date | PR Hours 1.5 | PR Rate | PR Factor 1.5 | PR Hours 2.0 | PR Rate | PR Factor 2.0 | Total PR |
|------|-------|-------------|------|--------------|---------|---------------|--------------|---------|---------------|----------|
| Kyler Neubauer | C1RT | $64.95 | THU-9/1/2022 | 1.42 | $97.43 | $138.34 | | | | $138.34 |
| Cody Williams | C1RT | $64.95 | THU-9/1/2022 | 1.63 | $97.43 | $158.80 | | | | $158.80 |
| Alisha Stone | CPM | $93.85 | FRI-9/2/2022 | 0.50 | $140.78 | $70.39 | | | | $70.39 |
| Alisha Stone | CPM | $93.85 | TUE-9/6/2022 | 0.50 | $140.78 | $70.39 | | | | $70.39 |
| Charaine Ray | C1RT | $64.95 | TUE-9/6/2022 | 0.50 | $97.43 | $48.71 | | | | $48.71 |
| Kelli Jesseman | C1RS | $79.25 | THU-5/11/2023 | 2.15 | $118.88 | $255.58 | | | | $255.58 |
| Enrique Sesma | C1RT | $64.95 | THU-5/11/2023 | 1.57 | $97.43 | $152.96 | | | | $152.96 |
| Graelbi Rodriguez | C1RT | $64.95 | THU-5/11/2023 | 3.08 | $97.43 | $300.07 | | | | $300.07 |
| Alisha Stone | C1RT | $64.95 | THU-5/11/2023 | 0.75 | $97.43 | $73.07 | | | | $73.07 |
| | | | | | | | | | | $1,268.31 |

LABOR PREM RATE DETAILS
T&M Pro™ - ©2008-2021

1/1

 

Client Name: Rosehill Cumberland Presbyterian Church
Job/project #: AR122-0110-CON

Invoice #:
Invoice Date: 10/4/2022

# ASSOCIATED LABOR FEES

# TOTAL: $378.92

Client Name: Rosehill Cumberland Presbyterian Church

Job / Project #: AR122-0110-CON

Invoice #:

Invoice Date: 10/4/2022

| Name | Date | Small Tools | Per Diem | PPE | PRP | PFP | Lodging | Total |
|------|------|------------|----------|-----|-----|-----|---------|-------|
| Alisha Stone | THU-9/1/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Kyler Neubauer | THU-9/1/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Cody Williams | THU-9/1/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Charaine Ray | THU-9/1/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Alisha Stone | FRI-9/2/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Charaine Ray | FRI-9/2/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Alisha Stone | TUE-9/6/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Charaine Ray | TUE-9/6/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Alisha Stone | WED-9/7/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Jamal Doss | WED-9/7/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Oharine Ray | WED-9/7/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Trayvon Molder | WED-9/7/2022 | $8.36 | - | $18.11 | - | - | - | $26.47 |
| Jeff Linker | WED-9/7/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Alisha Stone | MON-9/12/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Jamal Doss | MON-9/12/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Alisha Stone | TUE-9/13/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Jeff Linker | FRI-9/16/2022 | $8.36 | - | $18.11 | - | - | - | $26.47 |
| Trayvon Molder | FRI-9/16/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Jamal Doss | FRI-9/16/2022 | - | - | $18.11 | - | - | - | $18.11 |
| Kyler Neubauer | WED-10/12/2022 | - | - | $18.11 | - | - | - | $18.11 |
| | | $16.72 | | $362.20 | | | | $378.92 |

ASSOCIATED LABOR FEE DETAILS
T&M Pro™ - ©2008-2021

 

Client Name: Rosehill Cumberland Presbyterian Church
Job/project #: AR122-0110-CON

Invoice #:
Invoice Date: 10/4/2022

# MATERIAL AND CONSUMABLES

## TOTAL: $3,465.05

Client Name: Rosehill Cumberland Presbyterian Church

Job / Project #: AR122-0110-CON

Invoice #:

Invoice Date: 10/4/2022

| Item Description | Date | Unit | Quantity | Price | Total |
|---|---|---|---|---|---|
| Antimicrobial - Mediclean | 9/12/2022 | GALLON | 0.5 | $34.99 | $17.50 |
| Box - Extra Large | 9/6/2022 | EACH | 6 | $6.83 | $40.98 |
| Box - Large | 9/1/2022 | EACH | 19 | $5.42 | $102.98 |
| Box - Large | 9/13/2022 | EACH | 18 | $5.42 | $97.56 |
| Box - Medium | 9/1/2022 | EACH | 50 | $4.93 | $246.50 |
| Box - Medium | 9/2/2022 | EACH | 50 | $4.93 | $246.50 |
| Box - Medium | 9/6/2022 | EACH | 22 | $4.93 | $108.46 |
| Box - Small | 9/13/2022 | EACH | 21 | $3.59 | $75.39 |
| Box Tape (roll) | 9/1/2022 | EACH | 5 | $3.25 | $16.25 |
| Box Tape (roll) | 9/2/2022 | EACH | 4 | $3.25 | $13.00 |
| Box Tape (roll) | 9/6/2022 | EACH | 3 | $3.25 | $9.75 |
| Box Tape (roll) | 9/12/2022 | EACH | 6 | $3.25 | $19.50 |
| Box Tape (roll) | 9/13/2022 | EACH | 3 | $3.25 | $9.75 |
| Bubble Wrap (roll) | 9/2/2022 | EACH | 1 | $29.13 | $29.13 |
| Case of water | 9/1/2022 | Each | 1 | $6.99 | $6.99 |
| Cotton Rags | 9/6/2022 | POUND | 1 | $12.36 | $12.36 |
| Identification Labels (roll) | 9/1/2022 | ROLL | 1 | $2.35 | $2.35 |
| Microfiber Cloths | 9/12/2022 | CASE | 6 | $10.80 | $64.80 |
| Moving Blankets | 9/1/2022 | EACH | 100 | $11.00 | $1,100.00 |
| Moving Blankets | 9/6/2022 | EACH | 24 | $11.00 | $264.00 |
| Moving Blankets | 9/12/2022 | EACH | 30 | $11.00 | $330.00 |
| Plastic Garbage Bags 6 mil | 9/13/2022 | Box | 1 | $21.37 | $21.37 |
| Shrink Wrap (large roll) | 9/1/2022 | ROLL | 2 | $15.00 | $30.00 |
| Tape Dispenser | 9/1/2022 | EACH | 2 | $11.00 | $22.00 |
| Tape Dispenser | 9/6/2022 | EACH | 2 | $11.00 | $22.00 |
| Tape Dispenser | 9/12/2022 | EACH | 3 | $11.00 | $33.00 |
| Wire Tags | 9/6/2022 | EACH | 43 | $0.89 | $38.27 |
| Antimicrobial - Mediclean | 10/12/2022 | GALLON | 1 | $34.99 | $34.99 |
| Backpack Vac Bag | 10/12/2022 | EACH | 2 | $7.00 | $14.00 |
| Backpack Vac Filter - cloth | 10/12/2022 | EACH | 2 | $89.95 | $179.90 |

MATERIAL AND CONSUMABLE DETAILS
T&M Pro™ - ©2008-2021

1/2

Client Name: Rosehill Cumberland Presbyterian Church

Job / Project #: AR122-0110-CON

Invoice #:

Invoice Date: 10/4/2022

| Item Description | Date | Unit | Quantity | Price | Total |
|---|---|---|---|---|---|
| Backpack Vac Filter - HEPA | 10/12/2022 | EACH | 2 | $86.80 | $173.60 |
| Backpack Vac Filter- pre | 10/12/2022 | EACH | 2 | $25.00 | $50.00 |
| Microfiber Cloths | 10/12/2022 | CASE | 1 | $10.80 | $10.80 |
| Plastic Garbage Bags 6 mil | 5/11/2023 | Box | 1 | $21.37 | $21.37 |
| | | | | | $3,465.05 |

MATERIAL AND CONSUMABLE DETAILS
T&M Pro™ - ©2008-2021

2/2

 

Client Name: Rosehill Cumberland Presbyterian Church
Job/project #: AR122-0110-CON

Invoice #:
Invoice Date: 10/4/2022

# EQUIPMENT AND TOOLS

## TOTAL: $28,270.00

Client Name: Rosehill Cumberland Presbyterian Church

Job / Project #: AR122-0110-CON

Invoice #:

Invoice Date: 10/4/2022

| Item Description | Date | Unit | Quantity | Price | Total |
|---|---|---|---|---|---|
| 1 Ton Truck | 9/1/2022 | DAY | 1 | $140.00 | $140.00 |
| Box Truck | 9/1/2022 | DAY | 1 | $145.00 | $145.00 |
| Box Truck | 9/2/2022 | DAY | 1 | $145.00 | $145.00 |
| Box Truck | 9/7/2022 | DAY | 1 | $145.00 | $145.00 |
| HEPA Vacuum | 10/12/2022 | DAY | 1 | $65.00 | $65.00 |
| Job Vehicle | 9/2/2022 | DAY | 1 | $68.00 | $68.00 |
| Job Vehicle | 9/6/2022 | DAY | 1 | $68.00 | $68.00 |
| Job Vehicle | 9/7/2022 | DAY | 1 | $68.00 | $68.00 |
| Vault Storage Per Month | 9/1/2022 | Each | 12 | $250.00 | $3,000.00 |
| Vault Storage Per Month | 10/1/2022 | Each | 12 | $250.00 | $3,000.00 |
| Vault Storage Per Month | 11/1/2022 | Each | 12 | $250.00 | $3,000.00 |
| Vault Storage Per Month | 12/1/2022 | Each | 12 | $250.00 | $3,000.00 |
| Vault Storage Per Month | 1/1/2023 | Each | 12 | $250.00 | $3,000.00 |
| Vault Storage Per Month | 2/1/2023 | Each | 12 | $250.00 | $3,000.00 |
| Vault Storage Per Month | 3/1/2023 | Each | 12 | $250.00 | $3,000.00 |
| Vault Storage Per Month | 4/1/2023 | Each | 12 | $250.00 | $3,000.00 |
| Vault Storage Per Month | 5/1/2023 | Each | 12 | $250.00 | $3,000.00 |
| Box Truck | 5/11/2023 | DAY | 2 | $145.00 | $290.00 |
| Job Vehicle | 5/11/2023 | DAY | 2 | $68.00 | $136.00 |
| | | | | | $28,270.00 |

EQUIPMENT AND TOOL DETAILS
T&M Pro™ – @2008-2021

1/1




Client Name: Rosehill Cumberland Presbyterian Church
Job/project #: AR122-0110-CON

Invoice #:
Invoice Date: 10/4/2022

# REIMBURSABLE DETAILS

## TOTAL: $198.40

Client Name: Rosehill Cumberland Presbyterian Church

Job / Project #: AR122-0110-CON

Invoice #:

Invoice Date: 10/4/2022

| Labor/Company Name | Description | Reimb Type | Date | Receipt # | Receipt Total | Mark Up % | Mark Up Total | Total |
|---|---|---|---|---|---|---|---|---|
| UHaul | Truck | | 9/8/2022 | | $165.33 | 20% | $33.07 | $198.40 |
| | | | | | $165.33 | | $33.07 | $198.40 |

REIMBURSABLE DETAILS
T&M Pro™ - ©2008-2021

1/1

**Fw: 000-01-251075**

Yahoo/Inbox

 **Jacob Ashby** <jashby@hotmail.com>
To: ggbpace@att.net <ggbpace@att.net>

Aug 10 at 10:09 AM

---

**From:** Ricardo Robles <ricardo.r@servicerestoration.com>
**Sent:** Thursday, November 10, 2022 1:27 PM
**To:** Dejesus, Abelardo <adejesus@churchmutual.com>; drichmond@churchmutual.com <drichmond@churchmutual.com>
**Cc:** Emily Hoss <Emily.h@servicerestoration.com>; Dan Schmidt <dan.s@servicerestoration.com>; Emily Hoss <Emily.h@servicerestoration.com>; Brian Lee <Brian.L@servicerestoration.com>; jashby@hotmail.com <jashby@hotmail.com>; Wes Kirtley <wes.k@servicerestoration.com>
**Subject:** Re: 000-01-251075

Hello,

Thank you for the clarification. I look forward to hearing from Code Blue early next week with the finished review.

I appreciate your time,

**Ricardo Robles**
**Corporate - Assistant Mitigation Manager**
**Estimator**

**Service Restoration** (◉)
Complete Restoration Services

300 W 83rd Street
Bloomington, MN, 55420
**www.servicerestoration.com**
Office: (952) 403-1158 | Direct: (612) 427-5403

---

**From:** Dejesus, Abelardo <adejesus@churchmutual.com>
**Sent:** Thursday, November 10, 2022 1:20 PM
**To:** Ricardo Robles <ricardo.r@servicerestoration.com>
**Cc:** Emily Hoss <Emily.h@servicerestoration.com>
**Subject:** RE: 000-01-251075

[EXTERNAL]
Ricardo & Emily,

I spoke with management and Code Blue and I misunderstood. You will be contacted by our audit team when they have had time to review.


Thank you

Abelardo DeJesus
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 536-5577
Main: (800) 554-2642, Option 9, Ext. 4636
Fax: 715-539-4651
Team Leader – David Richmond (715) 804-7187 | drichmond@churchmutual.com

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

---

**From:** Ricardo Robles <ricardo.r@servicerestoration.com>
**Sent:** Thursday, November 10, 2022 2:08 PM
**To:** Emily Hoss <Emily.h@servicerestoration.com>; Dejesus, Abelardo <adejesus@churchmutual.com>; jashby@hotmail.com; Richmond, David <drichmond@churchmutual.com>
**Cc:** Dan Schmidt <dan.s@servicerestoration.com>; Wes Kirtley <wes.k@servicerestoration.com>; Brian Lee <Brian.L@servicerestoration.com>
**Subject:** Re: 000-01-251075

CAUTION This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and are expecting the email. If you are in doubt, verify with the sender.

Good afternoon Abe,

Per our last conversation, on 11/7/22 when I submitted the supplemental invoice, you had told me that the review process was already underway and would be completed shortly. Is there something that has changed in the last 3 days?

We do need to be paid shortly, we do have our lien rights that are approaching and would hate to have to protect our legal rights because you (Church Mutual) refuse to review the documentation and invoices provided. This is highly unregular as when we've dealt with Church Mutual in the past, we usually get contacted right away by one of your reviewers and they use all documentation that we submit for the basis of their review. I have never heard of any carrier needing to wait for the rebuild estimate to review mitigation invoices.

Please push this review forward to avoid any additional costs on our mutual customer.

Thank you,


**Ricardo Robles**
**Corporate - Assistant Mitigation Manager**
**Estimator**

**Service Restoration**
Complete Restoration Services

300 W 83rd Street
Bloomington, MN, 55420
**www.servicerestoration.com**
Office: (952) 403-1158 |  Direct: (612) 427-5403

---

**From:** Emily Hoss <Emily.h@servicerestoration.com>
**Sent:** Thursday, November 10, 2022 11:40 AM
**To:** adejesus@churchmutual.com <adejesus@churchmutual.com>; jashby@hotmail.com <jashby@hotmail.com>; drichmond@churchmutual.com <drichmond@churchmutual.com>
**Cc:** Ricardo Robles <ricardo.r@servicerestoration.com>; Dan Schmidt <dan.s@servicerestoration.com>; Wes Kirtley <wes.k@servicerestoration.com>
**Subject:** 000-01-251075

Good morning Abelardo,

I wanted to touch base regarding our conversation yesterday where it was stated that the three invoices Service Restoration submitted would not be reviewed until a rebuild scope is complete. Upon submission of each invoice detailed information including sketches, photos, notes and work scope were included. The mitigation invoice was submitted on 9/21, mold on 10/7 and contents on 10/13. We do need to be paid for our incurred costs as work has been complete for 2 months now, so I ask that the invoices be audited so we can move forward with the claim process.

Additionally, who is the audit company? We've worked with the majority of 3rd party auditors Church Mutual uses and they always ask us for additional documentation if need be. We're happy to aid them with any missing information.

Please let me know once the review starts, or put me in contact with the lead auditor so we can continue to track progress.

Thank you,

**Emily Hoss**
**Corporate Content Manager**
**Estimator**

**Service Restoration**
Complete Restoration Services

300 W 83rd Street
Bloomington, MN, 55420
**www.servicerestoration.com**
Office: (612) 235-6863 |  Direct: (612) 427-5404

**Fw: Claim # 000-01-251075**                                                    Yahoo/Inbox



**Jacob Ashby** <jashby@hotmail.com>                                  Aug 10 at 10:08 AM
To: ggbpace@att.net <ggbpace@att.net>

---

**From:** Dejesus, Abelardo <adejesus@churchmutual.com>
**Sent:** Thursday, December 8, 2022 12:20 PM
**To:** Jacob Ashby <jashby@hotmail.com>
**Subject:** RE: Claim # 000-01-251075

Mr. Hayes,

My manager and I will be going over your claim file and he will be reaching out to you sometime tomorrow.

Thank you

Abelardo DeJesus
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 536-5577
Main: (800) 554-2642, Option 9, Ext. 4636
Fax: 715-539-4651
Team Leader – David Richmond (715) 804-7187 | drichmond@churchmutual.com

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

**From:** Jacob Ashby <jashby@hotmail.com>
**Sent:** Thursday, December 8, 2022 10:31 AM
**To:** Dejesus, Abelardo <adejesus@churchmutual.com>
**Subject:** Claim # 000-01-251075

> You don't often get email from jashby@hotmail.com. Learn why this is important
> CAUTION This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and are expecting the email. If you are in doubt, verify with the sender.

Mr. Dejesus,

My name is Jacob Hayes with Rose Hill Cumberland Presbyterian Church.

The lack of agreement with your company and the crew that performed the mitigation services is about to result in additional fees as they have begun the process to place liens on the covered property.

I was under the understanding that Church Mutual was a competent and reasonable company that provided coverage for their policy holders. So far, this has not been my experience with your company. I understand that you are not your company and therefore not the only one responsible for the delays, however, this has gone past a reasonable amount of time period and our patience is running short.

It is my understanding that you have seen the correspondence emails from Service Restoration as your email is Cc'd in them. The initial reported date of loss via water/flood was July 23rd. It is now December 8th. Our discomfort at being misplaced during our normal worship at church aside, the delay in Church Mutual's responses to the contractors has resulted in liens against the property for work already performed and supposedly covered by Church Mutual.

We have a licensed commercial contractor that has provided a new total for the covered loss. We have been awaiting Church Mutual's response to this total, as we believe it is a fair amount.

I cannot fathom how long it takes for someone at a desk to approve a new total when the new total was arrived at using Xactimate, the software designed as a tool for insurance claims. We need to begin this reconstruction process as soon as possible, as well as have Church Mutual pay the parties already involved. We have tried calling your desk numerous times only to receive your voicemail. I will not stop calling and leaving voicemails until we have made progress on these issues.

Please respond to this email or call Jacob at 870-308-0101.

Fw: 2133 AR-83 | AR122-0110 | Service Restoration                                     Yahoo/Inbox

 **Jacob Ashby** <jashby@hotmail.com>                                Aug 10 at 10:08 AM
To: ggbpace@att.net <ggbpace@att.net>

---

**From:** Candace Anderson <Candace.a@servicerestoration.com>
**Sent:** Wednesday, December 7, 2022 5:02 PM
**To:** jashby@hotmail.com <jashby@hotmail.com>
**Cc:** Brian Lee <Brian.L@servicerestoration.com>; Ricardo Robles <ricardo.r@servicerestoration.com>; Wes Kirtley <wes.k@servicerestoration.com>; Emily Hoss <Emily.h@servicerestoration.com>; Dan Schmidt <dan.s@servicerestoration.com>
**Subject:** Re: 2133 AR-83 | AR122-0110 | Service Restoration

Hi Jacob,

We haven't been able to come to an agreement with the insurance company and we are coming up on our lien rights days. Unfortunately, if we don't receive payment in full for all 3 jobs by 12/9/2022 we will need to file liens, which will result in additional legal fees. I've attached all three Intents to Lien documents for your records.

Thank you!
Have a wonderful day,
Candace Anderson
Corporate Mitigation Coordinator

 **Service Restoration**
**Complete Restoration Services**
300 W 83rd Street
Bloomington, MN, 55420
**www.servicerestoration.com**
Office: (952) 999-2837

---

**From:** Candace Anderson <Candace.a@servicerestoration.com>
**Sent:** Tuesday, December 6, 2022 11:36 AM
**To:** jashby@hotmail.com <jashby@hotmail.com>
**Cc:** Brian Lee <Brian.L@servicerestoration.com>; Ricardo Robles <ricardo.r@servicerestoration.com>; Wes Kirtley <wes.k@servicerestoration.com>
**Subject:** 2133 AR-83 | AR122-0110 | Service Restoration

Good morning,

I've attached the invoices for the mold, water and contents services provided by Service Restoration.

We did submit the invoices to the insurance company, however they have not been responsive and the claim has been passed along to so many people that they have to start the review process over every time, causing more delays and confusion.

We submitted these invoices  (water - 9/21/22 mold -10/7/22 contents -10/13/22) and we are at the point of having to get our legal team involved.

You can submit payment to https://servicerestoration.com/pay/ with a 3% convenience fee added or by check to:
   Service Restoration
   300 W 83rd St
   Bloomington, MN 55420

| | |
|---|---|
|  | **Pay Online - Service Restoration**<br><br>Pay Online Online Paymentsfor your convenience Please note, per our contract we charge an additional 3% convenience fee for credit card transactions, we welcome checks as a form of payment at no additional cost. Pay Your Invoice Online Secure Payment Portal Submit Your Payment Online<br><br>servicerestoration.com |

Please let me know how you would like to proceed with payment.

Thank you!
Have a wonderful day,
Candace Anderson
Corporate Mitigation Coordinator

 **Service Restoration**
**Complete Restoration Services**
300 W 83rd Street

Bloomington, MN, 55420
**www.servicerestoration.com**
Office: (952) 999-2837

**3 Files** | 1.8MB

 **Rosehill Contents.pdf**
602kB

 **Rosehill Mold.pdf**
604kB

 **Rosehill Water.pdf**
604kB

PROTECTING
THE GREATER
GOOD®

**Church Mutual**
INSURANCE

August 24, 2022

ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH
122 E SHELTON AVE
MONTICELLO AR  71655

RE:   Claim No.        **000-01-251075**
      Policy No.       0094309-25-368984
      Insured:         ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH
                       MONTICELLO, AR
      Date of Loss:    July 23, 2022

Dear Jacob Hayes & Rose Hill Cumberland Presbyterian Church:

During the investigation of your claim covered damage was found.  Payment is enclosed in accordance with the enclosed estimate or as identified in the enclosed statement of loss.

If the work cannot be completed per this estimate or statement of loss, please contact me before beginning repairs.  This will allow us to address any issues and reach an agreement.  Any differences must be approved prior to the start of repairs to be considered for reimbursement.

If additional damage is noted or issues arise during the course of repair, please notify me immediately prior to proceeding further.  Failure to do so may jeopardize reimbursement.

The payment reflects the following:

| | |
|---|---|
| The Replacement Cost Value | $46,432.44 |
| Less Recoverable Depreciation/Withholding | $0.00 |
| Less Nonrecoverable Depreciation | $0.00 |
| Actual Cash Value | $46,432.44 |
| Minus Prior Payments | $0.00 |
| Minus Deductible | $1,000.00 |
| Payment Amount | $45,432.44 |

If you have additional information that has not been submitted previously, please forward at this time.

Please include the claim number on all correspondence to help assist with the handling of the above claim.

Your state requires notification of the following:

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

Church Mutual Insurance Company, S.I. (a stock insurer)  |  churchmutual.com  |  800.554.2642
Mail to Home Office: P.O. Box 357 Merrill, WI 54452-0357  Fax: 715.539.4650  |  Mail to Claims: P.O. Box 342 Merrill, WI 54452-0342  Fax: 715.539.4651
Church Mutual is a stock insurer whose policyholders are members of the parent mutual holding company formed on 01/01/20. S.I. = a stock insurer.
NAIC # 18767; CA Company ID # 2867-0

pr_Payment

000-01-251075

If you have questions regarding this claim, please contact me at (800) 554-2642, select Option 9, and enter Extension 4636.

Sincerely,

*Abelardo Dejesus*

Abelardo Dejesus
Claim Representative
adejesus@churchmutual.com

Enclosure(s):
   Check

Church Mutual Insurance Company, S.I. (a stock insurer) | churchmutual.com | 800.554.2642
Mail to Home Office: P.O. Box 357 Merrill, WI 54452-0357  Fax: 715.539.4650  |  Mail to Claims: P.O. Box 342 Merrill, WI 54452-0342  Fax: 715.539.4651
Church Mutual is a stock insurer whose policyholders are members of the parent mutual holding company formed on 01/01/20. S.I. = a stock insurer.
NAIC # 18767; CA Company ID # 2867-0

pr_Payment                                                                                              000-01-251075



00196445 000003 003 002 000



PROTECTING
THE GRE∧TER
GOOD*

December 22, 2022

ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH
2133 HIGHWAY 83 N
MONTICELLO AR  71655-9325

RE:  **Claim No.**      **000-01-251075**
     Policy No.       0094309-25-368984
     Insured:         ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH
                      MONTICELLO, AR
     Date of Loss:    July 23, 2022

Dear Karen Bayless And Rose Hill Cumberland Presbyterian Church:

During the investigation of your claim covered damage was found.  Payment is enclosed in accordance
with the enclosed estimate or as identified in the enclosed statement of loss.

If the work cannot be completed per this estimate or statement of loss, please contact me before
beginning repairs.  This will allow us to address any issues and reach an agreement.  Any differences
must be approved prior to the start of repairs to be considered for reimbursement.

If additional damage is noted or issues arise during the course of repair, please notify me immediately
prior to proceeding further.  Failure to do so may jeopardize reimbursement.

The payment reflects the following:

| | |
|---|---|
| The Replacement Cost Value | $213,326.91 |
| Less Recoverable Depreciation/Withholding | $9,178.09 |
| Less Nonrecoverable Depreciation | $0.00 |
| Actual Cash Value | $204,148.82 |
| Minus Prior Payments | $45,432.44 |
| Minus Deductible | $1,000.00 |
| Payment Amount | $157,716.38 |

Your policy provides Replacement Cost coverage for certain property.  With respect to this property, our
initial obligation is to pay the Actual Cash Value.  Actual Cash Value is either defined in the policy or by
your state, and typically includes an allowance for depreciation (a reduction based on the age, condition,
and/or useful life).

Per your policy, if you wish to make claim for the recoverable depreciation, please notify me in writing of
your intent to do so within 180 days.

Once the repairs have been completed submit the supporting invoices, receipts, etc. along with photos
showing the completed work to my attention.  You may recover up to the lesser of the amount shown as
Recoverable Depreciation or the amount that is actually incurred to perform repairs.

Church Mutual Insurance Company, S.I. (a stock insurer)  |  churchmutual.com  |  800.554.2642
Mail to Home Office: P.O. Box 357 Merrill, WI 54452-0357  Fax: 715.539.4650  |  Mail to Claims: P.O. Box 342 Merrill, WI 54452-0342  Fax: 715.539.4651
Church Mutual is a stock insurer whose policyholders are members of the parent mutual holding company formed on 01/01/20. S.I. = a stock insurer.
NAIC # 18767; CA Company ID # 2867-0

pr_Payment

000-01-251075

If you have additional information that has not been submitted previously, please forward at this time.

Please include the claim number on all correspondence to help assist with the handling of the above claim.

Your state requires notification of the following:

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

If you have questions regarding this claim, please contact me at (800) 554-2642, select Option 9, and enter Extension 7166.

Sincerely,

Bambi Hickey

Bambi Hickey
Claim Representative
bhickey@churchmutual.com

Enclosure(s):
    Check

Church Mutual Insurance Company, S.I. (a stock insurer) | churchmutual.com | 800.554.2642
Mail to Home Office: P.O. Box 357 Merrill, WI 54452-0357  Fax: 715.539.4650 | Mail to Claims: P.O. Box 342 Merrill, WI 54452-0342  Fax: 715.539.4651
Church Mutual is a stock insurer whose policyholders are members of the parent mutual holding company formed on 01/01/20. S.I. = a stock insurer.
NAIC # 18767; CA Company ID # 2867-0

pr_Payment                                                                                                    000-01-251075



PROTECTING THE GREATER GOOD

February 20, 2023

ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH
122 E SHELTON AVE
MONTICELLO AR 71655-4938

RE: **Claim No.**        **000-01-251075**
     **Policy No.**        0094309-25-368984
     **Insured:**        ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH
                  MONTICELLO, AR
     Date of Loss:        July 23, 2022

Dear Rose Hill Cumberland Presbyterian Church:

During the investigation of your claim covered damage was found. Payment is enclosed in accordance with the enclosed estimate or as identified in the enclosed statement of loss.

If the work cannot be completed per this estimate or statement of loss, please contact me before beginning repairs. This will allow us to address any issues and reach an agreement. Any differences must be approved prior to the start of repairs to be considered for reimbursement.

If additional damage is noted or issues arise during the course of repair, please notify me immediately prior to proceeding further. Failure to do so may jeopardize reimbursement.

The payment reflects the following:

| | |
|---|---|
| The Replacement Cost Value | $231,713.41 |
| Less Recoverable Depreciation/Withholding | $10,272.00 |
| Less Nonrecoverable Depreciation | $0.00 |
| Actual Cash Value | $221,441.41 |
| Minus Prior Payments | $203,148.82 |
| Minus Deductible | $1,000.00 |
| Payment Amount | $17,292.59 |

If you have additional information that has not been submitted previously, please forward at this time.

Please include the claim number on all correspondence to help assist with the handling of the above claim.

Your state requires notification of the following:

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Church Mutual Insurance Company, S.I.** (a stock insurer) | churchmutual.com | 800.554.2642
Mail to Home Office: P.O. Box 357 Merrill, WI 54452-0357 Fax: 715.539.4650 | Mail to Claims: P.O. Box 342 Merrill, WI 54452-0342 Fax: 715.539.4651
Church Mutual is a stock insurer whose policyholders are members of the parent mutual holding company formed on 01/01/20. S.I. = a stock insurer.
NAIC # 18767; CA Company ID # 2867-0

pr_Payment

000-01-251075



| | |
|---|---|
| **Policy Number:** | 0094309-25-368984 |
| **Claim Number:** | 000-01-251075 |
| **Date of Loss:** | 07/23/2022 |
| **Insured:** | ROSE HILL CUMBERLAND PRESBYTERIAN CHUR |
| | 122 E Shelton Ave Monticello, AR 71655-4938 |
| **Claimant:** | ROSE HILL CUMBERLAND PRESBYTERIAN CHUR |
| **Patient Account No.:** | Not Available |

| | |
|---|---|
| **Date of Check:** | 02/20/2023 |
| **Check Number:** | 2024804 |
| **Page:** | 1 of 22 |



P.O. Box 342
3000 Schuster Lane
Merrill, WI 54452-0342

**Mail To:**    ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH
122 E SHELTON AVE
MONTICELLO  AR  71655-4938

This check reflects payment for the following:

| Invoice Number | Service Dates | Amount |
|---|---|---|
| Not Available | Not Available | 17,292.59 |
| | **Total:** | 17,292.59 |

*For questions concerning your claim, please contact your claim handler*

COMMERCIAL PROPERTY
CP DS 00 10 00

# COMMERCIAL PROPERTY COVERAGE PART
# DECLARATIONS PAGE

**POLICY NO.** 0094309 25-368984       **EFFECTIVE DATE** 05/31/2022

☐ **"X" If Supplemental Declarations Is Attached**

## NAMED INSURED

ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH

## DESCRIPTION OF PREMISES

| Prem. No. | Bldg. No. | Location, Construction And Occupancy |
|-----------|-----------|--------------------------------------|

See Description of Premises Schedule

## COVERAGES PROVIDED

**Insurance At The Described Premises Applies Only For Coverages For Which A Limit Of Insurance Is Shown**

| Prem. No. | Bldg. No. | Coverage | Limit Of Insurance | Covered Causes Of Loss | Coinsurance* |
|-----------|-----------|----------|--------------------|-----------------------|--------------|

See Coverages Provided Schedule

## OPTIONAL COVERAGES

*If Extra Expense Coverage, Limits On Loss Payment Applicable Only When Entries Are Made In The Schedule Below

| Prem. No. | Bldg. No. | Agreed Value | | | Replacement Cost (X) | | |
|-----------|-----------|--------------|------|--------|----------|-----------|----------|
| | | Expiration Date | Cov. | Amount | Building | Pers. Prop. | Including Stock |

See Optional Coverages Schedule

| Inflation Guard (%) | | *Monthly Limit Of Indemnity | Maximum Period Of Indemnity | *Extended Period Of Indemnity |
|---------------------|---|------------------------------|-----------------------------|-------------------------------|
| Bldg. | Pers. Prop. | | | |

*Applies to Business Income Only

## MORTGAGEHOLDERS

| Prem. No. | Bldg. No. | Mortgageholder Name And Mailing Address |
|-----------|-----------|-----------------------------------------|

## DEDUCTIBLE

$1,000
**Exceptions:**

Exhibit  G

**DESCRIPTION OF PREMISES**

| Prem. No. | Bldg. No. | Location, Construction And Occupancy |
|---|---|---|
| 001 | 001 | CHURCH & CEMETERY<br>2133 Highway 83 N<br>Drew<br>Monticello, AR 71655-9325<br>Frame    CHURCH & CEMETERY |
| 001 | 002 | DWELLING, ONE-FAMILY NON OWNER OCCUPIED<br>1037 Binns Dr<br>Drew<br>Monticello, AR 71655-4255<br>Frame    DWELLING, ONE-FAMILY NON OWNER OCCUPIED |

 Copyright, Insurance Services Office, Inc., 1999

**COVERAGES PROVIDED    Insurance At The Described Premises Applies Only For Coverages For Which A Limit Of Insurance Is Shown**

| Prem. No. | Bldg. No. | Coverage | Limit Of Insurance | Covered Causes Of Loss | Coinsurance* |
|---|---|---|---|---|---|
| Group No.: 001 – | | | | | |
| | | Blanket Building, Personal Property of Insured | $1,474,200 | | |
| Group No.: 002 – | | | | | |
| | | Blanket Business Income Other Than Rental Value | $10,000 | | |

**Location Level Coverages**

| Prem. No. | Bldg. No. | Coverage | Limit Of Insurance | Covered Causes Of Loss | Coinsurance* |
|---|---|---|---|---|---|
| 001 | 001 | Building | Included in Blanket: 001 | Special Form Including Theft | 100% |
| | | Personal Property of Insured | Included in Blanket: 001 | Special Form Including Theft | 100% |
| | | Business Income Other Than Rental Value | Included in Blanket: 002 | Special Form Including Theft | No Coinsurance |
| 001 | 002 | Building | Included in Blanket: 001 | Special Form Including Theft | 100% |
| | | Personal Property of Insured | Included in Blanket: 001 | Special Form Including Theft | 100% |
| | | Business Income Other Than Rental Value | Included in Blanket: 002 | Special Form Including Theft | No Coinsurance |

**OPTIONAL COVERAGES      Applicable Only When Entries Are Made In The Schedule Below**

| Prem. | Bldg. |
| --- | --- |
| No. | No. |

001   001   Building
Agreed Value
Expiration Date: 05/31/2023
Amount:    $1,027,950
Replacement Cost
Inflation Guard (%): 4

Personal Property of Insured
Agreed Value
Expiration Date: 05/31/2023
Amount:      $154,550
Replacement Cost
Inflation Guard (%): 4

001   002   Building
Agreed Value
Expiration Date: 05/31/2023
Amount:      $253,050
Replacement Cost
Inflation Guard (%): 4

Personal Property of Insured
Agreed Value
Expiration Date: 05/31/2023
Amount:      $38,850
Replacement Cost
Inflation Guard (%): 4

**FORMS APPLICABLE**

**To All Coverages:**

```
CMCP 04 04 (03-19)
CMCP 04 22 (03-19)
CMCP 04 26 (02-20)
```

**To Specific Premises/Coverages:**

| Prem. No. | Bldg. No. | Coverages | Form Number |
|-----------|-----------|-----------|-------------|
| 001 | 001 | Building | CP 00 10 (10-12) |
| | | | CP 02 99 (06-07) |
| | | | CP 10 30 (09-17) |
| | | Personal Property of Insured | CP 00 10 (10-12) |
| | | | CP 10 30 (09-17) |
| | | Business Income Other Than Rental Value | CP 00 30 (10-12) |
| | | | CP 10 30 (09-17) |
| | | All Coverages | CP 00 90 (07-88) |
| | | | CP 01 40 (07-06) |
| | | | CP 10 75 (12-20) |
| | | | CP DS 00 (10-00) |
| 001 | 002 | Building | CP 00 10 (10-12) |
| | | | CP 02 99 (06-07) |
| | | | CP 10 30 (09-17) |
| | | Personal Property of Insured | CP 00 10 (10-12) |
| | | | CP 10 30 (09-17) |
| | | Business Income Other Than Rental Value | CP 00 30 (10-12) |
| | | | CP 10 30 (09-17) |
| | | All Coverages | CP 00 90 (07-88) |
| | | | CP 01 40 (07-06) |
| | | | CP 10 75 (12-20) |
| | | | CP DS 00 (10-00) |

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:

    a. During the policy period shown in the Declarations; and

    b. Within the coverage territory.

2. The coverage territory is:

    a. The United States of America (including its territories and possessions);

    b. Puerto Rico; and

    c. Canada.

## I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987
CP 00 90 07 88

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

  (1) Completed additions;

  (2) Fixtures, including outdoor fixtures;

  (3) Permanently installed:

    (a) Machinery; and

    (b) Equipment;

  (4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

    (a) Fire-extinguishing equipment;

    (b) Outdoor furniture;

    (c) Floor coverings; and

    (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

  (5) If not covered by other insurance:

    (a) Additions under construction, alterations and repairs to the building or structure;

    (b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

  (1) Furniture and fixtures;

  (2) Machinery and equipment;

  (3) "Stock";

  (4) All other personal property owned by you and used in your business;

  (5) Labor, materials or services furnished or arranged by you on personal property of others;

  (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

    (a) Made a part of the building or structure you occupy but do not own; and

    (b) You acquired or made at your expense but cannot legally remove;

  (7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

  (1) In your care, custody or control; and

  (2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

© Insurance Services Office, Inc., 2011

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

## 2. Property Not Covered

Covered Property does not include:

a. Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

b. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

c. Automobiles held for sale;

d. Bridges, roadways, walks, patios or other paved surfaces;

e. Contraband, or property in the course of illegal transportation or trade;

f. The cost of excavations, grading, backfilling or filling;

g. Foundations of buildings, structures, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

h. Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

i. Personal property while airborne or waterborne;

j. Bulkheads, pilings, piers, wharves or docks;

k. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

l. Retaining walls that are not part of a building;

m. Underground pipes, flues or drains;

n. Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, n., does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

o. The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

p. Vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) Are licensed for use on public roads; or

(2) Are operated principally away from the described premises.

This paragraph does not apply to:

(a) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

© Insurance Services Office, Inc., 2011

(b) Vehicles or self-propelled machines, other than autos, you hold for sale;

(c) Rowboats or canoes out of water at the described premises; or

(d) Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

q. The following property while outside of buildings:

(1) Grain, hay, straw or other crops;

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

### 3. Covered Causes Of Loss

See applicable Causes Of Loss form as shown in the Declarations.

### 4. Additional Coverages

#### a. Debris Removal

(1) Subject to Paragraphs (2), (3) and (4), we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

(b) Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

(c) Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

(d) Remove property of others of a type that would not be Covered Property under this Coverage Form;

(e) Remove deposits of mud or earth from the grounds of the described premises;

(f) Extract "pollutants" from land or water; or

(g) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

(4) We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

© Insurance Services Office, Inc., 2011

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| Limit of Insurance: | $ 90,000 |
|---|---|
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| Limit of Insurance: | $ 90,000 |
|---|---|
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

    © Insurance Services Office, Inc., 2011    CP 00 10 10 12

#### d. Pollutant Clean-up And Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

#### e. Increased Cost Of Construction

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.(3) through e.(9) of this Additional Coverage.

(3) The ordinance or law referred to in e.(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

   © Insurance Services Office, Inc., 2011   CP 00 10 10 12

(4) The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

## 5. Coverage Extensions

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

### a. Newly Acquired Or Constructed Property

#### (1) Buildings

If this policy covers Building, you may extend that insurance to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

### (2) Your Business Personal Property

(a) If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

(i) Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

(ii) Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(b) This Extension does not apply to:

(i) Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

(ii) Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

### (3) Period Of Coverage

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

 © Insurance Services Office, Inc., 2011

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

    © Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

    (a) The trailer is used in your business;

    (b) The trailer is in your care, custody or control at the premises described in the Declarations; and

    (c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

    (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

    (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

    (a) Will end 90 days after the business personal property has been placed in the storage unit;

    (b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;

2. Pollutant Clean-up And Removal;

3. Increased Cost Of Construction; and

4. Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Building 1: | $ | 60,000 |
| Limit of Insurance – Building 2: | $ | 80,000 |
| Loss to Building 1: | $ | 60,100 |
| Loss to Building 2: | $ | 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

```
$ 60,100
–    250
$ 59,850 Loss Payable – Building 1
```

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | | |
|---|---|---|
| Loss to Building 1: | $ | 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss to Building 2: | $ | 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss Payable – Building 1: | $ | 60,000 |
| (Limit of Insurance) | | |
| Loss Payable – Building 2: | $ | 80,000 |
| (Limit of Insurance) | | |
| Total amount of loss payable: | | $140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

© Insurance Services Office, Inc., 2011

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

© Insurance Services Office, Inc., 2011

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety-glazing material if required by law.

e. Tenants' Improvements and Betterments at:

   (1) Actual cash value of the lost or damaged property if you make repairs promptly.

   (2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

     (a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

     (b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

     If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

   (3) Nothing if others pay for repairs or replacement.

## F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

Step (1): $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $100,000 ÷ $200,000 = .50

Step (3): $40,000 x .50 = $20,000

Step (4): $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

 © Insurance Services Office, Inc., 2011

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:   The value of the property is:

Building at Location 1:     $ 75,000

Building at Location 2:     $100,000

Personal Property
at Location 2:     $ 75,000

    $250,000

The Coinsurance percentage
for it is:     90%

The Limit of Insurance for
Buildings and Personal Property
at Locations 1 and 2 is:     $180,000

The Deductible is:     $ 1,000

The amount of loss is:

Building at Location 2:     $ 30,000

Personal Property
at Location 2:     $ 20,000

    $ 50,000

Step (1): $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2): $180,000 ÷ $225,000 = .80

Step (3): $50,000 x .80 = $40,000

Step (4): $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

© Insurance Services Office, Inc., 2011

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

(1) On or after the effective date of this Optional Coverage; and

(2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

If: The applicable Limit of Insurance is: $ 100,000

The annual percentage increase is: 8%

The number of days since the beginning of the policy year (or last policy change) is: 146

The amount of increase is:
$100,000 x .08 x 146 ÷ 365 = $ 3,200

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

(1) Personal property of others;

(2) Contents of a residence;

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

(4) "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

(3) If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

(4) We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to **f.** below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

 © Insurance Services Office, Inc., 2011 CP 00 10 10 12

COMMERCIAL PROPERTY
CP 10 30 09 17

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance Or Law

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

### b. Earth Movement

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

 © Insurance Services Office, Inc., 2016

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

(1) Originates away from the described premises; or

(2) Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

 © Insurance Services Office, Inc., 2016 CP 10 30 09 17

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

(1) When "fungus", wet or dry rot or bacteria result from fire or lightning; or

(2) To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

(1) Electrical or electronic wire, device, appliance, system or network; or

(2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(a) Electrical current, including arcing;

(b) Electrical charge produced or conducted by a magnetic or electromagnetic field;

(c) Pulse of electromagnetic energy; or

(d) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.**(1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

 © Insurance Services Office, Inc., 2016

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

  **(1)** You do your best to maintain heat in the building or structure; or

  **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

  This exclusion:

  **(1)** Applies whether or not an act occurs during your normal hours of operation;

  **(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

  **(1)** An abrupt falling down or caving in;

  **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

  **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

  But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

  **(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

  **(b)** To collapse caused by one or more of the following:

    **(i)** The "specified causes of loss";

    **(ii)** Breakage of building glass;

    **(iii)** Weight of rain that collects on a roof; or

    **(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

  This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

  **(1)** Planning, zoning, development, surveying, siting;

  **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

  **(3)** Materials used in repair, construction, renovation or remodeling; or

  **(4)** Maintenance;

 © Insurance Services Office, Inc., 2016 CP 10 30 09 17

of part or all of any property on or off the described premises.

### 4. Special Exclusions

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused by or resulting from:

(a) Damage or destruction of "finished stock"; or

(b) The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

(2) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(3) Any increase of loss caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

(4) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

(5) Any other consequential loss.

**b. Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

(a) Your cancelling the lease;

(b) The suspension, lapse or cancellation of any license; or

(c) Any other consequential loss.

**c. Legal Liability Coverage Form**

(1) The following exclusions do not apply to insurance under this Coverage Form:

(a) Paragraph **B.1.a.** Ordinance Or Law;

(b) Paragraph **B.1.c.** Governmental Action;

(c) Paragraph **B.1.d.** Nuclear Hazard;

(d) Paragraph **B.1.e.** Utility Services; and

(e) Paragraph **B.1.f.** War And Military Action.

(2) The following additional exclusions apply to insurance under this Coverage Form:

(a) **Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

(i) Your assumption of liability was executed prior to the accident; and

(ii) The building is Covered Property under this Coverage Form.

(b) **Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   **a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   **b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   **c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      **(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      **(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

   However, this limitation does not apply to:

      **(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

      **(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

      **(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

      **(2)** Changes in or extremes of temperature;

      **(3)** Disease;

      **(4)** Frost or hail; or

      **(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   **a.** Animals, and then only if they are killed or their destruction is made necessary.

   **b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      **(1)** Glass; or

      **(2)** Containers of property held for sale.

   **c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

   However, this limitation does not apply:

      **(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.**, is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

**a.** $2,500 for furs, fur garments and garments trimmed with fur.

**b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**c.** $2,500 for patterns, dies, molds and forms.

**d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.**, does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

#### D. Additional Coverage – Collapse

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(1)** A cause of loss listed in **2.a.** or **2.b.**;

**(2)** One or more of the "specified causes of loss";

**(3)** Breakage of building glass;

**(4)** Weight of people or personal property; or

**(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

**a.** A building or any part of a building that is in danger of falling down or caving in;

**b.** A part of a building that is standing, even if it has separated from another part of the building; or

**c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

**f.** Piers, wharves and docks;

**g.** Beach or diving platforms or appurtenances;

**h.** Retaining walls; and

**i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

**(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

**(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property if:

**a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.**;

**b.** The personal property which collapses is inside a building; and

**c.** The property which collapses is not of a kind listed in **4.**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

**a.** A "specified cause of loss" other than fire or lightning; or

**b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

**a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

**b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

**c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

© Insurance Services Office, Inc., 2016

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.**, applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

 © Insurance Services Office, Inc., 2016

**3. Glass**

    **a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

    **b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

        **(1)** The cost of filling sinkholes; or

        **(2)** Sinking or collapse of land into man-made underground cavities.

    **b.** Falling objects does not include loss or damage to:

        **(1)** Personal property in the open; or

        **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    **c.** Water damage means:

        **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

        **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

COMMERCIAL PROPERTY
CP 00 30 10 12

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

© Insurance Services Office, Inc., 2011

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

### 3. Covered Causes Of Loss, Exclusions And Limitations

See applicable Causes Of Loss form as shown in the Declarations.

### 4. Additional Limitation – Interruption Of Computer Operations

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

### 5. Additional Coverages

#### a. Civil Authority

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

© Insurance Services Office, Inc., 2011

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

    (a) Used in the construction, alterations or additions; or

    (b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

(1) **Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    (a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

    (b) Ends on the earlier of:

        (i) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

        (ii) 60 consecutive days after the date determined in (1)(a) above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(2) **"Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

    (a) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

    (b) Ends on the earlier of:

        (i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

        (ii) 60 consecutive days after the date determined in (2)(a) above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

(1) Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

© Insurance Services Office, Inc., 2011   CP 00 30 10 12

(2) 30 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

1. Alterations And New Buildings;

2. Civil Authority;

3. Extra Expense; or

4. Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Appraisal

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

## 2. Duties In The Event Of Loss

a. You must see that the following are done in the event of loss:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

**From:** Johnson Ogles <jogles@aol.com>
**Sent:** Friday, January 6, 2023 1:32 PM
**To:** Hickey, Bambi <bhickey@churchmutual.com>
**Subject:** Re: 000-01-251075

You don't often get email from jogles@aol.com. Learn why this is important

> **CAUTION** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and are expecting the email. If you are in doubt, verify with the sender.



Thx. What do you suggest to get this claim resolved with the restoration company?

John Ogles

Ogles Law Firm, P.A.

200 South Jeff Davis

Jacksonville, Ark 72076

Ph 501.982.8339

Fax 501.985.1403

Licensed in Ark, Tx, US Tax and Supreme Court.

On Friday, January 6, 2023, 1:28 PM, Hickey, Bambi <bhickey@churchmutual.com> wrote:

Hey Mr. Ogles;

4            Exhibit ___H___

I am not exactly sure what you are looking for but, here are the documents used to support the payments made to date.

No formal denials have been issued but, payment for undisputed costs have been sent to the church.

Thank you,

Bambi L. Hickey
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 804-7166
Main:  (800) 554-2642, Option 4, Ext. 7166
Fax: 715-539-4651

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog. Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

**From:** Hickey, Bambi
**Sent:** Friday, December 23, 2022 11:22 AM
**To:** ggpace@att.net
**Subject:** 000-01-251075

Hi Ms. Pace;

The check was issued yesterday and likely going out today. Here are the supporting documents and accounting sheet that help outline the payment. The adjuster's estimate is attached along with the summary of the audit completed regarding the charges from Service Restoration.  Payment based on Industry Standards but, we will continue to work on a resolution.

I will still need to re-issue the other check. My manager processed the payment yesterday.

Hope you have a happy holiday.

5

Shelly Wicker

| | |
|---|---|
| **From:** | Hickey, Bambi |
| **Sent:** | Friday, January 6, 2023 3:03 PM |
| **To:** | JOHN OGLES |
| **Cc:** | Claims - General |
| **Subject:** | RE: 000-01-251075 |

**Categories:**          Claim Filings

Thanks for letting me know.

Thank you,

Bambi L. Hickey
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 804-7166
Main:  (800) 554-2642, Option 4, Ext. 7166
Fax: 715-539-4651

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20.  S.I. = a stock insurer.

**From:** JOHN OGLES <jogles@aol.com>
**Sent:** Friday, January 6, 2023 2:55 PM
**To:** Hickey, Bambi <bhickey@churchmutual.com>
**Subject:** Re: 000-01-251075

CAUTION This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and are expecting the email. If you are in doubt, verify with the sender.

I forgot to tell you the restoration company filed a lien on the property.     

John Ogles
Ogles Law Firm, P.A.
200 South Jeff Davis
P.O. Box 891
Jacksonville, Ar 72076
Licensed in Ar, Tx, US Tax  and Supreme Court

1

**Shelly Wicker**

| | |
|---|---|
| **From:** | JOHN OGLES <jogles@aol.com> |
| **Sent:** | Friday, January 6, 2023 3:37 PM |
| **To:** | Hickey, Bambi |
| **Cc:** | Claims - General |
| **Subject:** | Re: 000-01-251075 |
| | |
| **Categories:** | Claim Filings |

You don't often get email from jogles@aol.com. Learn why this is important

CAUTION This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and are expecting the email. If you are in doubt, verify with the sender.

Please send me your evaluations that show the charges are excessive and not to standards.  Thx 

John Ogles
Ogles Law Firm, P.A.
200 South Jeff Davis
P.O. Box 891
Jacksonville, Ar 72076
Licensed in Ar, Tx, US Tax  and Supreme Court


On Jan 6, 2023, at 3:03 PM, Hickey, Bambi <bhickey@churchmutual.com> wrote:


Thanks for letting me know.

Thank you,

Bambi L. Hickey
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 804-7166
Main:  (800) 554-2642, Option 4, Ext. 7166
Fax: 715-539-4651

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20.  S.I. = a stock insurer.

Please reach out and see if there is a path for resolution.

Thank you,

Bambi L. Hickey
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 804-7166
Main: (800) 554-2642, Option 4, Ext. 7166
Fax: 715-539-4651

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

**From:** JOHN OGLES <jogles@aol.com>
**Sent:** Thursday, January 12, 2023 8:50 AM
**To:** Hickey, Bambi <bhickey@churchmutual.com>
**Subject:** Service Restoration Lien

CAUTION This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and are expecting the email. If you are in doubt, verify with the sender.

See attached lien. Please hire an attorney to represent the church regarding this lien. 

John Ogles
Ogles Law Firm. P.A.
501.982.8339 ph
501.985.1403
200 South Jeff Davis
P.O. Box 891
Jacksonville, AR 72076
Licensed in Ar, Tx, Federal Courts, U.S. Tax and Supreme Court.

2

**Shelly Wicker**

| | |
|---|---|
| **From:** | Hickey, Bambi |
| **Sent:** | Friday, January 13, 2023 9:50 AM |
| **To:** | Claims - General |
| **Subject:** | 000-01-251075 |

| | |
|---|---|
| **Categories:** | Claim Filings |

000-01-251075

Thank you,

Bambi L. Hickey
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 804-7166
Main:  (800) 554-2642, Option 4, Ext. 7166
Fax: 715-539-4651

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

**From:** Claims - General <claims@churchmutual.com>
**Sent:** Friday, January 13, 2023 8:52 AM
**To:** Hickey, Bambi <bhickey@churchmutual.com>
**Subject:** RE: Service Restoration Lien

Morning, do you have the claim number for this?
Thanks

**From:** Hickey, Bambi <bhickey@churchmutual.com>
**Sent:** Thursday, January 12, 2023 10:01
**To:** JOHN OGLES <jogles@aol.com>; Claims - General <claims@churchmutual.com>
**Cc:** Richmond, David <drichmond@churchmutual.com>
**Subject:** RE: Service Restoration Lien

Hey David;

I am sending you in this email so that Mr. Ogles has your email address. I forwarded you the lien in a previous email.

I provided him with your direct number too.

1

CM 0101

**Shelly Wicker**

| | |
|---|---|
| **From:** | Johnson Ogles <jogles@aol.com> |
| **Sent:** | Wednesday, February 1, 2023 9:25 AM |
| **To:** | Hickey, Bambi |
| **Cc:** | Claims - General |
| **Subject:** | Fwd: RHCP lien |
| **Attachments:** | RHCP lien.pdf |

You don't often get email from jogles@aol.com. Learn why this is important

CAUTION This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and are expecting the email. If you are in doubt, verify with the sender.



When is this lien going to be handled by your insurance company.  Under the policy you are to hire my clients an attorney and defend them.

John Ogles
Ogles Law Firm, P.A.
200 S. Jeff Davis Jacksonville ,Ark 72076
ph. 501.982.8339  fax 501.985.1403
Licensed in Ark, Texas, U.S. Tax Court and Supreme Court

1

_**Service Restoration, Inc.**_
300 W. 83rd Street
Bloomington, MN 55420
612-223-6160

December 13, 2022

Rosehill Cumberland Church
2133 Highway 83 North
Monticello, AR 71655

Dear Rosehill Cumberland Church :

Service Restoration, Inc.  has begun the MECHANIC'S LIEN process for the labor and
material provided to 2133 Highway 83 North, Monticello, AR 71655 .

We have enclosed a statement for your review. This notice states if payment is not made
within ten days (10) of receipt of this demand, Claimant intends to file a Mechanic's
Lien, without further notice. If you have any questions or wish to make payment
arrangements, please contact Service Restoration, Inc.

A Mechanic's Lien on your property has multiple negative consequences against you as a
property owner. A lien on your property will make it difficult to sell or refinance your
home. In addition, a lien against your property can lead to a foreclosure lawsuit and
possible loss of your property.

If you do have questions about the notice you should call your contractor or project
manager.

Thank you,

Authorized Agent for Service Restoration, Inc.

## Contractors Notice of Intention
## To File Claim of Lien

(This is not a Mechanic's Lien. It is a notice required by state law.)

Date: December 13, 2022

| To Owner or Reputed Owner: | From Lien Claimant: |
|---|---|
| Name: Rosehill Cumberland Church | Name: Service Restoration, Inc. |
| Address: 2133 Highway 83 North<br>Monticello, AR 71655 | Address: 300 W. 83rd Street<br>Bloomington, MN 55420<br><br>Phone: 612-223-6160 |

**Please take notice that the undersign lien claimant intends to file a Mechanic's Lien against your property if payment is not made for moneys owed as follows:**

**Project Name:** Rosehill Water Mitigation and Mold Removal Project

**Property Subject to Lien:** 2133 Highway 83 North, Monticello, AR 71655

**General description of construction services furnished by Lien Claimant:**

Labor and materials for water mitigation work and mold removal

**Amount Due:** Through **12/13/2022 is $232,215.09**. Unpaid invoice(s) attorney fees and court cost will be requested.

**Name and address of Prime contractor or subcontractor with whom the undersigned entered into a contract order with:**
Rosehill Cumberland Church Contact Jacob Hayes
2133 Highway 83 North
Monticello, AR 71655

The above- described work was provide to your property, at your instance, by the Claimant. If payment is not made within ten days (10) of receipt of this demand, Claimant intends to file a Mechanics Lien, without further notice. If you have any questions or wish to make payment arrangements, please contact Service Restoration, Inc. immediately.

Authorized agent for Service Restoration, Inc.

My clients are having a board meeting tonight to decide what to do as far as hiring an attorney. Under the insurance policy you are to defend them against the lien and hire them an attorney. When will someone contact me to discuss?

John Ogles
Ogles Law Firm. P.A.
501.982.8339 ph
501.985.1403
200 South Jeff Davis
P.O. Box 891
Jacksonville, AR 72076
Licensed in Ar, Tx, Federal Courts, U.S. Tax and Supreme Court.

On Feb 1, 2023, at 12:14 PM, Hickey, Bambi <bhickey@churchmutual.com> wrote:

Hey David;

Please reach out to Mr. Ogles to address the lien.

Thank you,

*My goal is to ensure you are delighted with the service you have received. Please share any comments or concerns you have regarding your Claims experience with my Supervisor, David Richmond Drichmond@churchmutual.com or 715.804-7187.*

Bambi L. Hickey
Commercial Property Claims Adjuster
Church Mutual Insurance Company, S.I.
Office: (715) 804-7166
Main: (800) 554-2642, Option 4, Ext. 7166
Fax: 715-539-4651

www.churchmutual.com | www.cmregent.com | www.cmselect.com

Protect your people and property with safety tips, educational webinars and more on our blog.
Subscribe today to get the newest articles sent right to your inbox!

This email message is confidential, intended only for the named recipient(s) above, and may contain information that is privileged, attorney work product, or exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please notify me immediately by responding to this email and then delete this email message from your computer (inbox and sent box). Thank you.

Church Mutual Insurance Company, S.I. (a stock insurer) is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

**From:** Johnson Ogles <jogles@aol.com>
**Sent:** Wednesday, February 1, 2023 9:25 AM
**To:** Hickey, Bambi <bhickey@churchmutual.com>
**Cc:** Claims - General <claims@churchmutual.com>
**Subject:** Fwd: RHCP lien

CM 0101



PROTECTING
THE GREATER
GOOD

# Your Policy Enclosed

Exhibit $\underline{I}$

ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH
122 E SHELTON AVE
MONTICELLO AR 71655-4938

11-068
YOUR PRODUCER:
RAYMOND E. RAPER
CHURCH MUTUAL INS CO
3000 SCHUSTER LN
MERRILL WI 54452



*063the CPR 723-22*   *415 870-723-5000*

*Spoke to a lady with Church Mutual who took basic info. to get the claim started. Once she enters the info, someone will call with a claim # & will be able to answer any questions.*

## PROTECTING THE GREATER GOOD®

## Church Mutual® INSURANCE

# Contact Menu

**Customer Service**

To access your policy, answer questions, provide certificates of insurance and initiate policy changes.

Telephone: 800-554-2642 (Option 1)
Email: customerservice@churchmutual.com
Fax: 715-264-2329
Monday-Friday 7 a.m. to 7 p.m. CST

*option 1 then option 2*

**Claims**

To report a claim or check the status of a claim.

Telephone: 800-554-2642 (Option 2)
Email: claims@churchmutual.com
Fax: 715-539-4651
Monday-Friday 7 a.m. to 6 p.m. CST
We also remain on call round-the-clock and may be reached through our after-hours answering service.

**Billing**

To make a payment or get your questions answered regarding premium payments or payment plans.

Telephone: 800-554-2642 (Option 3)
Email: billing@churchmutual.com
Fax: 715-539-4402
Monday-Friday 7 a.m. to 5:30 p.m. CST

**Risk Control Central**

To get answers on how best to protect your people, your property and the traditions you hold dear.

Telephone: 800-554-2642 (Option 4 - Ext. 5213)
Email: riskconsulting@churchmutual.com
Monday-Friday 8 a.m. to 5:15 p.m. CST

**Nurse Hotline**

For not life threatening injuries to employees covered by a Church Mutual workers' compensation policy, call our Nurse Hotline at 800-322-4662.

Nurses are available 24/7 to consult with the employee and his or her manager.

# POLICY NOTICE
## S.I. Clarification

### ABOUT CHURCH MUTUAL INSURANCE COMPANY, S.I. (a stock insurer)[1]

Effective January 1, 2020, Church Mutual Insurance Company ("Church Mutual") was reorganized under Wisconsin law from a mutual insurance company to a stock insurance company within a mutual holding company structure. As a result of the restructuring, Church Mutual updated its corporate name to Church Mutual Insurance Company, S.I. (a stock insurer) and updated its policies to reflect the impact shifting from a mutual insurer to a stock insurer within a mutual holding company group.

As a policyholder of Church Mutual, your policy will highlight that you are now a member of Church Mutual Holding Company, Inc. (CMHC), and you will be entitled to vote, either in person or by proxy, on each issue that comes before meetings of the members. You will be able to cast only one vote regardless of the number of policies you purchase. Even though Church Mutual will be converted to a stock insurer, there will be no issuance of stock to any individual policyholders. All of Church Mutual's stock will be solely owned by the CMHC.

---

[1] Church Mutual is a stock insurer whose policyholders are members of the parent mutual holding company formed on 1/1/20. S.I. = a stock insurer.

# Church Mutual Insurance Company, S.I.
## Privacy Practices Disclosure Notice

### Our Company Policy

We do not disclose any nonpublic personal information about our individual policyholders or claimants to any affiliate or any nonaffiliated third party other than those permitted by law and only for the purpose of transacting the business of your insurance coverage or your claim. **We do not sell any customer or policyholder information to mailing list companies or mass marketing companies. We treat our policyholder information as confidential.**

Some states have enacted legislation that regulates the use of nonpublic information maintained by financial service institutions and insurance carriers on their customers who are insured with them. In the interest of providing you with an affirmation of our commitment to maintaining the privacy of customer and claimant information, we have prepared the following Privacy Practices Disclosure Notice. Please take time to review the information, as it is relevant to our business partnership with you.

This Privacy Practices Disclosure Notice outlines the privacy practices of Church Mutual Insurance Company, S.I. listed below:

This Privacy Practices Disclosure Notice will notify you of:

1. The categories of nonpublic, personal, identifiable information (not corporate information) that Church Mutual collects from you or from a third party about you or about participants, beneficiaries or claimants under your insurance coverage;

2. How Church Mutual uses the information;

3. The categories of affiliates and nonaffiliate third parties with whom Church Mutual shares the information, as permitted by law; and

4. The kind of security policies and procedures that are in place to protect the confidentiality and security of nonpublic personal information provided to Church Mutual.

If you have questions or concerns regarding this Privacy Practices Disclosure Notice, you should contact Church Mutual by sending an email to ethics@churchmutual.com or by writing to us at:

Sandra M. Woller
Assistant Vice President – Chief Compliance Officer
Church Mutual Insurance Company, S.I.
3000 Schuster Lane
P.O. Box 357
Merrill, WI 54452-0357

### 1. PERSONALLY IDENTIFIABLE INFORMATION COLLECTED

Church Mutual wants you to conduct business with us knowing that we protect personal information. Church Mutual collects personally identifiable information from you or from third parties about you or about participants, beneficiaries or claimants under your insurance coverage as a part of the insurance application, underwriting, claims, administration and servicing process.

We collect nonpublic personal information from the following sources:

- Information we receive on applications or other forms and which may include policyholder, participant, beneficiary or claimant name, address, telephone number, social security number, household information, vehicle and driver information, date of birth, medical information related to underwriting and claims and insurance coverage information;

FM: GR01 (1-2020)

- Information about transactions with us, our affiliates or others, including information about previous claims or accidents, medical information related to claims, information about the circumstances of your accident or injury (if applicable) and the names of witnesses and other contact information; and

- Information we receive from consumer reporting agencies, state motor vehicle departments and inspection services.

## 2.   HOW THE INFORMATION IS USED

The information Church Mutual collects is used to provide policy and premium quotes, process underwriting applications, administer claims and answer questions or concerns about our insurance products and services. We also use the information for account administration; reporting, investigating, or preventing fraud or material misrepresentation; processing premium billing payments; processing and defending insurance claims; administering insurance benefits (including utilization review activities); and as otherwise required or permitted by federal or state law.

Church Mutual maintains paper copies or electronic archives of the information provided by you or by a third party for policy quoting for processing and administering your application or claims made under your policy and for improving our products and services. This information is kept internal to Church Mutual, except when needed to verify the information provided, to service your policy or claim as required or permitted by law. The information is not available to the general public. Church Mutual retains the information collected when a claim is filed under your policy for as long as required by law or regulation or as long as the claim is open and thereafter for a period set by the appropriate underwriting or claims records retention policies of Church Mutual.

## 3.   SHARING INFORMATION GATHERED

We do not disclose nonpublic personal information about you or about participants, beneficiaries or claimants under your insurance policy to anyone, except as permitted by law. We may share information about you or about participants, beneficiaries or claimants under your policy in the normal business of conducting insurance operations, such as providing you with an insurance quote or processing, servicing and administering your insurance policy and your claims.

Even without your authorization, once you become a Church Mutual customer or claimant, we are permitted by law to share information about you to entities, such as:

- A third party if it is reasonably necessary to enable the party to perform services for us, such as claims investigations, appraisals or the detection of fraud or material misrepresentations;

- Any of our affiliated companies who provide services to you;

- Insurance regulatory authorities, reporting agencies or, if applicable, involuntary market administrators;

- State motor vehicle department to obtain a report of any accidents or convictions;

- Law enforcement agencies or other governmental authorities to protect our interest or to report illegal activities;

- Persons or organizations conducting insurance actuarial or research studies, subject to appropriate confidentiality agreements; and

- As otherwise permitted or required by law.

FM: GR01 (1-2020)

We also are permitted by law to disclose the following information to companies that perform marketing services on our behalf or with whom we have joint marketing agreements, including:

- Information we receive on applications or other forms, such as policyholder or claimant name, address, social security number, insurance coverages, vehicle and driver information and certain claims information;

- Information about transactions with us, our affiliates or others, such as insurance coverages, vehicle and driver information and claims information; and

- Information we receive from third parties, such as a consumer reporting agency, state motor vehicle records or claims history.

We do not sell any customer or policyholder information to mailing list companies or mass marketing companies. We treat our policyholder information as confidential.

## 4.  SECURITY POLICIES AND PROCEDURES

We restrict access to nonpublic personal information about you or about participants, beneficiaries and claimants under your insurance policy to those employees who need to know that information to provide products or services to you. We maintain physical, electronic and procedural safeguards that comply with state and federal regulations to guard your nonpublic personal information.

Church Mutual also uses a wide variety of data protection procedures and computer hardware and software tools to guard system and data privacy and integrity. Church Mutual's computer systems also are protected by additional measures, such as encrypted data transmissions, network routers and firewalls intended to prevent unauthorized access.

## 5.  ACCESS AND CORRECT YOUR PERSONAL INFORMATION

You may request access to certain information about you that we have in our records. To request access, please send us a written request. Be sure to reasonably describe the information you want. If you believe that your information is incomplete or inaccurate, you may request that we make changes. Please send any of the requests listed above in writing to:

Chief Compliance Officer
Church Mutual Insurance Company, S.I.
3000 Schuster Lane
P.O. Box 357
Merrill, WI 54452-0357

If you request corrections, additions or deletions, we will either make the changes that you request or notify you why we will not do so. If we decline your request, in some states you may have the right to file a concise statement with us about the dispute.

The rights in this section do not apply in certain cases, such as information related to litigation.

## 6.  MODIFICATIONS TO OUR PRIVACY POLICY

We reserve the right to change our privacy practices in the future, which may include sharing nonpublic personal information about you with nonaffiliated third parties. Before we do that, we will provide you with a revised Privacy Practices Disclosure Notice and give you the opportunity to opt out of that type of information sharing.

FM: GR01 (1-2020)

**COMMERCIAL PROPERTY**
**CP P 020 12 20**

# CYBER INCIDENT EXCLUSION ENDORSEMENT ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsement which applies to your renewal policy being issued by us:

**CP 10 75 Cyber Incident Exclusion**

When this endorsement is attached to your policy, it generally excludes direct physical loss of or damage to Covered Property resulting from a cyber incident; however, if a cyber incident as described in this exclusion results in fire or explosion, we will pay for the loss or damage to Covered Property caused by that fire or explosion subject to the applicable limits of insurance.

This exclusion does not apply to the extent that coverage is provided in the:

- Additional Coverage – Electronic Data; or
- Additional Coverage – Interruption Of Computer Operations.

This exclusion also does not apply to the Electronic Commerce (E-Commerce) endorsement if such endorsement is attached to your policy.

**CP 04 40 Spoilage Coverage**

If this endorsement is attached to your policy, Paragraph **F.** of this endorsement expressly states that the Cyber Incident Exclusion applies to such coverage.

 © Insurance Services Office, Inc., 2020

# CHURCH MUTUAL INSURANCE COMPANY, S.I.



3000 Schuster Lane
Merrill, WI 54452

## COMMON POLICY DECLARATIONS

**POLICY NUMBER:** 0094309 25-368984          **PREVIOUS POLICY NUMBER:** 0094309 25-209561

| COMPANY NAME 18767 | PRODUCER NAME 11-068 |
|---|---|
| Church Mutual Insurance Company, S.I.<br>3000 Schuster Lane<br>Merrill, WI 54452<br>(800) 554-2642 | RAYMOND E. RAPER<br>CHURCH MUTUAL INS CO<br>3000 SCHUSTER LN<br>MERRILL, WI 54452 |

**NAMED INSURED:** ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH

**MAILING ADDRESS:** 122 E Shelton Ave
Monticello, AR 71655-4938

**POLICY PERIOD: FROM**   05/31/2022   **TO**   05/31/2023

**AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.**

| BUSINESS DESCRIPTION | |
|---|---|

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| COMMERCIAL CRIME COVERAGE PART | $54.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $461.00 |
| MANAGEMENT PROTECTION LIABILITY COVERAGE PART | $109.00 |
| COMMERCIAL PROPERTY COVERAGE PART | $6,304.00 |
| TERRORISM - CERTIFIED ACTS (GENERAL LIABILITY) | $2.00 |
| TERRORISM - CERTIFIED ACTS (PROPERTY) | $18.00 |
| **TOTAL:** | $6,948.00 |

**IL DS 00 09 08**          Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services
Office, Inc. with its permission.          **Page 1 of 2**

**POLICY NUMBER:** 0094309 25-368984

| FORMS APPLICABLE TO ALL COVERAGE PARTS (SHOW NUMBERS): |
|---|
| See Schedule of Forms and Endorsements. |

| Countersigned | By: |
|---|---|
| (Date) | (Authorized Representative) |

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services
Office, Inc. with its permission.

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER: | EFFECTIVE DATE: |
|---|---|
| 0094309 25-368984 | 05/31/2022 |

## NUMBER                    TITLE

### COMMON

| | |
|---|---|
| CMIL TR 01 (12-20) | Rejection Of Terrorism Risk Insurance Act |
| IL DS 00 (09-08) | Common Policy Declarations |
| CMIL 00 02 (01-20) | Mutual Conditions |
| CMIL 99 01 (01-20) | Church Mutual Insurance Company, S.I. Amendatory Endorsement |
| IL 00 17 (11-98) | Common Policy Conditions |
| IL 00 21 (09-08) | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| IL 01 63 (10-17) | Arkansas Changes |
| IL 01 99 (09-08) | Arkansas Changes – Transfer Of Rights Of Recovery Against Others To Us |
| IL 02 31 (09-08) | Arkansas Changes – Cancellation And Nonrenewal |
| IL 09 35 (07-02) | Exclusion Of Certain Computer-Related Losses |
| IL 09 52 (01-15) | Cap on Losses from Certified Acts of Terrorism |
| IL 09 85 (12-20) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| CMIL 21 01 (03-19) | Exclusion – Law Enforcement Or Security Services |
| CMIL 21 06 (03-19) | Exclusion – Sexual Misconduct |
| CMIL N 04 (04-20) | Arkansas Important Notice |

### PROPERTY

| | |
|---|---|
| CP DS 00 (10-00) | Commercial Property Coverage Part Declarations |
| CP 00 90 (07-88) | Commercial Property Conditions |
| CP 00 10 (10-12) | Building And Personal Property Coverage Form |
| CP 10 30 (09-17) | Causes of Loss – Special Form |
| CP 00 30 (10-12) | Business Income (And Extra Expense) Coverage Form |
| CP 01 40 (07-06) | Exclusion Of Loss Due To Virus Or Bacteria |
| CP 02 99 (06-07) | Cancellation Changes |
| CP 10 75 (12-20) | Cyber Incident Exclusion |
| CMCP 04 04 (03-19) | Religious Institutions – Core Property Enhancement Endorsement |
| CMCP 04 22 (03-19) | Identity Recovery Coverage Endorsement |
| CMCP 04 26 (02-20) | Equipment Breakdown Coverage Endorsement |

### GENERAL LIABILITY

| | |
|---|---|
| CG DS 01 (10-01) | Commercial General Liability Declarations |
| CG 00 01 (04-13) | Commercial General Liability Coverage Form |
| CMCG 04 01 (02-20) | Catastrophic Violence Response Endorsement |
| CMCG 04 03 (03-19) | Loss of Life Endorsement |
| CMCG 12 03 (12-19) | Religious Institutions – General Liability Enhancement Endorsement |
| CMCG 21 04 (03-19) | Exclusion – Asbestos |
| CMCG 21 05 (03-19) | Exclusion – Lead |
| CMCG 21 14 (03-19) | Exclusion – Religious Institutions – Affiliated Entity Personal And Advertising Injury |
| CMCG 21 18 (03-19) | Exclusion – Abusive Behavior |
| CMCG 21 19 (03-19) | Exclusion – Nonphysical Abusive Behavior |
| CMCG 21 24 (03-19) | Exclusion – Sexual Misconduct |
| CG 01 42 (07-11) | Arkansas Changes |
| CG 21 06 (05-14) | Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability – With Limited Bodily Injury Exception |
| CG 21 32 (05-09) | Communicable Disease Exclusion |

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER: | EFFECTIVE DATE: |
|---|---|
| 0094309 25-368984 | 05/31/2022 |

## NUMBER

## TITLE

### GENERAL LIABILITY

| | |
|---|---|
| CG 21 71 (01-15) | Exclusion Of Other Acts Of Terrorism Committed Outside The United States; Cap on Losses From Certified Acts of Terrorism |
| CG 26 08 (04-90) | Arkansas Changes - Multi-Year Policies |
| CG 26 86 (01-15) | Arkansas Exclusion of Punitive Damages Related to a Certified Act of Terrorism |
| CMCG 00 03 (03-19) | Cyber Liability and Data Breach Response Coverage Form |
| CMCG 20 03 (03-19) | Religious Institutions - Additional Insured - Members Of The Clergy |
| CMCG 25 01 AR (12-19) | Arkansas Cyber Liability and Data Breach Response Claims Expense Endorsement |
| CMCG 00 05 (03-19) | Legal Defense Coverage Form - Religious |
| CMCG 00 08 (12-19) | Sexual Misconduct Coverage Form |
| CMCG 00 10 (03-20) | Counseling Services Liability Coverage Form |
| CMCG 00 11 (03-19) | Hired And Nonowned Auto Coverage Form |
| CMCG 01 05 (12-19) | Arkansas Changes |
| CMCG 99 01 (03-19) | Volunteers As Insureds Endorsement |
| CMCG N 01 (08-20) | Cyber Liability And Breach Response Information |

### CRIME

| | |
|---|---|
| CR DS 01 (08-13) | Crime And Fidelity Coverage Part Declarations (Commercial Entities) |
| CR 00 21 (11-15) | Commercial Crime Coverage Form (Loss Sustained Form) |
| CR 25 47 (09-17) | U.S. Department Of Labor - ERISA Plan Coverage Amendments |
| CMCR 04 01 (03-19) | Crime Enhancement Endorsement |
| CMCR 35 01 (03-19) | Theft Of Money And Securities Special Coverage Days Endorsement |

### MANAGEMENT PROTECTION LIABILITY

| | |
|---|---|
| MP DS 05 (10-06) | Not-For-Profit Management Liability Coverage Part Declarations |
| MP 00 03 (10-06) | Common Policy Conditions Form |
| MP 00 06 (10-06) | Not-For-Profit Management Liability Coverage Form |
| MP 01 86 (05-17) | Arkansas Changes |
| MP 02 31 (10-06) | Arkansas Changes - Cancellation and Nonrenewal |
| MP 21 12 (05-09) | Exclusion - Nuclear Energy Liability Endorsement |
| MP 21 16 (01-15) | Exclusion Of Other Acts Of Terrorism Committed Outside The United States; Cap On Losses From Certified Acts Of Terrorism |
| MP 21 26 (05-09) | Exclusion - Antitrust Endorsement |
| CMMP 04 07 (03-19) | Religious Organizations - Affiliated Entity Dispute Legal Defense Coverage Endorsement |
| CMMP 16 01 (12-19) | Arkansas - Defense Within Limits Notice and Acknowledgement |
| CMMP 21 34 (07-20) | Management Protection Communicable Disease Exclusion |

# MUTUAL CONDITIONS

You are notified that by virtue of this policy, you are a member of the Church Mutual Holding Company, Inc. (CMHC) of Merrill, Wisconsin. You are entitled to one vote, either in person or by proxy, on each issue that comes before meetings of the members. You can cast only one vote regardless of the number of policies you purchased. If two or more persons qualify as a member under a single policy, they are considered one member for purposes of voting. The owner of a group policy will have one vote regardless of the number of persons insured under the policy. Fractional voting is not allowed. If you are a minor, your vote may be cast by your parent or legal guardian.

The Annual Meeting of CMHC will be held at CMHC's home office at 3000 Schuster Lane, Merrill, Wisconsin, on a date and time chosen each year by the Board of Directors of CMHC and provided in a notice to all policyholders.

You shall participate in the return of unused premiums (dividends, if any) to the extent and on the conditions determined, fixed and declared by the Board of Directors in accordance with the law.

This policy is nonassessable. You are not subject to any contingent liability, nor to any liability for assessment.

IN WITNESS THEREOF, this company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized agent of this company at the agency shown in the Declarations Page except that this policy does not have to be countersigned if the law in the state where this policy applies does not require countersignature.

_President and Chief Executive Officer_          _Sr. Vice President, Secretary and General Counsel_

# CHURCH MUTUAL INSURANCE COMPANY, S.I.
## AMENDATORY ENDORSEMENT

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

**This endorsement is a part of and should be kept with your policy.**

Effective January 1, 2020, Church Mutual Insurance Company has reorganized under Wisconsin law from a mutual insurance company to a stock insurance company within a mutual holding company structure. As a result of the restructuring, it is amending your insurance policy in the following ways:

1. **Name Change**

   All references to Church Mutual Insurance Company are changed to Church Mutual Insurance Company, S.I. wherever occurring in your policy(ies).

   All references to "we", "us", or "our" wherever occurring in your policy(ies) shall mean Church Mutual Insurance Company, S.I.

2. **Membership Meetings and Voting.** The following language replaces any Membership, Voting, Annual Meeting, and Participation provisions in your policy:

   MEMBERSHIP AND VOTING

   As a member of Church Mutual Holding Company, Inc. (CMHC), you are entitled to one vote, either in person or by proxy, on each issue that comes before meetings of the members. You can cast only one vote regardless of the number of policies you purchased. If two or more persons qualify as a member under a single policy, they are considered one member for purposes of voting. The owner of a group policy will have one vote regardless of the number of persons insured under the policy. Fractional voting is not allowed. If you are a minor, your vote may be cast by your parent or legal guardian.

   ANNUAL MEETINGS

   The Annual Meetings of CMHC are held at CMHC's Home Office at 3000 Schuster Lane, Merrill, Wisconsin, on a date and time chosen each year by the Board of Directors of CMHC and provided in a notice to all policyholders.

3. **Dividends.** If any dividends are declared, you will share in them according to law and under conditions set by the Board of Directors.

4. **Additional Terms. Your** purchase of this policy may include noninsurance products or services that **we** make available to **you**. These products or services may be provided by an outside organization or by **us**. **We** do not warrant the merchantability, fitness, value, or condition of the noninsurance products or services that are not provided by **us**.

The effective date of this change is January 1, 2020. All other terms and conditions of your policy remain unchanged. Your contract rights under your policy with Church Mutual Insurance Company, S.I. are not affected.

President and Chief Executive Officer

Sr. Vice President, Secretary and General Counsel

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007 □

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

          © ISO Properties, Inc., 2007          IL 00 21 09 08          □

IL 01 63 10 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99**, the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following is added to the Common Policy Conditions:

**Multiyear Policies**

We may issue this policy for a term in excess of 12 months with the premium adjusted on an annual basis in accordance with our rates and rules.

**C.1.** Except as provided in **C.2.** below, the **Appraisal** Condition, if any, is replaced by the following:

**a.** If we and you disagree on the value of the property or the amount of loss ("loss"), either party may make a written request for an appraisal of the loss ("loss"). However, an appraisal will be made only if both we and you agree, voluntarily, to have the loss ("loss") appraised. If so agreed, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss ("loss"). If they fail to agree, they will submit their differences to the umpire.

**b.** An appraisal decision will not be binding on either party.

**c.** If there is an appraisal, we will still retain our right to deny the claim.

**d.** Each party will:

(1) Pay its chosen appraiser; and

(2) Bear the other expenses of the appraisal and umpire equally.

**C.2.** The **Appraisal** Condition in Business Income Coverage Form (And Extra Expense) **CP 00 30**, Business Income Coverage Form (Without Extra Expense) **CP 00 32** and Capital Assets Program Coverage Form (Output Policy) **OP 00 01**, Paragraph **A.7. Business Income And Extra Expense,** is replaced by the following:

**a.** If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either party may make a written request for an appraisal of the loss. However, an appraisal will be made only if both we and you agree, voluntarily, to have the loss appraised. If so agreed, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire.

**b.** An appraisal decision will not be binding on either party.

**c.** If there is an appraisal, we will still retain our right to deny the claim.

© Insurance Services Office, Inc., 2017

d. Each party will:

   (1) Pay its chosen appraiser; and

   (2) Bear the other expenses of the appraisal and umpire equally.

**D.1.** This Paragraph **D.2.** does not apply to the following:

Farm Liability Coverage Form

Legal Liability Coverage Form

**2.** The two-year limitation in the Legal Action Against Us Condition is changed to five years.

**E.1.** This Paragraph **E.2.** does not apply to the following:

Crime and Fidelity Coverage Part

Farm Liability Coverage Form

Legal Liability Coverage Form

Mortgageholders Errors And Omissions Coverage Form

**2.** The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

We will be entitled to recovery only after the insured ("insured") has been fully compensated for the loss ("loss") or damage sustained.

**F.** The following is added to the **Transfer Of Your Rights Of Recovery Against Others To Us** Condition for the Crime and Fidelity Coverage Part:

Notwithstanding the procedures set forth in the **Recoveries** Condition, we will be entitled to recovery only after the insured has been fully compensated for the loss sustained.

**G.** The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition in Legal Liability Coverage Form **CP 00 40** and Mortgageholders Errors And Omissions Coverage Form **CP 00 70**:

We will be entitled to recovery only after the insured has been fully compensated for the loss or damage sustained, including expenses incurred in obtaining full compensation for the loss or damage.

**H.** In accordance with ARK. CODE ANN. § 23-88-106, we are providing notice of the following:

Unless otherwise provided by this policy, we may deduct expense depreciation. Expense depreciation is defined as depreciation, including but not limited to the cost of goods, materials, labor and services necessary to replace, repair or rebuild damaged property.

If expense depreciation is applied to a loss for damaged property, the insurer shall provide a written explanation as to how the expense depreciation was calculated.

 © Insurance Services Office, Inc., 2017 **IL 01 63 10 17**

IL 01 99 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES – TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    FARM LIABILITY COVERAGE FORM
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

We will be entitled to recovery only after the insured ("insured") has been fully compensated for the loss or damage sustained, including expenses incurred in obtaining full compensation for the loss or damage.

　　　　　© ISO Properties, Inc., 2007　　　　　　　☐

IL 02 31 09 08

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** We will refund the pro rata unearned premium if the policy is:

**(1)** Cancelled by us or at our request;

**(2)** Cancelled but rewritten with us or in our company group;

**(3)** Cancelled because you no longer have an insurable interest in the property or business operation that is the subject of this insurance; or

**(4)** Cancelled after the first year of a prepaid policy that was written for a term of more than one year.

**c.** If the policy is cancelled at the request of the first Named Insured, other than a cancellation described in **b.(2)**, **(3)** or **(4)** above, we will refund 90% of the pro rata unearned premium. However, the refund will be less than 90% of the pro rata unearned premium if the refund of such amount would reduce the premium retained by us to an amount less than the minimum premium for this policy.

**d.** The cancellation will be effective even if we have not made or offered a refund.

**e.** If the first Named Insured cancels the policy, we will retain no less than $100 of the premium, subject to the following:

**(1)** We will retain no less than $250 of the premium for the Equipment Breakdown Coverage Part.

**(2)** We will retain the premium developed for any annual policy period for the General Liability Classifications, if any, shown in the Declarations.

**(3)** If the Commercial Auto Coverage Part covers only snowmobiles or golfmobiles, we will retain $100 or the premium shown in the Declarations, whichever is greater.

**(4)** If the Commercial Auto Coverage Part covers an "auto" with a mounted amusement device, we will retain the premium shown in the Declarations for the amusement device and not less than $100 for the auto to which it is attached.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect More Than 60 Days**

    **a.** If this policy has been in effect more than 60 days or is a renewal policy, we may cancel only for one or more of the following reasons:

        **(1)** Nonpayment of premium;

        **(2)** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

        **(3)** The occurrence of a material change in the risk which substantially increases any hazard insured against after policy issuance;

        **(4)** Violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or its occupancy which substantially increases any hazard insured against under the policy;

        **(5)** Nonpayment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the policy; or

        **(6)** A material violation of a material provision of the policy.

    **b.** Subject to Paragraph **7.c.,** if we cancel for:

        **(1)** Nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy at least 10 days before the effective date of cancellation.

        **(2)** Any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy at least 20 days before the effective date of cancellation.

    **c.** The following applies to the Farm Umbrella Liability Policy, Commercial Liability Umbrella Coverage Part and the Commercial Automobile Coverage Part:

        **(1)** If we cancel for nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 10 days before the effective date of cancellation;

        **(2)** If we cancel for any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 20 days before the effective date of cancellation.

**C.** Paragraph **g.** of the **Mortgageholders** Condition, if any, is replaced by the following:

    **g.** If we elect not to renew this policy, we will give written notice to the mortgageholder:

        **(1)** As soon as practicable if nonrenewal is due to the first Named Insured's failure to pay any premium required for renewal; or

        **(2)** At least 60 days before the expiration date of this policy if we nonrenew for any other reason.

**D.** The following Condition is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail to the first Named Insured shown in the Declarations, and to any lienholder or loss payee named in the policy, written notice of nonrenewal at least 60 days before:

    **a.** Its expiration date; or

    **b.** Its anniversary date, if it is a policy written for a term of more than one year and with no fixed expiration date.

However, we are not required to send this notice if nonrenewal is due to the first Named Insured's failure to pay any premium required for renewal.

The provisions of this Paragraph **1.** do not apply to any mortgageholder.

**2.** We will mail our notice to the first Named Insured's mailing address last known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2007 **IL 02 31 09 08** ☐

IL 09 35 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

**1.** The failure, malfunction or inadequacy of:

**a.** Any of the following, whether belonging to any insured or to others:

**(1)** Computer hardware, including microprocessors;

**(2)** Computer application software;

**(3)** Computer operating systems and related software;

**(4)** Computer networks;

**(5)** Microprocessors (computer chips) not part of any computer system; or

**(6)** Any other computerized or electronic equipment or components; or

**b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

**1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

**2.** Under the Commercial Property Coverage Part:

**a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

**b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

© ISO Properties, Inc., 2001

IL 09 52 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

## A. Cap On Certified Terrorism Losses

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

## B. Application Of Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

© Insurance Services Office, Inc., 2015

POLICY NUMBER: 0094309 25-368984

IL 09 85 12 20

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| SCHEDULE – PART I |
|---|
| **Terrorism Premium (Certified Acts)** $20.00 |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| Certified Acts – General Liability                $2.00<br>Certified Acts – Property                            $18.00 |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE – PART II |
|---|
| **Federal share of terrorism losses      80  %**<br>(Refer to Paragraph **B.** in this endorsement.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

© Insurance Services Office, Inc., 2020
**Page 1 of 2**

## A. Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

## B. Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

## C. Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2020        **IL 09 85 12 20**

COMMERCIAL INTERLINE
CMIL 21 01 03 19

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - LAW ENFORCEMENT OR SECURITY SERVICES

This endorsement modifies insurance provided under the following:

MISCELLANIOUS PROFESSIONAL LIABILITY

NOT-FOR-PROFIT MANAGEMENT LIABILITY COVERAGE FORM

EXECUTIVE LIABILITY COVERAGE FORM

EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE FORM

EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE FORM (SEPARATE LIMITS FOR DEFENSE AND INDEMNITY)

ALLIED HEALTH CARE PROVIDERS PROFESSIONAL LIABILITY COVERAGE FORM

ALLIED HEALTH CARE PROVIDERS PROFESSIONAL LIABILITY COVERAGE FORM (CLAIMS-MADE VERSION)

EDUCATORS PROFESSIONAL LIABILITY

SENIOR LIVING PROFESSIONAL LIABILITY COVERAGE FORM

SENIOR LIVING PROFESSIONAL LIABILITY COVERAGE FORM (CLAIMS-MADE VERSION)

NONPROFIT AND HUMAN SERVICES PROFESSIONAL LIABILITY COVERAGE FORM

NONPROFIT AND HUMAN SERVICES PROFESSIONAL LIABILITY COVERAGE FORM (CLAIMS-MADE VERSION)

The following is added to the **Exclusions** section:

This insurance does not apply to:

**Law Enforcement Or Security Services**

Any claims resulting from the actions, activities and duties of your authorized law enforcement personnel. Law enforcement personnel includes, but is not limited to:

**A.** Law enforcement officers;

**B.** Security personnel;

**C.** Security contractors;

**D.** Auxiliary law enforcement officers;

**E.** Volunteer law enforcement officers; and

**F.** Volunteer security personnel.

This exclusion does not apply to activities, services, advice or instruction that are performed by employees who are not part of your law enforcement or security personnel.

 Copyright, CM Insurance, 2019

COMMERCIAL INTERLINE
CMIL 21 06 03 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - SEXUAL MISCONDUCT

This endorsement modifies insurance provided under the following:

MISCELLANIOUS PROFESSIONAL LIABILITY POLICY

NOT-FOR-PROFIT MANAGEMENT LIABILITY COVERAGE FORM

EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE FORM

EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE FORM (SEPARATE LIMITS FOR DEFENSE AND INDEMNITY)

ALLIED HEALTH CARE PROVIDERS PROFESSIONAL LIABILITY COVERAGE FORM

ALLIED HEALTH CARE PROVIDERS PROFESSIONAL LIABILITY COVERAGE FORM (CLAIMS-MADE VERSION)

**A.** The following is added to the **Exclusions** section:

This insurance does not apply to:

**Sexual Misconduct**

Any "claim" arising out of, resulting from, relating to, involving, or in any way connected with, caused by, or allegedly caused by, in whole or in part by the:

**1.** Actual, alleged, or threatened "sexual misconduct" of any person; or

**2.** Insured's negligent hiring or retention, investigation, supervision or training of employees, reporting to the proper authorities. or failure to report to the proper authorities' person(s) who committed "sexual misconduct".

**B.** For the purposes of this endorsement, the following definition is added to the **Definitions** section:

"Sexual misconduct" means any actual, alleged, or threatened conduct, whether permitted or unpermitted, by any person, acting in any capacity and under any circumstances, that is or is alleged to be, arises out of, results from, relates to, involves, or is in any way connected with any conduct that is of a sexual nature and includes, but is not limited to:

**a.** Molestation;

**b.** Sexual assault, sexual battery, sexual touching, sexual contact, sexual intercourse;

**c.** Harassment, sexual advances;

**d.** Victimization, exploitation, requests for sexual favors;

**e.** Coercion to engage in sexual activities;

**f.** Exhibitionism, voyeurism;

**g.** Verbal or non-verbal communication; or

**h.** Showing, distributing to others, or requesting any text, pictures, drawings, audio, video, or digital recording.

© Copyright, CM Insurance, 2019

COMMERCIAL PROPERTY
CMCP 04 04 03 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RELIGIOUS INSTITUTIONS - CORE PROPERTY ENHANCEMENT ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

CAUSE OF LOSS - SPECIAL FORM

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

This endorsement is subject to the provisions of your policy which means that it is subject to all terms, conditions, limitations and exclusions applicable to the coverage parts attached to and forming a part of this policy, unless specifically deleted, replaced or modified by this endorsement. This endorsement applies only to the extent the forms named above are included in this policy.

### SCHEDULE

The following Schedule is a general description of the amended coverages and Limits of Insurance provided by this endorsement. Read all the provisions of this endorsement and the rest of your policy carefully to determine rights, duties and what is and is not covered.

| DESCRIPTION OF COVERAGE | LIMIT OF INSURANCE / TERM |
|---|---|
| **BUILDING AND PERSONAL PROPERTY COVERAGE FORM (CP 00 10)** | |
| **Covered Property** | |
| • Premise - Expanded Area For Building Or Structures | 1,000 feet |
| • Premise - Expanded Area For Business Personal Property | 1,000 feet |
| • Premise - Expanded Area For Personal Property Of Others | 1,000 feet |
| • Antennas Attached To Building | Included |
| **Additional Coverages** | |
| • Debris Removal - Increased Limit<br>   o Percent of Deductible Plus Loss<br>   o Each Location | <br>25%<br>$25,000 |
| • Preservation Of Property - Increased Days | 90 days |
| • Fire Department Service Charge - Increased Limit | $25,000 |
| • Pollutant Clean-up And Removal - Increased Limit | $25,000 |
| • Ordinance Or Law<br>   o Coverage A: Undamaged Portion<br>   o Coverage B and Coverage C: Combined Limit Per Occurrence | <br>Building Limit<br>$100,000 |
| • Electronic Data | $10,000 |
| • Preservation Of Property Expense | $10,000 |
| • Lost Key / Security Card Expense | $25,000 |
| • Proof Of Loss Expense | $25,000 |
| • Contract Penalty Expense | $25,000 |
| • Recharge Of Fire Extinguisher Equipment | Actual Expenses |

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2011

| DESCRIPTION OF COVERAGE | LIMIT OF INSURANCE / TERM |
|---|---|
| • Rewards Payments<br> o In Any One Occurrence | $10,000 |
| • Expediting Cost Coverage | $1,000 |
| • Unintentional Property Errors | $100,000 |
| • Emergency Vacating Expense<br> o Deductible | $5,000<br>$1,000 |
| • Temporary Meeting Space | $5,000 |
| • Professional Extermination Fees And Expenses<br> o In Any One Occurrence<br> o Aggregate Per Policy Period<br> o Deductible | $2,500<br>$10,000<br>$500 |
| **Coverage Extensions** | |
| • Premises - Expanded Area | 1,000 feet |
| • Newly Acquired Or Constructed Property<br> o Building<br> o Your Business Personal Property<br> o Period Of Coverage | $1,000,000<br>$1,000,000<br>180 days |
| • Personal Effects And Property Of Others | $5,000 |
| • Business Personal Property Off-premises | $25,000 |
| • Outdoor Property<br> o Any One Tree, Shrub, Lawn Or Plant<br> o In Any One Occurrence | $500<br>$5,000 |
| • Nonowned Detached Trailers | $7,500 |
| • Business Personal Property Temporarily In Portable Storage Units - Expanded Area<br> o Premises - Expanded Area<br> o In Any One Occurrence | 1,000 feet<br>$15,000 |
| • Undamaged Leasehold Improvements | $10,000 |
| • Tenant Building Glass Coverage<br> o Per Pane, Unit Or Panel<br> o In Any One Occurrence | $1,000<br>$5,000 |
| • Unscheduled Buildings or Structures | $10,000 |
| • Off Premise Utility Failure | $10,000 |
| • Underground Pipes, Flues Or Drains | $10,000 |
| • Business Personal Property of Your Clergy | $10,000 |
| • Personal Tools And Equipment of Others<br> o Per Item<br> o Per Occurrence | $1,000<br>$5,000 |
| • Retaining Walls | $5,000 |
| • Outdoor Signs<br> o In Any One Occurrence | $5,000 |
| **CAUSE OF LOSS - SPECIAL FORM (CP 10 30)** | |
| • Asbestos Presence, Release, Discharge Or Dispersal | $10,000 |
| • Premise - Expanded Area | 1,000 feet |
| • Furs | $5,000 |

Copyright, CM Insurance, 2019<br>Includes copyrighted material of Insurance Services Office with its permission.<br>© Insurance Services Office, Inc., 2011

CMCP 04 04 03 19

| DESCRIPTION OF COVERAGE | LIMIT OF INSURANCE / TERM |
|---|---|
| • Jewelry and Precious Metals | $10,000 |
| • Limited Coverage For Fungus, Wet Rot, Dry Rot And Bacteria | $50,000 |
| • Property In Transit - Expanded Area | 1,000 feet |
| • Spoilage | $5,000 |
| • Interior Water Damage | $5,000 |
| • Back-up Of Sewers Or Drains | $10,000 |
| • Clergy Temporary Living Expenses | $2,500 |
| **BUSINESS INCOME (AND EXTRA EXPENSE) (CP 00 30)** | |
| • Interruption Of Computer Operations | $3,000 |
| • Civil Authority (Including Ingress And Egress) | Included |
| • Newly Acquired Locations | $150,000 |
| • Communicable Disease<br>  ○ Deductible | $5,000<br>$500 |
| • Off Premises Utility Failure | $10,000 |

## SECTION I - ENDORSEMENT CONDITIONS

**1. Applicable Causes Of Loss**

**SECTION II - Building and Personal Property Coverage Form** applies to all locations on your policy.

**SECTION III - Causes Of Loss - Special Form** only applies to the premises where the Causes Of Loss - Special Form is applicable as described and indicated in the Declarations.

**SECTION IV - Business Income (And Extra Expense) Coverage Form** only applies to the premises where Business Income (And Extra Expense) is applicable as described and indicated in the Declarations.

**2. Limits Of Insurance**

When this endorsement is attached to the Building and Personal Property Coverage Form CP 00 10 with or without the Causes Of Loss - Special Form CP 10 30, any Limit Of Insurance or Term shown in the Schedule of this endorsement replaces the Limit Of Insurance or Term accordingly for the indicated Coverage.

This Limit Of Insurance or Term is in addition to any other insurance provided by the coverage form and is the most we will apply for loss or damage for the indicated Coverage.

**3. Two or More Coverages or Limits of Insurance Apply**

If coverage for loss or damage is covered under this endorsement and covered elsewhere in this policy, the amount payable under this endorsement will apply in excess over that amount payable elsewhere in this policy. We will not pay more than the actual amount of the covered loss or damage.

**4. Deductible**

The applicable property deductible for the premises, as described in the Declarations, will apply to the coverages provided by this endorsement unless a different deductible amount is stated within this endorsement.

**Examples**

No deductible applies to the following Additional Coverages:

**a.** Fire Department Service Charge;

**b.** Lost Key / Security Card Expense;

**c.** Recharge Of Fire Extinguisher Equipment; or

**d.** Expediting Cost Coverage.

**e.** Temporary Meeting Space

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2011

**5. Premises or Locations**

This endorsement only applies to the premises or locations described in the Declarations unless specifically stated in this endorsement. If the premises are not described in the Declarations, refer to the Statement of Values.

## SECTION II - BUILDING AND PERSONAL PROPERTY COVERAGE FORM

The **Building And Personal Property Coverage Form** is amended as follows:

**A. Coverage**

**1. Building**

The following is added to Paragraph **1.a. Building** of Subsection **1. Covered Property** in Section **A. Coverage:**

(6) Signs on or away from the described premises;

(7) Stained glass windows including protective covering;

(8) Electric sound amplification equipment and accessories;

(9) Permanently installed seats, desks and tables; and

(10) Steeples, pews, baptistries, pulpits, railings, altars, lecterns, clocks, bells and organs.

**2. Premises - Expanded Area**

**a.** Subparagraph **(5)(b)** of Paragraph **a. Building** of Subsection **1. Covered Property** in Section **A. Coverage** is deleted and replaced with the following:

(b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b.** The first paragraph of Subsection **b. Your Business Personal Property** is deleted and replaced with the following;

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the building or structure or within 1,000 feet of the premises described in the Declarations, whichever distance is greater;

**c.** Subparagraph **(2)** of Paragraph **c. Personal Property Of Others** of Subsection **1. Coverage Property** in Section **A. Coverage** is deleted and replaced with the following:

(2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the building or structure or within 1,000 feet of the premises described in the Declarations, whichever distance is greater.

**3. Antennas**

The following is added to Subparagraph **(5)** of Paragraph **a. Building** of Subsection **1. Covered Property** in Section **A. Coverage:**

Antennas (including dish-shaped antennas) and their lead-in wiring, masts or towers on the building.

**4. Property Not Covered**

Paragraphs **l., m.** and **q.(2)** of Subsection **2. Property Not Covered** in Section **A. Coverage** are deleted and replaced with the following;

**l.** Retaining walls that are not part of a building, except as provided in the Coverage Extension for Retaining Walls within this Endorsement.

**m.** Underground pipes, flues or drains, except as provided in the Coverage Extension for Underground Pipes, Flues Or Drains within this Endorsement.

**q. (2)** Fences, antennas (including dish-shaped antennas) and their lead-in wiring, masts or towers not on the building, trees, shrubs, lawns or plants (other than trees, shrubs, lawns or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**5. Debris Removal**

**a.** Subparagraph **(2)(e)** of Paragraph **a. Debris Removal** of Subsection **4. Additional Coverages** in Section **A. Coverage** is deleted and replaced with the following:

(e) Remove deposits of mud or earth from the grounds, outside of buildings, of the described premises;

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2011

**b.** Subparagraph **(3)(b)** of Paragraph **a. Debris Removal** of Subsection **4. Additional Coverages** in Section **A. Coverage** is deleted and replaced with the following:

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $25,000 at each location.

## 6. Preservation Of Property - Increased Days

Subparagraph **(2)** of Paragraph **b. Preservation Of Property** of Subsection **4. Additional Coverages** in Section **A. Coverage** is deleted and replaced with the following:

**(2)** Only if the loss or damage occurs within 90 days after the property is first moved.

## 7. Fire Department Service Charge - Increased Limit

Paragraph **c. Fire Department Service Charge** of Subsection **4. Additional Coverages** in Section **A. Coverage** is deleted and replaced with the following:

### c. Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

## 8. Pollutant Clean-Up And Removal - Increased Limit

Paragraph **d. Pollutant Clean-up And Removal** of Subsection **4. Additional Coverages** in Section **A. Coverage** is deleted and replaced with the following:

### d. Pollutant Clean-up And Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $25,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

## 9. Ordinance Or Law

Paragraph **e. Increased Cost Of Construction** of Subsection **4. Additional Coverages** in Section **A. Coverage** is deleted and replaced with the following:

### e. Ordinance Or Law

The terms of this additional coverage, as described in Paragraphs **(1), (2), (3)** and **(4)** below, is the most we will pay for all losses in any one occurrence.

#### (1) Application Of Coverage(s)

The Coverage(s) provided by this additional coverage only applies to buildings to which the Replacement Cost Optional Coverage applies.

The Coverage(s) provided by this additional coverage applies with respect to an ordinance or law that regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises, subject to the following:

#### (a) Ordinance Or Law Requirements

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2011

    **(i)** The requirements of the ordinance or law are:

        **aa.** In force at the time of loss; or

        **bb.** Is promulgated or revised after the loss but prior to commencement of reconstruction or repair and provided that such ordinance or law requires compliance as a condition precedent to obtaining a building permit or certificate of occupancy.

    **(ii)** Coverage under this additional coverage applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this additional coverage.

**(b) Direct Physical Damage Of Building**

Coverage under this additional coverage applies only if:

    **(i)** The building sustains only direct physical damage that is covered under this policy and as a result of such damage, you are required to comply with the ordinance or law; or

    **(ii)** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

However, there is no coverage under this additional coverage if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, even if the building has also sustained covered direct physical damage.

**(c) Amount Of Loss**

    **(i)** If coverage applies under this additional coverage based on the terms described under Paragraph **(b) Direct Physical Damage Of Building**, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A, B,** and/or **C** of this additional coverage. Instead, we will pay a proportion of such loss, meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

    However, if the covered direct physical damage, alone, would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A, B** and/or **C** of this additional coverage.

    **(ii)** We will not pay under this additional coverage for:

        **aa.** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria;

        **bb.** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria; or

        **cc.** Any loss in value or any cost incurred due to an ordinance or law that you were required to comply with before the time of the current loss, even in the absence of building damage, if you failed to comply.

    **(iii)** Example of proportionate loss payment for Ordinance Or Law coverage losses as set forth in Paragraph **(c)(i)** above.

    Assume:

- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss.
- The building has a value of $200,000.
- Total direct physical damage to building: $100,000
- The ordinance of law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value.
- Portion of direct physical damage that is covered (caused by wind): $30,000
- Portion of direct physical damage that is not covered (caused by flood): $70,000
- Loss under Ordinance Or Law Coverage **C** of this additional coverage: $60,000

    **Step 1:** Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

        $30,000 divided by $100,000 = .30

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2011
CMCP 04 04 03 19

**Step 2:**  Apply that proportion to the Ordinance or Law loss.
$60,000 X .30 = $18,000

In this example, the most we will pay under this additional coverage for the Coverage **C** loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

**NOTE:** The same procedure applies to losses under Coverage **A** and Coverage **B** of this additional coverage.

### (2) Coverage(s)

#### (a) Coverage A - Coverage For Loss To The Undamaged Portion Of The Building

With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building.

Coverage **A** is included within the Limit Of Insurance applicable to such building as shown in the Declarations or addressed elsewhere in this policy. Coverage A does not increase the Limit of Insurance.  Refer to Paragraph **(3) Loss Payment** for additional loss payment provisions.

#### (b) Coverage B - Demolition Cost Coverage

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

#### (c) Coverage C - Increased Cost Of Construction

(i) With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

**aa.** Repair or reconstruct damaged portions of that building; and/or

**bb.** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required; when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

**aa.** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**bb.** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

**cc.** The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.

(ii) When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with Paragraph **(2)(c)(i)** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in Paragraph **(2)(c)(i)** above:

**aa.** The cost of excavations, grading, backfilling and filling;

**bb.** Foundation of the building;

**cc.** Pilings; and

**dd.** Underground pipes, flues and drains.

The items listed in Paragraphs **(ii)aa.** through **(ii)dd.** above are deleted from Property Not Covered, but only with respect to the coverage described in this provision, **(2)(c)(ii).**

#### (d) Combined Limit Of Insurance - Coverage B and Coverage C

The most we will pay for all covered losses in any one occurrence for **Coverage B - Demolition Cost** and **Coverage C - Increased Cost Of Construction** is $100,000.

Refer to Section **(3) Loss Payment** for additional loss payment provisions.

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2011

**(3) Loss Payment**

The following loss payment provisions are subject to the apportionment procedures set forth in Paragraph **(1)(c) Amount Of Loss**.

**(a)** When there is a loss in value of an undamaged portion of a building to which Coverage **A** applies, the loss payment for that building, including damaged or undamaged portions, will be determined as follows:

**(i)** If the Replacement Cost Coverage Option applies and such building is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

**aa.** The amount you would actually spend to repair, rebuild or reconstruct such building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**bb.** The Limit Of Insurance applicable to such building as shown in the Declarations or addressed elsewhere in this policy. (If this policy is endorsed to cover Earthquake and/or Flood as a Covered Cause of Loss, the Limit of Insurance applicable to the building in the event of damage by such Covered Cause of Loss may be lower than the Limit of Insurance that otherwise would apply.)

**(ii)** If the Replacement Cost Coverage Option applies and such building is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of:

**aa.** The actual cash value of such building at the time of loss; or

**bb.** The Limit Of Insurance applicable to such building as shown in the Declarations or addressed elsewhere in this policy. (If this policy is endorsed to cover Earthquake and/or Flood as a Covered Cause of Loss, the Limit of Insurance applicable to the building in the event of damage by such Covered Cause of Loss may be lower than the Limit of Insurance that otherwise would apply.)

**(b)** If a Combined Limit Of Insurance is shown for Coverages **B** and **C**, the following loss payment provisions apply:

The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the Combined Limit Of Insurance shown for Coverages **B** and **C** in Paragraph **e.(2)(d) Combined Limit Of Insurance - Coverage B and Coverage C**. Subject to this **Combined Limit of Insurance**, the following loss payment provisions apply:

**(i)** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

**(ii)** With respect to the Increased Cost of Construction:

**aa.** We will not pay for the increased cost of construction:

**i.** Until the building is actually repaired or replaced, at the same or another premises; and

**ii.** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**bb.** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

**cc.** If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**(c)** With respect to **Coverage B - Demolition Cost Coverage**, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

**(d)** With respect to **Coverage C - Increased Cost Of Construction**:

**(i)** We will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same or another premises.

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2011

(ii) The repair or replacement must be made as soon as reasonably possible after the loss or damage, not to exceed two years. However, we may extend this period in writing during the two years.

(iii) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

(iv) If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**(4) Exclusions**

(a) We will not pay under this additional coverage for:

(i) Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria;

(ii) The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria; or

(iii) Any loss in value or any cost incurred due to an ordinance or law that you were required to comply with before the time of the current loss, even in the absence of building damage, if you failed to comply.

## 10. Electronic Data

Subparagraph (4) of Paragraph **f. Electronic Data** of Subsection **4. Additional Coverages** in Section **A. Coverage** is deleted and replaced with the following:

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $10,000 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

## 11. Additional Coverages

The following are added to Subsection **4. Additional Coverage** in Section **A. Coverage:**

### a. Preservation Of Property Expense

We will pay the necessary expenses incurred to move or store Covered Property to preserve it from loss or damage by a Covered Cause of Loss. The most we will pay under this Additional Coverage is $10,000 per occurrence. This Additional Coverage shall not exceed 90 days from the time the Covered Property is first moved.

### b. Lost Key / Security Card Expense

We will pay the expense you incur following the direct physical loss of or damage to keys or security cards from theft, mysterious disappearance or any other Covered Cause of Loss if such loss places the security of a building at a premise described in the Declarations at risk. This coverage includes payment for:

**(1)** The cost of replacement keys or security cards, and

**(2)** The cost of lock rekeying, adjustment or replacement including installation and removal made necessary by the loss of keys, or

**(3)** The cost of reprogramming a security system that utilizes security cards.

The most we will pay under this Additional Coverage is $25,000 on an annual aggregate basis for the sum of all covered expenses. The amount payable under this Additional Coverage is additional insurance.

No Deductible applies to this Additional Coverage.

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2011

### c. Proof Of Loss Expense

In the event of loss or damage, upon our request for a sworn proof of loss, we will pay for the actual and necessary expenses you incur in support of your claim.

We will pay for:

(1) Preparing the actual proof of loss with required attachments;

(2) Filing or obtaining a necessary report from police, fire or other public departments having authority;

(3) Recordkeeping of the damage or loss;

(4) Completion of an inventory;

(5) Making copies of books and records;

(6) Completing professional appraisals; however, if we and you enter into the appraisal process as provided for in Section **E. Loss Conditions,** the provisions of that condition will apply;

(7) A forensic accountant or auditor to determine any income loss or extra expense paid; or

(8) Services of an accredited Architect or Engineer.

We will not pay for:

(1) Attorney services;

(2) Insurance agent or broker services; or

(3) Public adjuster services.

You will provide to us Proof Of Loss Expenses to be paid under this coverage within 30 days from invoice to you. If payment is made to you under this coverage, we will still retain our right to deny the claim. You may use this coverage for the preparation of a proof of loss for business income or extra expense if provided.

The most we will pay under this Additional Coverage is $25,000 for the sum of all expenses arising from each occurrence. The amount payable under this Additional Coverage is additional insurance.

### d. Contract Penalty Expense

We will pay the monetary penalties that you are legally obligated to compensate customers or clients due to your failure to provide products or services on a timely basis or other breach of a written contract if:

(1) Breach of a written contract is due to your direct physical loss of or damage to Covered Property by a Covered Cause of Loss at premises described in the Declarations; and

(2) The contract must have been executed prior to your direct physical loss of or damage to Covered Property; and

(3) The breach of contract is the cause of the failure to provide your products or services on a timely basis or other breach.

The most we will pay under this Additional Coverage, irrespective of the number of contracts in force at the time of loss, is $25,000 in any one occurrence. The amount payable under this Additional Coverage is additional insurance.

### e. Recharge Of Fire Extinguisher Equipment

We will pay the reasonable and necessary expenses you incur to recharge your fire protection equipment:

(1) If you use your equipment, or the equipment automatically discharges, to protect your Covered Property as a result of a Covered Cause of Loss; or

(2) Due to accidental discharge.

However, we will not pay for:

(1) Any costs resulting from the enforcement of any ordinance or law that regulates the recharging, repair or replacement of such fire extinguishing device, or firefighting suppressing or controlling substance;

(2) Halon;

(3) Recharge of any device used for demonstration or testing purposes; or

(4) Recharge due to maintenance of any device or system.

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2011

No Deductible applies to this Additional Coverage.

We will pay under this Additional Coverage the actual expenses you incur to recharge your fire protection equipment.

**f.** **Rewards Payments**

   **(1)** We will reimburse you for rewards paid as follows:

      **(a)** Up to $10,000 per occurrence to an eligible person for information leading to the arrest and conviction of any person(s) committing a crime resulting in loss to Covered Property from a Covered Cause of Loss. However, we will pay no more than the lesser of the following amounts:

         **(i)** Replacement Cost of the Covered Property at the time of loss or damage, but not more than the amount required to repair or replace it; or

         **(ii)** The amount determined by the loss settlement procedure applicable to the Covered Property.

      **(b)** Up to $10,000 per occurrence to an eligible person for the return of stolen Covered Property when loss by theft. However, we will pay no more than the lesser of the following amounts:

         **(i)** Replacement Cost based on the condition of the Covered Property at the time it is returned but not more than the amount required to repair or replace it; or

         **(ii)** The amount determined by the loss settlement procedure applicable to the Covered Property returned.

   **(2)** This Additional Coverage applies subject to the following conditions:

      **(a)** An eligible person means that person designated by a law enforcement agency as being first to voluntarily provide the necessary information or return the stolen Covered Property, and who is not:

         **(i)** You or any family member;

         **(ii)** Your employee or any of his or her family members;

         **(iii)** An employee of a law enforcement agency;

         **(iv)** An employee of a business engaged in property protection;

         **(v)** Any person who had custody of the Covered Property at the time the theft was committed; or

         **(vi)** Any person involved in the crime.

      **(b)** There will be no reimbursement for a reward paid unless and until the person(s) committing the crime are convicted or the Covered Property is returned.

      **(c)** The amount of the reward is the most we will reimburse under this Additional Coverage for loss in any one occurrence.

      **(d)** The insured must have posted public notice of the reward prior to the person having been first to voluntarily provide the necessary information or return the stolen Covered Property.

**g.** **Expediting Cost Coverage**

With respect to loss or damage to Covered Property from a Covered Cause of Loss, we will pay for the extra cost you necessarily incur to:

   **(1)** Make temporary repairs; and

   **(2)** Expedite the permanent repairs or replacement of the damaged property.

The most we will pay under this Additional Coverage is $1,000 per occurrence.

No Deductible applies to this Additional Coverage.

**h.** **Unintentional Property Errors**

   **(1)** If you unintentionally failed to report or describe a location to us, coverage provided by this policy will not be invalid. However, you must report such errors or omission to us in writing as soon as you discover them. You also agree to pay the additional premium that would have been earned by us if the location was correctly reported to us.

   **(2)** This additional coverage only applies to direct loss or damage caused by a Covered Cause of Loss at the omitted location and does not include coverage for the perils of flood or earthquake.

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2011

**(3)** You must provide reasonable documentation and clear and convincing evidence explaining the cause of the oversight.

**(4)** For any location you have failed to report to us, the coverage will end when any of the following first occurs:

    **(a)** This policy expires; or

    **(b)** You report values to us.

**(5)** The most we will pay for any loss or damage under this Additional Coverage in any one policy period regardless of the number of occurrences or reporting errors or omissions is $100,000.

**(6)** This Additional Coverage does not apply to a loss that is covered by Newly Acquired or Constructed Property coverage.

**i.** **Emergency Vacating Expenses**

We will pay for the reasonable expenses that you incur in the vacating of the described premises if vacating:

**(1)** Is in response to an imminent danger of injury or loss of life to persons; or

**(2)** Is required by civil authority.

This Additional Coverage only applies if there is actual or threatened loss to Covered Property caused by or resulting from a Covered Cause of Loss.

We will not pay for expenses caused by or resulting from the following:

**(1)** A strike, bomb threat or false fire alarm, unless vacating is ordered by a civil authority;

**(2)** A planned vacating drill;

**(3)** The vacating of one or more guests, residents or clients that is due and confined to their individual medical condition; or

**(4)** Expense you incur when a local, state or federal Board of Health having jurisdiction over your operations orders that a described premise be evacuated, decontaminated or disinfected due directly to an outbreak of a communicable disease at the described premises.

The most we will pay under this Additional Coverage is $5,000.

A $1,000 per occurrence deductible applies to this Additional Coverage.

**j.** **Temporary Meeting Space**

We will reimburse you for rental of meeting space which is necessitated by the temporary unavailability of your primary office space due to the failure of a climate control system or leakage of a hot water heater during the policy period.  Coverage will exist only for the renting of temporary meeting space required for meeting with parties who are not insured under this policy.

The most we will pay in total in any 12-month policy period under this Additional Coverage is $5,000.

No Deductible applies to this Additional Coverage.

**k.** **Professional Extermination Fees And Expenses**

If Covered Property at a premise described in the Declarations is infested by Culicidae (Bed Bugs), Pediculus Humanus Capitis (Lice) or Ctenocephalides (Fleas),

**(1)** We will pay costs incurred by you to hire a licensed professional exterminator to:

    **(a)** Treat the infested Covered Property;

    **(b)** Seal off and treat immediately adjacent Covered Property to prevent further infestation during treatment; and

    **(c)** Properly dispose of infested Covered Property, as necessary.

**(2)** We will pay to replace your infested Business Personal Property, as described in Subparagraph **b. Your Business Personal Property** of Paragraph **1. Covered Property** under Section **A. Coverage**, that must necessarily be disposed of after all infestation at the premises has been eradicated by a licensed professional exterminator.

**(3)** We will not pay:

    **(a)** Costs to exterminate your premises as part of any routine or ongoing maintenance of such premises; or

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2011

**(b)** To replace Personal Property Of Others as described in Subparagraph **c. Personal Property Of Others** of Paragraph **1. Covered Property** under Section **A. Coverage.**

**(4)** The most we will pay in any one occurrence is $2,500.

**(5)** The most we will pay in total in any 12-month policy period under this Additional Coverage is $10,000.

**(6)** A $500 per occurrence deductible applies to this Additional Coverage.

## 12. Coverage Extensions

The first paragraph of Subsection **5. Coverage Extensions** in Section **A. Coverage** is deleted and replaced with the following:

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

## 13. Newly Acquired Or Constructed Property

**Paragraph** a. Newly Acquired Or Constructed Property **of Subsection** 5. Coverage Extensions **in Section** A. Coverage **is deleted and replaced by the following:**

### a. Newly Acquired Or Constructed Property

**(1) Buildings**

If this policy covers buildings, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $1,000,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business Personal Property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

**(ii)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(iii)** Business Personal Property that you newly acquire located at the described premises in the Declarations.

The most we will pay for loss or damage under this Extension is $1,000,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 180 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2011

POLICY NUMBER: 0094309 25-368984

MANAGEMENT PROTECTION
MP DS 05 10 06

# NOT-FOR-PROFIT MANAGEMENT LIABILITY COVERAGE PART DECLARATIONS

The Not-For-Profit Management Liability Coverage Part consists of this Declarations Form, the Not-For-Profit Management Liability Coverage Form, and the completed and signed Application which includes all attachments and exhibits.

**Named Organization:** ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH

**Mailing Address:** 2133 Highway 83 N
Monticello, AR 71655-9325

**Policy Period**

| | |
|---|---|
| **From:** | 05/31/2022 |
| **To:** | 05/31/2023    12:01 A.M. at your mailing address shown above. |

**Business Description:**

**Limit Of Liability**

Aggregate for Coverages **A, B** and **C** including "claims expenses": $500,000

**Retention Amounts**

| | |
|---|---|
| **Coverage A (each claim)** | $0 |
| **Coverage B (each claim)** | $1,000 |
| **Coverage C (each claim)** | $3,000 |

**Retroactive Date**

This insurance does not apply to a "claim" arising out of a "wrongful act" which occurs before the retroactive date, if any, shown below.

| | |
|---|---|
| **Retroactive Date (Coverages A and B):** | 05/31/2021 |
| | (Enter date or "none" if no retroactive date applies.) |
| **Retroactive Date (Coverage C):** | 05/31/2021 |
| | (Enter date or "none" if no retroactive date applies.) |

**Pending Or Prior Litigation Date**

**Pending Or Prior Date (Coverages A and B):**

(Enter date or "none" if no pending or prior date applies.)

**Pending Or Prior Date (Coverage C):**

(Enter date or "none" if no pending or prior date applies.)

| Extended Reporting Period |
|---|
| **Additional Premium:    $** |
| **Additional Period (Number Of Months):** |

| Endorsements Applicable To This Coverage Part (Show Numbers) |
|---|
| See Schedule of Forms and Endorsements |

| Countersignature Of Authorized Representative |
|---|
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions:

## A. Cancellation

1. The Named Organization shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the Named Organization written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the Named Organization's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the Named Organization any premium refund due. If we cancel, the refund will be pro rata. If the Named Organization cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

This Condition only applies to the Employment-Related Practices Liability Coverage Part, Crime And Fidelity Coverage Part and Kidnap/Ransom And Extortion Coverage Part.

## D. Inspections And Surveys

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this Condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this Condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

This Condition only applies to the Employment-Related Practices Liability Coverage Part, Crime And Fidelity Coverage Part and Kidnap/Ransom And Extortion Coverage Part.

## E. Premiums

The Named Organization shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

    © ISO Properties, Inc., 2005       □

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representatives but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

This Condition only applies to the Employment-Related Practices Liability Coverage Part, Crime And Fidelity Coverage Part and Kidnap/Ransom And Extortion Coverage Part.

**G. Loss Covered Under More Than One Coverage Form Of This Policy**

If the same loss is covered under two or more coverages contained in this policy, we will pay the lesser of:

**1.** The actual amount of loss; or

**2.** The sum of the applicable limits of liability.

**H. Other Coverage Parts**

For the purposes of this Common Policy Conditions form, any reference to the Named Organization shall be deemed to mean the first Named Insured with respect to the following coverage parts:

**1.** Employment-Related Practices Liability Coverage Part;

**2.** Crime And Fidelity Coverage Part; and

**3.** Kidnap/Ransom And Extortion Coverage Part;

when any of them is included in the Management Protection Policy.

 © ISO Properties, Inc., 2005 MP 00 03 10 06

# NOT-FOR-PROFIT MANAGEMENT LIABILITY COVERAGE FORM

### THIS IS A CLAIMS-MADE POLICY
### PLEASE READ THE ENTIRE FORM CAREFULLY

This is a claims-made policy. Under Coverages **A** and **B**, "claims" must be first made against the "insured persons" during the "policy period" or during the Extended Reporting Period, if exercised, and reported to us under the terms of Section **VI**, Paragraphs **A.** and **B.** Under Coverage **C** "claims" must be first made against the "organization" during the "policy period" or during the Extended Reporting Period, if exercised, and reported to us under the terms of Section **VI**, Paragraphs **A.** and **B.** "Claims expenses" are payable within, not in addition to, the Limit of Liability.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the "named organization" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VII** – Definitions.

## SECTION I – INSURING AGREEMENTS

### A. Coverage A – Management Liability

We will pay on behalf of any "insured person" such "loss" which the "insured person" becomes legally obligated to pay as a result of a "claim" first made against that "insured person" during the "policy period" or during the Extended Reporting Period, if exercised, except to the extent that the "organization" has indemnified the "insured person" for such "loss".

However, this insurance applies only to a "claim" arising out of a "wrongful act" committed by the "insured person" which occurs on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".

### B. Coverage B – Organization Reimbursement

We will pay on behalf of the "organization" such "loss" for which the "organization" has indemnified any "insured person", as permitted or required by law, and which the "insured person" becomes legally obligated to pay as a result of a "claim" first made against that "insured person" during the "policy period" or during the Extended Reporting Period, if exercised.

However, this insurance applies only to a "claim" arising out of a "wrongful act" committed by the "insured person" which occurs on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".

### C. Coverage C – Organization Liability

We will pay on behalf of the "organization" such "loss" which the "organization" becomes legally obligated to pay as a result of a "claim" first made against the "organization" during the "policy period" or during the Extended Reporting Period, if exercised.

However, this insurance applies only to a "claim" arising out of a "wrongful act" committed by the "organization" which occurs on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".

## SECTION II – EXTENSIONS

Subject to Section **I**, the following coverage extensions are provided:

### A. Spousal Liability

If a "claim" against any "insured person" includes a claim against the "insured person's" spouse (whether such status is derived by reason of statutory or common law, or any other law of any country) solely by reason of:

1. Such spousal status; or

2. Such spouse's ownership interest in property or assets that are sought as recovery for the "wrongful act" committed or allegedly committed by the "insured person";

all loss which such spouse becomes legally obligated to pay by reason of such claim will be treated for the purposes of this policy as "loss" which the "insured person" becomes legally obligated to pay as a result of the "claim" made against such "insured person". Such loss to the spouse will be covered under this policy only if and to the extent such loss would be covered if incurred by the "insured person".

However, this extension will not afford coverage for a "claim" arising out of any "wrongful act" committed or allegedly committed by the spouse.

 © ISO Properties, Inc., 2005 ☐

## B. Estates, Heirs And Legal Representatives

This policy will afford coverage for "claims" arising out of the "wrongful acts" of any "insured person" made against:

1. The estate, heirs or legal representatives of that deceased "insured person"; and

2. The legal representative of that "insured person" in the event of incompetency, insolvency or bankruptcy.

This extension will afford coverage only if and to the extent that, in the absence of such death, incompetency, insolvency or bankruptcy of the "insured person", such "claims" would have been covered by this policy according to this policy's terms, conditions and exclusions.

## SECTION III – EXCLUSIONS

We will not pay for any "loss" resulting from any "claim":

A. Based upon, attributable to, or arising in fact out of any dishonest, malicious, fraudulent or deliberately criminal act or any willful violation of any statute or regulation;

B. For bodily injury, mental or emotional distress, sickness, disease or death of any person, or damage to or destruction of any property including the loss of its use, except, when allegations of mental or emotional distress are made in a "claim" arising from a "wrongful employment practices act";

C. Based upon, attributable to, or arising in fact out of the gaining of any profit, remuneration or advantage to which any "insured" was not legally entitled;

D. Based upon, attributable to, or arising out of a "wrongful act" or "interrelated wrongful act" that has occurred before the Retroactive Date, if any, shown in the Declarations;

E. Based upon, attributable to, or arising out of the same facts, "wrongful acts" or "interrelated wrongful acts", alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this policy is a renewal or replacement;

F. Based upon, attributable to, or arising out of any demand, suit, or other proceeding against any "insured" which was pending on or existed prior to the applicable Pending or Prior Litigation Date shown in the Declarations, or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such demand, suit, or other proceeding;

G. Based upon, attributable to, or arising out of any actual or alleged failure or omission on the part of any "insured" to effect or maintain insurance;

H. Based upon, attributable to, or arising out of any "wrongful act" committed or allegedly committed by any "organization" or its "insured persons" which becomes a "subsidiary", if such actual or alleged "wrongful act" occurred prior to the date such "organization" became a "subsidiary";

I. Based upon, attributable to, or arising out of any "wrongful act" committed by any "insured person" serving in any position or capacity in any organization other than the "organization" even if the "organization" directed or requested that "insured person" to serve in such other position or capacity;

J. Based upon, attributable to, or arising out of any demand, suit, or other proceedings against any for-profit entity or its insured persons that the "organization" acquired, merged with, or created before or during the "policy period";

K. Brought by or on behalf of the "organization" or any "insured person", in any capacity, except:

1. A "claim" that is a derivative action brought on behalf of the "organization" by one or more security holders who are not "insured persons" and who bring the "claim" without the solicitation, assistance or participation of any "insured person" or the "organization"; or

2. A claim arising out of a "wrongful employment practices act";

L. For an actual or alleged violation of the Employee Retirement Income Security Act of 1974 and its amendments, or similar provisions of any federal, state, local or statutory law or common law;

M. For liability under or breach of any oral, written or implied contract or agreement, or for liability of others assumed by the "organization" under any such contract or agreement, except if:

1. The "organization" would have been liable in the absence of such contract or agreement; or

2. Allegations of liability or breach of such contract or agreement are made in a "claim" arising out of a "wrongful employment practices act";

N. Based upon, attributable to, or arising out of "wrongful acts" resulting from:

1. Publication or pronouncement, including material placed on the Internet or on similar electronic means of communication, concerning any organization or business enterprise or their products or services made by or at the direction of any "insured" with the knowledge of its falsity; or

© ISO Properties, Inc., 2005

2. Printing of periodicals, advertising matter, or any or all jobs taken by any "insured" to be printed for a third party when the periodicals, advertising matter or other printing is not within the scope of the "organization's" own activities;

O. Based upon, attributable to, or arising out of:

1. The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

2. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

3. A claim or suit brought by or on behalf of any governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants";

including without limitation any "claim" by or on behalf of the "organization" or its securities holders.

A "wrongful act" committed by any "insured person" shall not be imputed to any other "insured person" for purposes of applying the exclusions set forth in this Section III.

## SECTION IV – LIMIT OF LIABILITY AND RETENTION

A. The most we will pay for all "loss" under Coverage A, or Coverage B, or Coverage C, separately or combined, resulting from all "claims" first made during the "policy period" and the Extended Reporting Period, if exercised, is the aggregate Limit of Liability shown in the Declarations.

If the aggregate Limit of Liability is exhausted by the payment of "loss", we will have no further obligations or liability of any kind under this policy.

B. All "claims" arising out of the same "wrongful act" or "interrelated wrongful acts" committed by one or more "insureds" shall be considered a single "claim". Such single "claim" shall be deemed to be first made on the date the initial "claim" arising out of such "wrongful act" or "interrelated wrongful acts" was first made pursuant to Section VI, Paragraph A.1. or notice of such "wrongful act" or "interrelated wrongful acts" was first reported pursuant to Section VI, Paragraph A.2.

C. Subject to Paragraph A. above, we will pay only that amount of "loss" which is in excess of the applicable Retention Amount shown in the Declarations. Such Retention Amount will be borne by the "insureds", uninsured and at their own risk. A single Retention Amount will apply to all "loss" resulting from all "claims" alleging the same "wrongful acts" or "interrelated wrongful acts".

D. If "loss" resulting from a single "claim" is covered in whole or in part under more than one Coverage, the applicable Retention Amount will be applied separately to that part of the "loss" covered by each Coverage. However, for any one "claim", the sum of the applied Retention Amounts shall not exceed the largest single applicable Retention Amount.

E. "Claims expenses" are part of the "loss" and are not payable by us in addition to the Limit of Liability, but are payable within the Limit of Liability shown in the Declarations, thereby reducing the Limit of Liability shown in the Declarations.

F. If the "organization" is permitted or required by law to indemnify an "insured person" for "loss", but fails or refuses, other than for reason of "financial insolvency", then our payment for such "loss" will not be subject to any Retention Amount; and the "organization" shall be responsible for, and shall hold us harmless from, and shall reimburse us for such "loss" up to the applicable Retention Amount as shown in the Declarations. For purposes of this Paragraph, the "organization" resolutions, operating agreement, organizing agreement, articles of organization, certificate of formation, and other provisions providing indemnification to the "insured persons", shall be deemed to provide indemnification for such "loss" to the fullest extent permitted or required by law.

## SECTION V – DEFENSE AND SETTLEMENT

A. We shall have the right and duty to defend any "claim" made against any "insured" under Section I – Insuring Agreements, even if such "claim" is groundless, false or fraudulent. The "insureds" shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any "claims expenses" without our prior written consent. Only those settlements, stipulated judgments and "claims expenses" which have been consented to by us, will be recoverable as "loss" under the terms and conditions of this policy. Our consent shall not be unreasonably withheld. The "insureds" shall provide us with full cooperation, assistance and all information that would reasonably be required in order to allow us to reach a decision as to such consent.

       © ISO Properties, Inc., 2005         □

**B.** We may, upon the written consent of the "insureds", make any settlement of any "claim" which we deem reasonable. If any of the "insureds" withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" plus "claims expenses" incurred as of the date such settlement was proposed in writing by us to the "insureds".

## SECTION VI – CONDITIONS

### A. Notice To Us

1. As a condition precedent to our obligations under this policy, the "insureds" must give us written notice of any "claim" made against any "insured" as soon as practicable, but in no event:

   a. Later than sixty (60) days after the end of the "policy period"; or

   b. After the end of the Extended Reporting Period, if exercised.

2. If during the "policy period" any "insured" becomes aware of a specific "wrongful act" that may reasonably be expected to give rise to a "claim" against any "insured", and during the "policy period" the "insureds" give written notice to us of:

   a. A description of the specific "wrongful act", including all relevant dates;

   b. The names of the persons involved in the specific "wrongful act", including names of the potential claimants;

   c. Particulars as to the reasons for anticipating a "claim" which may result from such specific "wrongful act";

   d. The nature of the alleged or potential damages arising from such specific "wrongful act"; and

   e. The circumstances by which the "insureds" first became aware of the specific "wrongful act";

   then any "claim" subsequently made against any "insured" arising out of such specific "wrongful act" shall be deemed under this policy to be a "claim" made during the "policy period" in which such specific "wrongful act" was first reported to us.

### B. Extended Reporting Period

1. An Extended Reporting Period is available by endorsement and for the premium shown in the Declarations, if this policy is cancelled or not renewed by either you or us, unless:

   a. We cancel this policy for non-payment of premium; or

   b. You fail to pay any amounts owed us.

2. In order to obtain an Extended Reporting Period, you must give us a written request for the Extended Reporting Period Endorsement together with the full payment of the additional premium for the Extended Reporting Period Endorsement as shown in the Declarations within thirty (30) days after the end of the "policy period".

3. The Extended Reporting Period does not extend the "policy period" or change the scope of coverage provided. It applies only to "claims" to which the following applies:

   a. The "claim" is first made and reported to us before the end of the Extended Reporting Period; and

   b. The "claim" arose out of a "wrongful act" which occurred on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".

4. There is no separate or additional Limit of Liability for the Extended Reporting Period. The Limit of Liability available during the Extended Reporting Period, if purchased, shall be the remaining amount, if any, of the aggregate Limit of Liability available at the time this policy was cancelled or non-renewed.

5. Once in effect, the Extended Reporting Period may not be cancelled. The premium for the Extended Reporting Period Endorsement will be deemed fully earned as of the date it is purchased.

### C. Assistance And Cooperation

The "insureds" shall, as a condition precedent to their rights under this policy, give to us all information, assistance and cooperation as we may reasonably require.

### D. Subrogation

With respect to any payments made under this policy on behalf of any "insured", we shall be subrogated to the rights of recovery of such "insured", to the extent of those payments. The "insureds" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the name of the "insureds". Any recoveries, less the cost of obtaining them, will be distributed as follows:

1. To the "insured persons" and/or the "organization", until they are reimbursed for any "loss" that they sustain that exceeds the sum of the Limit of Liability and the Retention Amount, if any;

**2.** Then to us, until we are reimbursed for the payment made under this policy; and

**3.** Then to the "insured persons" and/or the "organization", until they are reimbursed for that part of the payment equal to the Retention Amount, if any.

### E. Other Insurance

If any "loss" resulting from any "claim" is insured by any other valid policy, then this policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this policy by reference in such other policy to this policy's policy number.

### F. Assignment

No change in, modification of, or assignment of interest under this policy will be effective without our written consent.

### G. Action Against Us

No action shall be taken against us unless, as a condition precedent, there shall have been full compliance with all of the terms and conditions of this policy.

No person or organization shall have the right under this policy to join us as a party to any action against any "insured" to determine the liability of any "insured", nor shall we be impleaded by the "insureds" or their legal representatives.

Bankruptcy or insolvency of the "organization", or of any "insured person" or of their estates shall not relieve us of any of our obligations under this policy.

### H. Representation And Severability

The "insureds" represent that all information and statements contained in the "application" are true, accurate and complete. All such information and statements are the basis for our issuing this policy and shall be considered as incorporated into and constitute a part of this policy. In the event that the "application" contains any misrepresentation or misstatement of a material fact, this policy shall not afford coverage to any "insured" who knew of such misrepresentation or misstatement.

### I. Changes In Exposure

#### 1. Acquisition Or Creation Of Another Not-For-Profit Organization

If before or during the "policy period" the "organization":

**a.** Acquires or creates another not-for-profit entity which as a result of such acquisition or creation becomes a "subsidiary";

**b.** Acquires any not-for-profit entity by merger into or consolidation with the "organization";

**c.** Acquires all or substantially all of the assets of another not-for-profit entity; or

**d.** Acquires voting rights representing the present right to vote for election or to appoint more than fifty percent (50%) of the directors or trustees of a not-for-profit entity;

such entity and its "insured persons" will be covered under this policy but only with respect to "wrongful acts" which occurred after such acquisition or creation. If the annual revenues for the most recent fiscal year of any acquired entity exceed twenty percent (20%) of the total assets of the "named organization" as reflected in the "named organization's" most recent audited consolidated financial statements prior to such acquisition, the "named organization", as a condition precedent to coverage for any new "insured", must give written notice of such acquisition or assumption to us as soon as practicable but in no event more than ninety (90) days after the effective date of such acquisition or assumption, together with such information that we may require, and must pay any additional premium required by us.

#### 2. Acquisition Of Named Organization

If during the "policy period" the "named organization" merges into or consolidates with another organization, such that the "named organization" is not the surviving organization; or another organization, or person or group of organizations and/or persons acting in concert acquires the right to elect, appoint or designate at least fifty percent (50%) of the directors or trustees of the "named organization", then coverage under this policy will continue until the end of the "policy period", but only with respect to "claims" arising out of "wrongful acts" which occurred prior to such merger, consolidation or acquisition.

The full annual premium for the "policy period" will be deemed fully earned immediately upon the occurrence of such merger, consolidation or acquisition of the "named organization".

The "named organization" must give written notice of such merger, consolidation or acquisition to us as soon as practicable, together with such information as we may reasonably require.

© ISO Properties, Inc., 2005

**3. Cessation Of Subsidiaries**

If before or during the "policy period" an organization ceases to be a "subsidiary", coverage with respect to such "subsidiary" and its "insured persons" will continue until the end of the "policy period" but only with respect to "claims" arising out of "wrongful acts" occurring prior to the date such organization ceased to be a "subsidiary".

**4. Change In Named Organization Status To For-Profit**

If the "named organization":

**a.** Changes its status and/or form of organization to become a for-profit entity; or

**b.** The "named organization" is deemed to be a for-profit entity by any governmental authority;

then coverage with respect to such "named organization" and its "insured persons" will continue until the end of the "policy period" but only with respect to "claims" arising out of "wrongful acts" occurring prior to the date of such change in status and/or form of organization.

The full annual premium for the "policy period" will be deemed fully earned immediately upon the effective date of such change in status and/or form of organization.

**J. Territory And Valuation**

**1.** This policy covers "wrongful acts" which occurred or "claims" made anywhere in the world.

**2.** All premiums, Limits of Liability, Retention Amounts, "loss" and any other monetary amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another component of "loss" under this policy is expressed in any currency other than United States of America dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

**SECTION VII – DEFINITIONS**

**A.** "Application" means all signed applications for this policy, including any attachments and other materials submitted in conjunction with the signed application(s).

**B.** "Claim" means:

**1.** A written demand for monetary damages against any "insured";

**2.** A civil proceeding against any "insured" commenced by the service of a complaint or similar pleading;

**3.** A criminal proceeding against any "insured person" commenced by a return of an indictment; or

**4.** A formal administrative or regulatory proceeding against any "insured" commenced by the filing of a notice of charges, formal investigative order or similar document;

for a "wrongful act", including any appeal therefrom.

**C.** "Claims expenses" means that part of a "loss" consisting of reasonable and necessary fees (including attorneys' and experts' fees), expenses incurred in the defense or appeal of a "claim", and the premium for appeal, attachment or similar bonds (without any obligation on our part to provide such bonds), excluding the wages, salaries, benefits or expenses of any "insured person".

**D.** "Financial insolvency" means the status of the "organization" resulting from:

**1.** The appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the "organization"; or

**2.** The "organization" becoming a debtor in possession.

**E.** "Insured" means the "organization" and the "insured persons".

**F.** "Insured person" means any former, present or future director, officer, trustee, employee, volunteer or member of the staff, faculty or any duly constituted committee of the "organization".

**G.** "Interrelated wrongful act" means all causally connected "wrongful acts".

**H.** "Loss" means "claims expenses", compensatory damages, settlement amounts, legal fees and costs awarded pursuant to judgments. "Loss" does not include civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, or matters that are uninsurable pursuant to applicable law.

**I.** "Named organization" means the not-for-profit organization named in the Declarations as the named organization.

**J.** "Organization" means the "named organization" and/or any "subsidiary".

**K.** "Policy period" means the period of time from the inception date of this policy shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

    © ISO Properties, Inc., 2005    MP 00 06 10 06    □

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Subsidiary" means any organization:

1. Which qualifies as a not-for-profit organization under the Internal Revenue Code, other than a political committee organized pursuant to Section 432 of the Federal Election Campaign Act of 1971 and its amendments, or exempt from federal income tax; and

2. For which the "named organization" controls rights representing the present right to elect or to appoint more than fifty percent (50%) of the directors or trustees of such not-for-profit organization:

   **a.** On or before the effective date of this policy; or

   **b.** After the effective date of this policy by reason of being created or acquired by the "organization" after such date.

**N.** "Wrongful act" includes "wrongful employment practices acts" and means:

1. With respect to the "insured persons", any actual or alleged error, misstatement, misleading statement, neglect or breach of duty, omission or act by the "insured persons" in their insured position or capacity for the "organization"; or any matter claimed against them solely by reason of their serving in such insured position or capacity. This does not apply to a position or capacity in any entity other than the "organization", even if the "organization" directed or requested the "insured person" to serve in such other position or capacity.

2. With respect to the "organization", any actual or alleged error, misstatement, misleading statement, neglect or breach of duty, omission or act by the "organization".

**O.** "Wrongful employment practices act" means any actual or alleged:

1. Wrongful dismissal, discharge or termination of employment;

2. Breach of any implied employment contract;

3. Employment-related misrepresentation;

4. Violation of any federal, state, or local statute, regulation, ordinance, or common law concerning employment or discrimination in employment;

5. Sexual harassment (as that term is defined by the federal Equal Employment Opportunity Commission) or other illegal workplace harassment;

6. Wrongful failure to employ or promote;

7. Wrongful reference, discipline or deprivation of a career opportunity;

8. Failure to grant tenure or adopt adequate workplace or employment policies and procedures; or

9. Illegal retaliatory treatment.

 © ISO Properties, Inc., 2005

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES

This endorsement modifies insurance provided under the following:

NOT-FOR-PROFIT MANAGEMENT LIABILITY COVERAGE FORM

**A.** The first paragraph of the Preamble is replaced by the following:

This is a claims-made policy. Under Coverages **A** and **B**, "claims" must be first made against the "insured persons" during the "policy period" or during the applicable extended reporting period, and reported to us under the terms of Section **VI**, Paragraphs **A.** and **B.** Under Coverage **C**, "claims" must be first made against the "organization" during the "policy period" or during the applicable extended reporting period, and reported to us under the terms of Section **VI**, Paragraphs **A.** and **B.** "Claims expenses" are payable within, not in addition to, the Limit of Liability.

**B.** **Section I – Insuring Agreements** is replaced by the following:

### Section I – Insuring Agreements

#### A. Coverage A – Management Liability

We will pay on behalf of any "insured person" such "loss" which the "insured person" becomes legally obligated to pay as a result of a "claim" first made against that "insured person" during the "policy period" or during the applicable extended reporting period, except to the extent that the "organization" has indemnified the "insured person" for such "loss".

However, this insurance applies only to a "claim" arising out of a "wrongful act" committed by the "insured person" which occurs on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".

#### B. Coverage B – Organization Reimbursement

We will pay on behalf of the "organization" such "loss" for which the "organization" has indemnified any "insured person", as permitted or required by law, and which the "insured person" becomes legally obligated to pay as a result of a "claim" first made against that "insured person" during the "policy period" or during the applicable extended reporting period.

However, this insurance applies only to a "claim" arising out of a "wrongful act" committed by the "insured person" which occurs on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".

#### C. Coverage C – Organization Liability

We will pay on behalf of the "organization" such "loss" which the "organization" becomes legally obligated to pay as a result of a "claim" first made against the "organization" during the "policy period" or during the applicable extended reporting period.

However, this insurance applies only to a "claim" arising out of a "wrongful act" committed by the "organization" which occurs on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".

**C.** Paragraph **A.** under **Section IV – Limit Of Liability And Retention** is replaced by the following:

**A.** The most we will pay for all "loss" under Coverage **A**, Coverage **B**, or Coverage **C**, separately or combined, resulting from all "claims" first made during the "policy period" and the applicable extended reporting period, is the aggregate Limit Of Liability shown in the Declarations.

If the aggregate Limit of Liability is exhausted by the payment of "loss", we will have no further obligations or liability of any kind under this Policy.

**D.** Paragraph **B.** under **Section VI – Conditions** is replaced by the following:

#### B. Extended Reporting Periods

**1.** This Policy provides an automatic extended reporting period. A supplemental extended reporting period is available, as described below.

    © Insurance Services Office, Inc., 2016

2. The extended reporting periods do not extend the "policy period" or change the scope of coverage provided. They apply only to "claims" to which the following applies:

   a. The "claim" is first made and reported to us before the end of the applicable extended reporting period; and

   b. The "claim" arose out of a "wrongful act" which occurred on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".

3. There is no separate or additional Limit of Liability for the extended reporting periods. However:

   a. The Limit of Liability available during an automatic extended reporting period shall be the remaining amount, if any, of the aggregate Limit of Liability available at the time this Policy was cancelled or nonrenewed;

   b. The Limit of Liability available during a supplemental extended reporting period shall be no less than the greater of the amount of coverage remaining in the expiring policy aggregate or fifty percent (50%) of the aggregate Limit of Liability at policy inception.

4. The automatic extended reporting period is automatically provided without additional charge. This automatic extended reporting period starts with the end of the "policy period" and lasts for sixty (60) days.

5. The supplemental extended reporting period is available by the Extended Reporting Period Endorsement and for the premium shown in the Declarations, if this Policy is cancelled or not renewed by either you or us.

   This supplemental extended reporting period starts when the automatic extended reporting period, set forth in Paragraph **4.** above, ends.

6. In order to obtain the supplemental extended reporting period, you must give us a written request for the Extended Reporting Period Endorsement together with the full payment of the additional premium for the Extended Reporting Period Endorsement as shown in the Declarations within sixty (60) days after the end of the automatic extended reporting period.

7. Once in effect, the supplemental extended reporting period may not be cancelled. The premium for the Extended Reporting Period Endorsement will be deemed fully earned as of the date it is purchased.

E. Paragraph **1.** of the **Subrogation** Condition under **Section VI – Conditions** is replaced by the following:

   1. To the "insured persons" and/or the "organization", until they are fully compensated for the "loss" sustained, including expenses incurred in obtaining full compensation for the "loss".

  © Insurance Services Office, Inc., 2016  MP 01 86 05 17

MANAGEMENT PROTECTION
MP 02 31 10 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

EXECUTIVE LIABILITY COVERAGE PART
FIDUCIARY LIABILITY COVERAGE PART
FINANCIAL INSTITUTIONS EXECUTIVE LIABILITY COVERAGE PART
NOT-FOR-PROFIT MANAGEMENT LIABILITY COVERAGE PART

**A.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

    **5.a.** If this policy is cancelled, we will send the Named Organization any premium refund due.

    **b.** We will refund the pro rata unearned premium if the policy is:

      **(1)** Cancelled by us or at our request;

      **(2)** Cancelled but rewritten with us or in our company group;

      **(3)** Cancelled because you no longer have an insurable interest in the property or business operation that is the subject of this insurance; or

      **(4)** Cancelled after the first year of a pre-paid policy that was written for a term of more than one year.

    **c.** If the policy is cancelled at the request of the Named Organization, other than a cancellation described in Paragraph **b.(2), (3)** or **(4)** above, we will refund ninety percent (90%) of the pro rata unearned premium. However, the refund will be less than ninety percent (90%) of the pro rata unearned premium if the refund of such amount would reduce the premium retained by us to an amount less than the minimum premium for this policy.

    **d.** The cancellation will be effective even if we have not made or offered a refund.

    **e.** If the Named Organization cancels the policy, we will retain no less than $100 of the premium.

**B.** The following is added to the **Cancellation** Common Policy Condition:

    **7. Cancellation Of Policies In Effect More Than 60 Days**

    **a.** If this policy has been in effect more than 60 days or is a renewal policy, we may cancel only for one or more of the following reasons:

      **(1)** Nonpayment of premium;

      **(2)** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

      **(3)** The occurrence of a material change in the risk which substantially increases any hazard insured against after policy issuance;

      **(4)** Nonpayment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the policy; or

      **(5)** A material violation of a material provision of the policy.

    **b.** If we cancel for:

      **(1)** Nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the Named Organization and any lienholder or loss payee named in the policy at least 10 days before the effective date of cancellation.

 © ISO Properties, Inc., 2005

(2) Any other reason, we will mail or deliver notice of cancellation to the Named Organization and any lienholder or loss payee named in the policy at least 20 days before the effective date of cancellation.

**C.** The following condition is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail to the Named Organization shown in the Declarations written notice of nonrenewal at least 60 days before:

   **a.** Its expiration date; or

**b.** Its anniversary date, if it is a policy written for a term of more than one year and with no fixed expiration date.

However, we are not required to send this notice if nonrenewal is due to your failure to pay any premium required for renewal.

2. We will mail our notice to the Named Organization's mailing address last known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2005

POLICY NUMBER:

MANAGEMENT PROTECTION
MP 21 12 05 09

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – NUCLEAR ENERGY LIABILITY

This endorsement modifies insurance provided under the following:

EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY COVERAGE FORM
EXECUTIVE LIABILITY COVERAGE FORM
EXECUTIVE LIABILITY SIDE A COVERAGE FORM
FIDUCIARY LIABILITY COVERAGE FORM
FINANCIAL INSTITUTIONS EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY COVERAGE
FORM
FINANCIAL INSTITUTIONS EXECUTIVE LIABILITY COVERAGE FORM
FINANCIAL INSTITUTIONS EXECUTIVE LIABILITY SIDE A COVERAGE FORM
NOT-FOR-PROFIT MANAGEMENT LIABILITY COVERAGE FORM

### SCHEDULE

| |
|---|
| **Effective Date Of Endorsement:** |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

1. This insurance does not apply:

   A. To liability:

      (1) With respect to which the "insureds", "insured persons" and/or the "organization" under the policy are also insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be insured under any such policy but for its termination upon exhaustion of its Limit Of Liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "named organization" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. To liability resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, any "insured", "insured person" and/or the "organization", or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of the "insureds", "insured persons" and/or the "organization"; or

      (3) The liability arises out of the furnishing by any "insured", "insured person" and/or the "organization" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

    © Insurance Services Office, Inc., 2008       □

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of any "insured", "insured person" and/or the "organization" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

    © Insurance Services Office, Inc., 2008    MP 21 12 05 09    □

**MANAGEMENT PROTECTION**
**MP 21 16 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

EXECUTIVE LIABILITY COVERAGE PART
FIDUCIARY LIABILITY COVERAGE PART
FINANCIAL INSTITUTIONS EXECUTIVE LIABILITY COVERAGE PART
NOT-FOR-PROFIT MANAGEMENT LIABILITY COVERAGE PART

**A.** The following exclusion is added to the **Exclusions** Section:

We will not pay for any "loss" resulting from any "claim" based upon, attributable to, or arising directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico). However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added to the **Definitions** Section:

**1.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

**b.** The act resulted in damage:

**(1)** Within the United States (including its territories and possessions and Puerto Rico); or

**(2)** Outside of the United States in the case of:

**(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

**(b)** The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**2.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any "loss" resulting from any "claim" that is otherwise excluded under this Coverage Part.

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015
**MP 21 16 01 15**

POLICY NUMBER:

**MANAGEMENT PROTECTION**
**MP 21 26 05 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – ANTITRUST

This endorsement modifies insurance provided under the following:

EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY COVERAGE FORM
EXECUTIVE LIABILITY COVERAGE FORM
EXECUTIVE LIABILITY SIDE A COVERAGE FORM
FINANCIAL INSTITUTIONS EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY
COVERAGE FORM
FINANCIAL INSTITUTIONS EXECUTIVE LIABILITY COVERAGE FORM
FINANCIAL INSTITUTIONS EXECUTIVE LIABILITY SIDE A COVERAGE FORM
NOT-FOR-PROFIT MANAGEMENT LIABILITY COVERAGE FORM

### SCHEDULE

| |
|---|
| **Effective Date Of Endorsement:** |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following exclusion is added to **Section III – Exclusions:**

We will not pay for any "loss" resulting from any "claim" based upon, attributable to, or arising either directly or indirectly out of the restraint of trade, monopolization or unfair trade, price fixing, or any actual or alleged violation of:

1. The Federal Trade Commission Act, the Sherman Act, the Clayton Act, or any other federal, state or local statute or common law regarding antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade; or

2. Any rules, regulations, bulletins or ordinances promulgated under or in connection with the statutes in Paragraph **1.**

MANAGEMENT PROTECTION
CMMP 04 07 03 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RELIGIOUS ORGANIZATIONS - AFFILIATED ENTITY DISPUTE LEGAL DEFENSE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

EXECUTIVE LIABILITY COVERAGE FORM

NOT-FOR-PROFIT MANAGEMENT LIABILITY COVERAGE FORM

### SCHEDULE

| | |
|---|---|
| **Affiliated Entity Dispute Legal Defense Coverage Aggregate Limit** | $50,000 |
| **Affiliated Entity Dispute Legal Defense Coverage Each Wrongful Act Limit** | $25,000 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

## A. Additional Exclusions

The following is added to **Section III - Exclusions:**

We will not pay for any "loss" resulting from any "claim":

Arising out of, resulting from or in any way involving any actual or alleged "affiliated entity dispute", except as provided by Affiliated Entity Dispute Legal Defense Coverage.

## B. Affiliated Entity Dispute Legal Defense Coverage

1. Except for the insurance provided by this Affiliated Entity Dispute Legal Defense Coverage Endorsement, and subject to all terms, conditions, definitions, exclusions and all other provisions in the Coverage Form this endorsement modifies, this policy does not apply to, nor do we have any duty to defend, any "claim" arising out of, resulting from or in any way involving any actual or alleged "affiliated entity dispute".

2. We will pay "claims expenses" (but no other item of any "loss") that otherwise fulfill all requirements of the **Insuring Agreements** of the Coverage Form this endorsement modifies that the "organization" or "insured person" become legally obligated to pay arising out of a "wrongful act" that results in a "claim" or "claims" made against the "organization" or "insured persons" by an "affiliated entity" arising out of, resulting from or in any way involving any actual or alleged "affiliated entity disputes". The "claim" must arise out of a "wrongful act". The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay for "affiliated entity dispute" "claims expenses".

## C. Exclusions

Exclusion **K.** does not apply to Affiliated Entity Dispute Legal Defense Coverage provided by this endorsement.

## D. Limit Of Insurance And Retention

1. The Retention in **Section IV - Limit Of Liability And Retention** does not apply to Affiliated Entity Dispute Legal Defense Coverage.

2. The following is added to **Section IV - Limit Of Liability And Retention:**

The most we will pay under the Affiliated Entity Dispute Legal Defense Coverage for all "claims expenses" resulting from all "affiliated entity disputes" arising out of "interrelate wrongful act" is the Affiliated Entity Legal Defense Coverage Each Wrongful Act Limit. In the event that more than one "claim" is made arising out of an "interrelate wrongful act", only one Affiliated Entity Dispute Legal Defense Coverage Each Wrongful Act Limit will apply, which shall be the Affiliated Entity Dispute Legal Defense Coverage Each Wrongful Act Limit in effect on the date the first "claim" is made or the date notice is first given to us in accordance with Paragraph **A.2.** of **Section VI - Conditions** of the Coverage Form this endorsement modifies, whichever date is earlier.

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2005

The Affiliated Entity Dispute Legal Defense Coverage Aggregate Limit is the most we will pay for the sum of all "claims expenses" arising out of all "wrongful acts" that result in all "claims" made under the Affiliated Entity Dispute Legal Defense Coverage.

The Affiliated Entity Dispute Legal Defense Coverage Each Wrongful Act Limit and the Affiliated Entity Dispute Legal Defense Coverage Aggregate Limit is part of and not in addition to the Aggregate Limit Of Liability that applies to the Coverage Form modified by this endorsement.

**E. Definitions**

For the purposes of the coverage provided by this endorsement, the following definitions are added to and revised in **Section VII - Definitions**:

**1.** The following definitions are added to **Section VII - Definitions**:

    **a.** "Affiliated entity" means any "named organization", or any other entity, or organization with which the "named organization" is, has been, is claimed to be, or is claimed to have been affiliated or associated, or which any "named organization" governs or is governed by, owns or is owned by, or controls or is controlled by, including, but not limited to, any and all corporations, associations, partnerships, joint ventures, foundations, churches, congregations, trusts, educational institutions, day care facilities, group home facilities, denominations, dioceses, conventions, districts, synods, councils, camps, conference centers, and any other similar entity or organization. "Affiliated entity" includes all "insured persons", employees, members, or volunteers of such entity or organization and all "insured persons", employees, members, or volunteers of any "named organization".

    **b.** "Affiliated entity dispute" means any "claim" arising out of, resulting from or in any way involving any allegation or "claim" made against an insured by or on behalf of any actual or alleged "affiliated entity" that arises out of one or more of the following:

        **(1)** Ownership, title, control, use, or return of real or personal property, donations, or financial assets;

        **(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies;

        **(3)** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

        **(4)** Access to financial or other records;

        **(5)** The authority or control over business affairs of an insured;

        **(6)** The appointment, election or removal of "insured persons" or other positions;

        **(7)** The interpretation or application of articles of incorporation, charters, association agreements, constitutions, bylaws or other governing documents, or any amendments thereto; or

        **(8)** Ecclesiastical, doctrinal, religious or philosophical teachings, beliefs, practices, or policies.

    However, "affiliated entity dispute" does not include any "claim" seeking monetary damages made against an insured by an employee, member or volunteer of the Named Insured who is not an "insured person".

**2.** The definition of "interrelated wrongful act" in **Section VII - Definitions** is deleted and replaced by the following:

"Interrelated wrongful act" means all "wrongful acts" arising out of, resulting from or in any way involving the same, interrelated, repeated, or continuous "wrongful acts", regardless of number of "wrongful acts", the period of time over which such acts occur, the number of policies issued by us or the number of policy periods in effect when such "wrongful acts" are committed, the number of persons alleging injury from such "wrongful acts", the number of "claims" asserted, the number of "affiliated entities", or the number of "insured persons" that are alleged to have committed such "wrongful acts".

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2005

0094309- 25. 368984

**MANAGEMENT PROTECTION**
**CMMP 16 01 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARKANSAS – DEFENSE WITHIN LIMITS
# NOTICE AND ACKNOWLEDGEMENT

This endorsement modifies insurance provided under the following:

NOT-FOR-PROFIT MANAGEMENT LIABILITY COVERAGE FORM

EXECUTIVE LIABILITY COVERAGE FORM

Arkansas Insurance Commissioner Order A.I.D. No. 98-5 requires that defense within limits directors and officers liability coverage must be written with limits of $500,000 or more. In addition, a signed notice and acknowledgement form must be obtained from the applicant and attached to the policy at the time of issuance.

The signature as shown in the Schedule below, or on file with the company, constitutes acknowledgement and acceptance of the below terms:

**A.** "Claims expenses" are payable within the Not-For-Profit Management Liability Coverage or Executive Liability Coverage.

**B.** The Not-For-Profit Management Liability Coverage or Executive Liability Coverage will be reduced by, and may be completely eliminated by, payments for "claims expenses".

The applicant should be aware that if the Not-For-Profit Management Liability Coverage or Executive Liability Coverage is exhausted by the payment of damages or "claims expenses", we will have no further obligations or liability of any kind under the Not-For-Profit Management Liability Coverage or Executive Liability Coverage.

**SCHEDULE**

| | |
|---|---|
| **Applicant:** | |
| **Signature:** | |
| **Name:** | |
| **Title:** | |
| **Date:** | |

Copyright, CM Insurance, 2019
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2018

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MANAGEMENT PROTECTION COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

EXECUTIVE LIABILITY COVERAGE FORM
NOT-FOR-PROFIT MANAGEMENT LIABILITY COVERAGE FORM

The following exclusion is added to **Section III - Exclusions**:

**Exclusions**

We will not pay for any "loss" resulting from any "claim":

**Communicable Disease**

Based on, arising out of, in connection with, resulting from, contributed to by, or relating to, directly or indirectly, in whole or in part, any communicable disease. This exclusion applies even if the "claims" against the "insured" allege negligence or other wrongdoing in the:

1. Supervising, hiring, employing, training, retaining, or monitoring of others that are infected with or alleged to be infected with a communicable disease;

2. Testing for or monitoring of any communicable disease;

3. Containment; remediation; mitigation; or abatement of any communicable disease;

4. Failure to prevent the transmission of any communicable disease;

5. Failure to report a communicable disease to any federal, state, or local authorities or warn any person;

6. Failure to comply with any federal, state, or local order or guidelines in connection with any communicable disease;

7. Failure to develop, review, or implement policies or procedures, including employment policies or procedures, in connection with a communicable disease; or

8. Procuring, obtaining, retaining, shortage of, lack of, limited availability of, unavailability of, or providing of any medications, equipment or supplies.

Copyright, CM Insurance, 2020
Includes copyrighted material of Insurance Services Office with its permission.
© Insurance Services Office, Inc., 2008

# ARKANSAS IMPORTANT NOTICE

If you have any questions regarding this insurance policy, please contact Church Mutual or your Church Mutual Regional Representative at:

Church Mutual Insurance Company, S.I.
3000 Schuster Lane
P.O. Box 357
Merrill, WI  54452-0357
Toll Free (800) 554-2642

Policyholders have the right to file a complaint with the Arkansas Insurance Department (AID). You may call AID to request a complaint form at (800) 852-5494 or (501) 371-2640 or write the Department at:

Arkansas Insurance Department
1 Commerce Way, Suite 102
Little Rock, AR 72202

Copyright, CM Insurance, 2020

# Cyber Liability And Data Breach Response Information Packet

A valuable feature of the cyber liability policy you have through Church Mutual is access to www.breachsolutions.com, a proprietary risk management website containing sample privacy policies and procedures, breach response and preparedness materials, and state and federal regulatory updates. You can also check the website for trending cyber topics and timely data security news and updates.

To register for the site, please go to www.breachsolutions.com and use your Church Mutual policy number and the following activation code, **6jE2ar.**

Once registered, you will have unlimited access to the following resources on data security, privacy, and data breaches:

**Federal and State Compliance**
- Summaries of federal & state laws
- Updates to statutes & regulations
- Sample forms, agreements, policies and procedures

**Risk Reduction**
- Risk assessments
- Incident response preparation and test plans
- Data security best practices

**Training**
- Industry specific courses
- Awareness bulletins and posters for supervisors and staff
- Webinars for compliance staff

**News & Updates**
- Data security news
- Breach trends

Church Mutual partners with Beazley Group, the leading provider of cyber liability coverage, to provide this policy. This partnership also provides online learning modules to help educate your employees and volunteers about privacy and data security risks. Beazley's online learning site, elearning.beazleybreachsolutions.com, includes the following interactive training modules:

- Social engineering prevention
- Ransomware prevention
- Phishing prevention
- Malware protection
- Mobile device security

- Wi-Fi practices
- Identity theft prevention
- Smarter, better passwords
- Smarter, better email
- Spam prevention

Using the e-learning site, you can upload lists of employees and volunteers, create training assignments for them, and track individual completion of training.

To access the site, visit elearning.beazleybreachsolutions.com and register *using* the following activation code, **6jE2ar.** It is recommended that you use your email address as your username. You'll find additional information about enrolling employees, creating training assignments for them, and reporting on individual completion of training in the Site Administrator's Guide.

 Copyright, CM Insurance, 2020

# Cyber Liability And Data Breach Response Information Packet

## Cyber Liability and Data Breach Response Coverage

### Church Mutual's partnership with Beazley

Church Mutual now provides cyber liability coverage under the general liability section of your multi-peril policy. We've partnered with Beazley[1] to provide affordable, extensive coverage when the personal and private information your organization stores on computers is compromised or stolen.

Both Church Mutual and Beazley are rated A (Excellent) by A.M. Best, the industry's leading analyst. Church Mutual is the leading insurer of religious institutions, insuring nearly twice as many as its closest competitor. Beazley is a leader in its industry of privacy and security coverage. We are confident that this partnership will continue bringing you the excellent service from Church Mutual that you have come to expect.

### Beazley Breach Response (BBR) Services

### A data breach isn't always a disaster. Mishandling it is.

When your organization suffers a data breach, our first concern is to handle the breach in a way that upholds your confidence. Beazley pioneered the concept of data breach insurance that focuses first and foremost on response and has a dedicated in-house breach response unit that focuses exclusively on helping you manage data breaches effectively.

The BBR Services team focuses on coordination of the expert forensic, legal, notification and credit monitoring services that you need to satisfy all legal requirements and reassure your organization. In addition, the team indemnifies your losses from lawsuits or regulatory actions, the risk of which may be reduced by a well-coordinated breach response but can never be completely eliminated. Besides coordinating data breach response, BBR Services is responsible for maintaining and developing Beazley's suite of risk management services, designed to minimize the risk of a data breach occurring.

Beazley invented this comprehensive approach and has handled over 6,000 breaches to date.

### Services for your organization

### LEGAL SERVICES
If an incident occurs that might require notification under relevant breach notice laws or regulations, specific Legal Services to assist you in investigating and responding to the incident are included.

### COMPUTER EXPERT SERVICES
In the event that external forensics assistance is needed to assess the impact of a data incident on your computer system, Computer Expert Services will be provided to (1) help to determine whether, and the extent to which, notification must be provided to comply with Breach Notice Laws, and (2) if applicable, give advice and oversight in connection with the investigation conducted by a PCI Forensic Investigator.

The computer security expert that provides Computer Expert Services will require access to information, files and systems and it is important for you to comply with the expert's requests and cooperate with the investigation. Reports or findings of the expert will be made available to you, us, the BBR Services team and any attorney that you retain to provide advice with regard to the incident.

[1] Claims handling and breach response services are provided by Beazley USA Services, a member of Beazley Group. Beazley USA Services does not underwrite insurance for Church Mutual. Policies purchased through Church Mutual are subject to Church Mutual's underwriting processes.

 Copyright, CM Insurance, 2020

# Cyber Liability And Data Breach Response Information Packet

## NOTIFICATION SERVICES AND CALL CENTER SERVICES

BBR Services will assist you with the notification process, including arranging for notification and/or call center service. BBR Services will walk you through notification details such as how to work with privacy counsel to develop notification letters and how to timely provide notification letters, relevant addresses and other required deliverables to the notification vendor.

Notification letters will be black and white and two-sided; returned mail will be provided to you at your request. Mailing may be staggered to accommodate the number of notifications and anticipated call center volume. For notifications by U.S. mail, the notification vendor will update and mail notifications according to the U.S. Postal Service data base of address changes. Notification services do not include further tracing of individuals whose notifications are returned.

BBR Services will also walk you through developing a set of frequently asked questions (FAQs) for use by the call center and how to anticipate and prepare for call escalations.

## BREACH RESOLUTION AND MITIGATION SERVICES

Beazley Breach Response includes a number of products that provide Resolution and Mitigation Services, including one and three bureau monitoring and identity monitoring solutions. All the solutions include fraud resolution services.[2] Based on Beazley's experience, three bureau credit monitoring is generally appropriate for breaches involving data such as names combined with social security numbers. For breaches involving less sensitive data, one bureau credit monitoring or identity monitoring solutions may be appropriate. The BBR Services team has handled over 1,000 data breaches and will advise you on which products or solutions may be applicable for a particular breach event.

A product or solution may be offered where reasonably practicable and only to the extent available in a particular jurisdiction. Notified Individuals will have up to ninety (90) days from mailing of the notification to subscribe to an offered product or solution and they must qualify for enrollment, complete the enrollment process and agree to the applicable terms and conditions set by the provider. Enrollees of an offered product or solution will have access to the services provided under such product or solution for 12 months from the date of their enrollment.

### Reporting a Claim

If you think you have been exposed to a data breach or have a claim to report, contact the Church Mutual Claims Center immediately at **(800) 554-2642.** Church Mutual will gather details regarding your claim and assist you in working with Beazley to investigate and respond to the incident you have reported.

It is important that you contact us first before retaining any service providers as the BBR Services team will take you through the process and work with you to secure services from providers that best match your needs.

---

[2] Fraud resolution and fraud support services require that subscribers are eligible to enroll in ProtectMyID® or Family Secure® and complete such enrollment.

MANAGEMENT PROTECTION
MP 00 06 10 06

# NOT-FOR-PROFIT MANAGEMENT LIABILITY COVERAGE FORM

## THIS IS A CLAIMS-MADE POLICY
## PLEASE READ THE ENTIRE FORM CAREFULLY

This is a claims-made policy. Under Coverages **A** and **B**, "claims" must be first made against the "insured persons" during the "policy period" or during the Extended Reporting Period, if exercised, and reported to us under the terms of Section **VI**, Paragraphs **A.** and **B.** Under Coverage **C** "claims" must be first made against the "organization" during the "policy period" or during the Extended Reporting Period, if exercised, and reported to us under the terms of Section **VI**, Paragraphs **A.** and **B.** "Claims expenses" are payable within, not in addition to, the Limit of Liability.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the "named organization" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VII** – Definitions.

## SECTION I – INSURING AGREEMENTS

### A. Coverage A – Management Liability

We will pay on behalf of any "insured person" such "loss" which the "insured person" becomes legally obligated to pay as a result of a "claim" first made against that "insured person" during the "policy period" or during the Extended Reporting Period, if exercised, except to the extent that the "organization" has indemnified the "insured person" for such "loss".

However, this insurance applies only to a "claim" arising out of a "wrongful act" committed by the "insured person" which occurs on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".

### B. Coverage B – Organization Reimbursement

We will pay on behalf of the "organization" such "loss" for which the "organization" has indemnified any "insured person", as permitted or required by law, and which the "insured person" becomes legally obligated to pay as a result of a "claim" first made against that "insured person" during the "policy period" or during the Extended Reporting Period, if exercised.

However, this insurance applies only to a "claim" arising out of a "wrongful act" committed by the "insured person" which occurs on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".

### C. Coverage C – Organization Liability

We will pay on behalf of the "organization" such "loss" which the "organization" becomes legally obligated to pay as a result of a "claim" first made against the "organization" during the "policy period" or during the Extended Reporting Period, if exercised.

However, this insurance applies only to a "claim" arising out of a "wrongful act" committed by the "organization" which occurs on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".

## SECTION II – EXTENSIONS

Subject to Section **I**, the following coverage extensions are provided:

### A. Spousal Liability

If a "claim" against any "insured person" includes a claim against the "insured person's" spouse (whether such status is derived by reason of statutory or common law, or any other law of any country) solely by reason of:

1. Such spousal status; or

2. Such spouse's ownership interest in property or assets that are sought as recovery for the "wrongful act" committed or allegedly committed by the "insured person";

all loss which such spouse becomes legally obligated to pay by reason of such claim will be treated for the purposes of this policy as "loss" which the "insured person" becomes legally obligated to pay as a result of the "claim" made against such "insured person". Such loss to the spouse will be covered under this policy only if and to the extent such loss would be covered if incurred by the "insured person".

However, this extension will not afford coverage for a "claim" arising out of any "wrongful act" committed or allegedly committed by the spouse.

Exhibit _J_

© ISO Properties, Inc., 2005

## B. Estates, Heirs And Legal Representatives

This policy will afford coverage for "claims" arising out of the "wrongful acts" of any "insured person" made against:

1. The estate, heirs or legal representatives of that deceased "insured person"; and

2. The legal representative of that "insured person" in the event of incompetency, insolvency or bankruptcy.

This extension will afford coverage only if and to the extent that, in the absence of such death, incompetency, insolvency or bankruptcy of the "insured person", such "claims" would have been covered by this policy according to this policy's terms, conditions and exclusions.

## SECTION III – EXCLUSIONS

We will not pay for any "loss" resulting from any "claim":

A. Based upon, attributable to, or arising in fact out of any dishonest, malicious, fraudulent or deliberately criminal act or any willful violation of any statute or regulation;

B. For bodily injury, mental or emotional distress, sickness, disease or death of any person, or damage to or destruction of any property including the loss of its use, except, when allegations of mental or emotional distress are made in a "claim" arising from a "wrongful employment practices act";

C. Based upon, attributable to, or arising in fact out of the gaining of any profit, remuneration or advantage to which any "insured" was not legally entitled;

D. Based upon, attributable to, or arising out of a "wrongful act" or "interrelated wrongful act" that has occurred before the Retroactive Date, if any, shown in the Declarations;

E. Based upon, attributable to, or arising out of the same facts, "wrongful acts" or "interrelated wrongful acts", alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this policy is a renewal or replacement;

F. Based upon, attributable to, or arising out of any demand, suit, or other proceeding against any "insured" which was pending on or existed prior to the applicable Pending or Prior Litigation Date shown in the Declarations, or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such demand, suit, or other proceeding;

G. Based upon, attributable to, or arising out of any actual or alleged failure or omission on the part of any "insured" to effect or maintain insurance;

H. Based upon, attributable to, or arising out of any "wrongful act" committed or allegedly committed by any "organization" or its "insured persons" which becomes a "subsidiary", if such actual or alleged "wrongful act" occurred prior to the date such "organization" became a "subsidiary";

I. Based upon, attributable to, or arising out of any "wrongful act" committed by any "insured person" serving in any position or capacity in any organization other than the "organization" even if the "organization" directed or requested that "insured person" to serve in such other position or capacity;

J. Based upon, attributable to, or arising out of any demand, suit, or other proceedings against any for-profit entity or its insured persons that the "organization" acquired, merged with, or created before or during the "policy period";

K. Brought by or on behalf of the "organization" or any "insured person", in any capacity, except:

1. A "claim" that is a derivative action brought on behalf of the "organization" by one or more security holders who are not "insured persons" and who bring the "claim" without the solicitation, assistance or participation of any "insured person" or the "organization"; or

2. A claim arising out of a "wrongful employment practices act";

L. For an actual or alleged violation of the Employee Retirement Income Security Act of 1974 and its amendments, or similar provisions of any federal, state, local or statutory law or common law;

M. For liability under or breach of any oral, written or implied contract or agreement, or for liability of others assumed by the "organization" under any such contract or agreement, except if:

1. The "organization" would have been liable in the absence of such contract or agreement; or

2. Allegations of liability or breach of such contract or agreement are made in a "claim" arising out of a "wrongful employment practices act";

N. Based upon, attributable to, or arising out of "wrongful acts" resulting from:

1. Publication or pronouncement, including material placed on the Internet or on similar electronic means of communication, concerning any organization or business enterprise or their products or services made by or at the direction of any "insured" with the knowledge of its falsity; or

© ISO Properties, Inc., 2005                       □

**2.** Printing of periodicals, advertising matter, or any or all jobs taken by any "insured" to be printed for a third party when the periodicals, advertising matter or other printing is not within the scope of the "organization's" own activities;

**O.** Based upon, attributable to, or arising out of:

**1.** The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**2.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**3.** A claim or suit brought by or on behalf of any governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants";

including without limitation any "claim" by or on behalf of the "organization" or its securities holders.

A "wrongful act" committed by any "insured person" shall not be imputed to any other "insured person" for purposes of applying the exclusions set forth in this Section **III.**

## SECTION IV – LIMIT OF LIABILITY AND RETENTION

**A.** The most we will pay for all "loss" under Coverage **A,** or Coverage **B,** or Coverage **C,** separately or combined, resulting from all "claims" first made during the "policy period" and the Extended Reporting Period, if exercised, is the aggregate Limit of Liability shown in the Declarations.

If the aggregate Limit of Liability is exhausted by the payment of "loss", we will have no further obligations or liability of any kind under this policy.

**B.** All "claims" arising out of the same "wrongful act" or "interrelated wrongful acts" committed by one or more "insureds" shall be considered a single "claim". Such single "claim" shall be deemed to be first made on the date the initial "claim" arising out of such "wrongful act" or "interrelated wrongful acts" was first made pursuant to Section **VI,** Paragraph **A.1.** or notice of such "wrongful act" or "interrelated wrongful acts" was first reported pursuant to Section **VI,** Paragraph **A.2.**

**C.** Subject to Paragraph **A.** above, we will pay only that amount of "loss" which is in excess of the applicable Retention Amount shown in the Declarations. Such Retention Amount will be borne by the "insureds", uninsured and at their own risk. A single Retention Amount will apply to all "loss" resulting from all "claims" alleging the same "wrongful acts" or "interrelated wrongful acts".

**D.** If "loss" resulting from a single "claim" is covered in whole or in part under more than one Coverage, the applicable Retention Amount will be applied separately to that part of the "loss" covered by each Coverage. However, for any one "claim", the sum of the applied Retention Amounts shall not exceed the largest single applicable Retention Amount.

**E.** "Claims expenses" are part of the "loss" and are not payable by us in addition to the Limit of Liability, but are payable within the Limit of Liability shown in the Declarations, thereby reducing the Limit of Liability shown in the Declarations.

**F.** If the "organization" is permitted or required by law to indemnify an "insured person" for "loss", but fails or refuses, other than for reason of "financial insolvency", then our payment for such "loss" will not be subject to any Retention Amount; and the "organization" shall be responsible for, and shall hold us harmless from, and shall reimburse us for such "loss" up to the applicable Retention Amount as shown in the Declarations. For purposes of this Paragraph, the "organization" resolutions, operating agreement, organizing agreement, articles of organization, certificate of formation, and other provisions providing indemnification to the "insured persons", shall be deemed to provide indemnification for such "loss" to the fullest extent permitted or required by law.

## SECTION V – DEFENSE AND SETTLEMENT

**A.** We shall have the right and duty to defend any "claim" made against any "insured" under Section **I** – Insuring Agreements, even if such "claim" is groundless, false or fraudulent. The "insureds" shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any "claims expenses" without our prior written consent. Only those settlements, stipulated judgments and "claims expenses" which have been consented to by us, will be recoverable as "loss" under the terms and conditions of this policy. Our consent shall not be unreasonably withheld. The "insureds" shall provide us with full cooperation, assistance and all information that would reasonably be required in order to allow us to reach a decision as to such consent.

**B.** We may, upon the written consent of the "insureds", make any settlement of any "claim" which we deem reasonable. If any of the "insureds" withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" plus "claims expenses" incurred as of the date such settlement was proposed in writing by us to the "insureds".

## SECTION VI – CONDITIONS

### A. Notice To Us

1. As a condition precedent to our obligations under this policy, the "insureds" must give us written notice of any "claim" made against any "insured" as soon as practicable, but in no event:

   a. Later than sixty (60) days after the end of the "policy period"; or

   b. After the end of the Extended Reporting Period, if exercised.

2. If during the "policy period" any "insured" becomes aware of a specific "wrongful act" that may reasonably be expected to give rise to a "claim" against any "insured", and during the "policy period" the "insureds" give written notice to us of:

   a. A description of the specific "wrongful act", including all relevant dates;

   b. The names of the persons involved in the specific "wrongful act", including names of the potential claimants;

   c. Particulars as to the reasons for anticipating a "claim" which may result from such specific "wrongful act";

   d. The nature of the alleged or potential damages arising from such specific "wrongful act"; and

   e. The circumstances by which the "insureds" first became aware of the specific "wrongful act";

   then any "claim" subsequently made against any "insured" arising out of such specific "wrongful act" shall be deemed under this policy to be a "claim" made during the "policy period" in which such specific "wrongful act" was first reported to us.

### B. Extended Reporting Period

1. An Extended Reporting Period is available by endorsement and for the premium shown in the Declarations, if this policy is cancelled or not renewed by either you or us, unless:

   a. We cancel this policy for non-payment of premium; or

   b. You fail to pay any amounts owed us.

2. In order to obtain an Extended Reporting Period, you must give us a written request for the Extended Reporting Period Endorsement together with the full payment of the additional premium for the Extended Reporting Period Endorsement as shown in the Declarations within thirty (30) days after the end of the "policy period".

3. The Extended Reporting Period does not extend the "policy period" or change the scope of coverage provided. It applies only to "claims" to which the following applies:

   a. The "claim" is first made and reported to us before the end of the Extended Reporting Period; and

   b. The "claim" arose out of a "wrongful act" which occurred on or after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".

4. There is no separate or additional Limit of Liability for the Extended Reporting Period. The Limit of Liability available during the Extended Reporting Period, if purchased, shall be the remaining amount, if any, of the aggregate Limit of Liability available at the time this policy was cancelled or non-renewed.

5. Once in effect, the Extended Reporting Period may not be cancelled. The premium for the Extended Reporting Period Endorsement will be deemed fully earned as of the date it is purchased.

### C. Assistance And Cooperation

The "insureds" shall, as a condition precedent to their rights under this policy, give to us all information, assistance and cooperation as we may reasonably require.

### D. Subrogation

With respect to any payments made under this policy on behalf of any "insured", we shall be subrogated to the rights of recovery of such "insured", to the extent of those payments. The "insureds" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the name of the "insureds". Any recoveries, less the cost of obtaining them, will be distributed as follows:

1. To the "insured persons" and/or the "organization", until they are reimbursed for any "loss" that they sustain that exceeds the sum of the Limit of Liability and the Retention Amount, if any;

    © ISO Properties, Inc., 2005       □

2. Then to us, until we are reimbursed for the payment made under this policy; and

3. Then to the "insured persons" and/or the "organization", until they are reimbursed for that part of the payment equal to the Retention Amount, if any.

### E. Other Insurance

If any "loss" resulting from any "claim" is insured by any other valid policy, then this policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this policy by reference in such other policy to this policy's policy number.

### F. Assignment

No change in, modification of, or assignment of interest under this policy will be effective without our written consent.

### G. Action Against Us

No action shall be taken against us unless, as a condition precedent, there shall have been full compliance with all of the terms and conditions of this policy.

No person or organization shall have the right under this policy to join us as a party to any action against any "insured" to determine the liability of any "insured", nor shall we be impleaded by the "insureds" or their legal representatives.

Bankruptcy or insolvency of the "organization", or of any "insured person" or of their estates shall not relieve us of any of our obligations under this policy.

### H. Representation And Severability

The "insureds" represent that all information and statements contained in the "application" are true, accurate and complete. All such information and statements are the basis for our issuing this policy and shall be considered as incorporated into and constitute a part of this policy. In the event that the "application" contains any misrepresentation or misstatement of a material fact, this policy shall not afford coverage to any "insured" who knew of such misrepresentation or misstatement.

### I. Changes In Exposure

#### 1. Acquisition Or Creation Of Another Not-For-Profit Organization

If before or during the "policy period" the "organization":

a. Acquires or creates another not-for-profit entity which as a result of such acquisition or creation becomes a "subsidiary";

b. Acquires any not-for-profit entity by merger into or consolidation with the "organization";

c. Acquires all or substantially all of the assets of another not-for-profit entity; or

d. Acquires voting rights representing the present right to vote for election or to appoint more than fifty percent (50%) of the directors or trustees of a not-for-profit entity;

such entity and its "insured persons" will be covered under this policy but only with respect to "wrongful acts" which occurred after such acquisition or creation. If the annual revenues for the most recent fiscal year of any acquired entity exceed twenty percent (20%) of the total assets of the "named organization" as reflected in the "named organization's" most recent audited consolidated financial statements prior to such acquisition, the "named organization", as a condition precedent to coverage for any new "insured", must give written notice of such acquisition or assumption to us as soon as practicable but in no event more than ninety (90) days after the effective date of such acquisition or assumption, together with such information that we may require, and must pay any additional premium required by us.

#### 2. Acquisition Of Named Organization

If during the "policy period" the "named organization" merges into or consolidates with another organization, such that the "named organization" is not the surviving organization; or another organization, or person or group of organizations and/or persons acting in concert acquires the right to elect, appoint or designate at least fifty percent (50%) of the directors or trustees of the "named organization", then coverage under this policy will continue until the end of the "policy period", but only with respect to "claims" arising out of "wrongful acts" which occurred prior to such merger, consolidation or acquisition.

The full annual premium for the "policy period" will be deemed fully earned immediately upon the occurrence of such merger, consolidation or acquisition of the "named organization".

The "named organization" must give written notice of such merger, consolidation or acquisition to us as soon as practicable, together with such information as we may reasonably require.

 © ISO Properties, Inc., 2005 □

### 3. Cessation Of Subsidiaries

If before or during the "policy period" an organization ceases to be a "subsidiary", coverage with respect to such "subsidiary" and its "insured persons" will continue until the end of the "policy period" but only with respect to "claims" arising out of "wrongful acts" occurring prior to the date such organization ceased to be a "subsidiary".

### 4. Change In Named Organization Status To For-Profit

If the "named organization":

a. Changes its status and/or form of organization to become a for-profit entity; or

b. The "named organization" is deemed to be a for-profit entity by any governmental authority;

then coverage with respect to such "named organization" and its "insured persons" will continue until the end of the "policy period" but only with respect to "claims" arising out of "wrongful acts" occurring prior to the date of such change in status and/or form of organization.

The full annual premium for the "policy period" will be deemed fully earned immediately upon the effective date of such change in status and/or form of organization.

## J. Territory And Valuation

1. This policy covers "wrongful acts" which occurred or "claims" made anywhere in the world.

2. All premiums, Limits of Liability, Retention Amounts, "loss" and any other monetary amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another component of "loss" under this policy is expressed in any currency other than United States of America dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

## SECTION VII – DEFINITIONS

A. "Application" means all signed applications for this policy, including any attachments and other materials submitted in conjunction with the signed application(s).

B. "Claim" means:

1. A written demand for monetary damages against any "insured";

2. A civil proceeding against any "insured" commenced by the service of a complaint or similar pleading;

3. A criminal proceeding against any "insured person" commenced by a return of an indictment; or

4. A formal administrative or regulatory proceeding against any "insured" commenced by the filing of a notice of charges, formal investigative order or similar document;

for a "wrongful act", including any appeal therefrom.

C. "Claims expenses" means that part of a "loss" consisting of reasonable and necessary fees (including attorneys' and experts' fees), expenses incurred in the defense or appeal of a "claim", and the premium for appeal, attachment or similar bonds (without any obligation on our part to provide such bonds), excluding the wages, salaries, benefits or expenses of any "insured person".

D. "Financial insolvency" means the status of the "organization" resulting from:

1. The appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the "organization"; or

2. The "organization" becoming a debtor in possession.

E. "Insured" means the "organization" and the "insured persons".

F. "Insured person" means any former, present or future director, officer, trustee, employee, volunteer or member of the staff, faculty or any duly constituted committee of the "organization".

G. "Interrelated wrongful act" means all causally connected "wrongful acts".

H. "Loss" means "claims expenses", compensatory damages, settlement amounts, legal fees and costs awarded pursuant to judgments. "Loss" does not include civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, or matters that are uninsurable pursuant to applicable law.

I. "Named organization" means the not-for-profit organization named in the Declarations as the named organization.

J. "Organization" means the "named organization" and/or any "subsidiary".

K. "Policy period" means the period of time from the inception date of this policy shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

    © ISO Properties, Inc., 2005    MP 00 06 10 06    □

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Subsidiary" means any organization:

1. Which qualifies as a not-for-profit organization under the Internal Revenue Code, other than a political committee organized pursuant to Section 432 of the Federal Election Campaign Act of 1971 and its amendments, or exempt from federal income tax; and

2. For which the "named organization" controls rights representing the present right to elect or to appoint more than fifty percent (50%) of the directors or trustees of such not-for-profit organization:

   a. On or before the effective date of this policy; or

   b. After the effective date of this policy by reason of being created or acquired by the "organization" after such date.

**N.** "Wrongful act" includes "wrongful employment practices acts" and means:

1. With respect to the "insured persons", any actual or alleged error, misstatement, misleading statement, neglect or breach of duty, omission or act by the "insured persons" in their insured position or capacity for the "organization"; or any matter claimed against them solely by reason of their serving in such insured position or capacity. This does not apply to a position or capacity in any entity other than the "organization", even if the "organization" directed or requested the "insured person" to serve in such other position or capacity.

2. With respect to the "organization", any actual or alleged error, misstatement, misleading statement, neglect or breach of duty, omission or act by the "organization".

**O.** "Wrongful employment practices act" means any actual or alleged:

1. Wrongful dismissal, discharge or termination of employment;

2. Breach of any implied employment contract;

3. Employment-related misrepresentation;

4. Violation of any federal, state, or local statute, regulation, ordinance, or common law concerning employment or discrimination in employment;

5. Sexual harassment (as that term is defined by the federal Equal Employment Opportunity Commission) or other illegal workplace harassment;

6. Wrongful failure to employ or promote;

7. Wrongful reference, discipline or deprivation of a career opportunity;

8. Failure to grant tenure or adopt adequate workplace or employment policies and procedures; or

9. Illegal retaliatory treatment.

 © ISO Properties, Inc., 2005