**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| ROSE HILL CUMBERLAND PRESBYTERIAN CHURCH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:23-cv-335-LPR |
| | ) | |
| vs. | ) | |
| | ) | |
| CHURCH MUTUAL INSURANCE COMPANY, S.I. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CHURCH MUTUAL'S BRIEF REGARDING WHETHER PLAINTIFF'S CLAIM FOR INDEMNIFICATION IS RIPE FOR ADJUDICATION**

COMES NOW Defendant **Church Mutual Insurance Company, S.I**. ("Church Mutual"), and for its brief providing additional information regarding whether Plaintiff Rose Hill Cumberland Presbyterian Church's ("Rose Hill's") claim for indemnification is ripe or seeks an impermissible advisory opinion, per this Court's request, states:

**A. Introduction**

This is an action in which Rose Hill is seeking a declaratory judgment holding that Church Mutual owes defense and indemnity coverage in relation to repair costs following a water event on its property—same purportedly occurring on or about July 17, 2022—that allegedly resulted in "property damage"[1] to its church building's foyer and sanctuary. On July 27th, 2022, Rose Hill entered into a written contract with Service Restoration, Inc. ("Service Restoration") for the purpose of performing water mitigation and mold abatement efforts related thereto. Service Restoration has subsequently brought a separate action against Rose Hill—styled *Service*

[1] As defined within the Policy-at-issue.



#32353142 v1

*Restoration Inc. v. Rose Hill Cumberland Presbyterian Church*, Cause No. CV-23-128-3 (the "Service Restoration Lawsuit")—for breach of this contract, seeking payment for its services rendered. As a result of the Service Restoration Lawsuit, Rose Hill is seeking a defense from Church Mutual for this ancillary-litigation, arguing in its Amended Complaint and separate "Motion to Order Defendant to Defend Plaintiff[2]" that Rose Hill and Church Mutual had a "legally enforceable contract" which presumably is the insurance policy—and not the restoration contract—that resides at the heart of this lawsuit. Moreover, Plaintiff argues in its Amended Complaint that it is owed $139,280.55 towards its contract with Service Restoration and that Church Mutual has allegedly "refused to pay the restoration company or provide Plaintiff a defense to the lien filed" against it by Service Restoration. *See Amended Petition*, at ¶ 8-9.

At this juncture, Rose Hill's alleged obligations to Service Restoration are being adjudicated in an entirely separate action before an entirely distinct court. The nature and extent of Rose Hill's "damages" remain illusory at best, with Rose Hill even contesting Service Restoration's charges as "excessive" and "unjustifi[able]" in its Answer associated with the Service Restoration Lawsuit, same incorporated herein as **Exhibit A**. *See Exhibit A,* ¶ 16. In summary, Rose Hill currently finds itself seeking indemnity coverage vis-à-vis a third-party claim, the outcome of which has yet to be determined, leaving it utterly bereft of evidence to substantiate its damages and prayer for relief in this action. Rose Hill thereby places this Court in the unenviable position of predicting an uncertain outcome in a separate state court action and subsequently applying that judicial prognostication to the applicable Policy's provisions in order to determine Church Mutual's indemnity obligations. If this Court were to hold in Plaintiffs' favor and issue a

[2] Our Brief in Opposition to this pleading is separately filed, wherein we relay a more complete argument against coverage due to the policy's insuring agreement's failure to be triggered as well as applicable exclusionary language that separately applies to limit or preclude coverage in its entirety.

determination regarding Church Mutual's *indemnity*[3] obligations, it would be inadvertently issuing an "advisory opinion," which is overwhelmingly considered forbidden amongst Arkansas state and federal courts. Plaintiff cannot impress this obligation upon the Court, when the issue of Church Mutual's indemnity obligations is quite simply not factually or legally ripe for determination. Thus, Church Mutual respectfully requests that this court refrain from issuing a proscribed "advisory opinion" with regard to this issue unless and until the claim becomes ripe for adjudication.

**B. Argument**

Arkansas federal courts, as well as the United States Court of Appeals for the Eighth Circuit, have repeatedly opined that they do not—and cannot—render advisory opinions. *See e.g. Osborne v. Farmers New World Life Ins. Co.*, No. 4:08CV000250 BSM, 2009 WL 1405460, at *1 (E.D. Ark. May 19, 2009); *See also Allstate Ins. Co. v. Bell*, No. 4:14-CV-00076-KGB, 2014 WL 4929466, at *2 (E.D. Ark. Sept. 30, 2014); *See also Vorbeck v. Schnicker*, 660 F.2d 1260, 1266. In *Vorbeck*, the Eighth Circuit explained that "under the dictates of Article III of the United States Constitution, we may not issue an advisory opinion in the absence of a definite and concrete controversy. 'Such opinions, such advanced expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests, we have consistently refused to give.'" *See Vorbeck*, 660 F.2d 1260 (citing

[3] At this time, Church Mutual concedes that the issue of its alleged *defense* obligations to Plaintiff are ripe for adjudication, and hereby requests a **bench trial** to determine this issue.

to *United Stated v. Fruehauf*, 365 U.S. 146, 157, 81 S.Ct. 547, 554, 5 L.Ed.2d 476 (1961); *Cass County v. United States*, 570 F.2d 737, 739-41 (8th Cit. 1978)).

The United States District Court for the Eastern District of Arkansas—in a similar insurance dispute involving a declaratory judgment—has explained that "Article III [of the United States Constitution] limits the federal courts to deciding 'Cases' and 'Controversies,' […] and thereby prohibits the district court from issuing advisory opinions. There must be a concrete dispute between parties having adverse legal interests, and the declaratory judgment plaintiff must seek 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts**.**' 'As for policy considerations, courts avoid resolving disputes based on hypothetical facts because to do so would be a poor use of scarce judicial resources.'" *See Allstate Ins. Co. v. Bell*, No. 4:14-CV-00076-KGB, 2014 WL 4929466 at *2 (E.D. Ark. Sept. 30, 2014) (Internal citations omitted). The District Court further invoked the ripeness doctrine's applicability to declaratory judgment actions, stating that "consistent with Article III, the Declaratory Judgment Action is limited to cases 'of actual controversy'" and that "'before a claim is ripe for adjudication, however, the plaintiff must face an injury that is 'certainly impending.' 'Whether the factual basis of a declaratory judgment action is hypothetical—or more aptly, too hypothetical—for purposes of the ripeness doctrine (and concomitantly Article III) is a question of degree.'" *Id.*

This proscription against advisory opinions is by no means limited to the federal judicial system; indeed, Arkansas state courts similarly refuse to administer advisory opinions as a general principle. *See e.g. Bentonville Sch. Dist. V. Sitton*, 2022 Ark. 80, 5, 643 S.W.3d 763, 768 (2022); *Walker v. McCuen*, 318 Ark. 508, 516, 886 S.W.2d 577, 582 (1994); *Allison v. Lee Cnty. Election Comm'n*, 359 Ark. 388, 389, 198 S.W.3d 113, 114 (2004); *Arkansas Diagnostic Ctr., P.A. v.*

*Tahiri*, 370 Ark. 157, 168, 257 S.W.3d 884, 893 (2007); *Kinchen v. Wilkins*, 367 Ark. 71, 238 S.W.3d 94 (2006); *Arkansas River Educ. Servs. v. Modacure*, 371 Ark. 466, 471, 267 S.W.3d 595, 598 (2007) ("The insurance issue has not yet been decided by the circuit court and any discussion or analysis by this court would be premature and would constitute an advisory opinion, which this court will not issue").

Under the present set of factual circumstances, the basis for Rose Hill's declaratory judgment action against Church Mutual, particularly with respect to its demand for indemnity coverage related to its independently contracted Service Restoration agreement, is *entirely* "too hypothetical" to be ripe for adjudication. *See Bell*, 2014 WL 4929466 at *2; *See also Pub. Water Supply Dist. No. 8 of Clay Cnty., Mo. v. City of Kearney, Mo.*, 401 F.3d 930, 932 (8th Cir. 2005). Indeed, Rose Hill's claim for coverage does not exist in even its most nascent form, given the fact that the religious institution is currently embroiled in separate litigation regarding the nature and extent of damages that it allegedly owes to Service Restoration and is simultaneously claiming is owed to *it* in this action. As alluded to above, Rose Hill attempts to proverbially have its litigious cake and eat it too by characterizing those same damages that Service Restoration seeks from it as "excessive" and "unjustifiable," while at the same time demanding that its insurer offer the self-same amount of compensation in *this* litigation. *See Exhibit A*, ¶ 16. Both of Rose Hill's allegations simply cannot be true in this case.

In short, Rose Hill's demand for indemnification is not ripe for adjudication, given that there has not yet been—and will not be—a "concrete dispute" involving a "precisely framed" question between itself and Church Hill unless and until the Service Restoration Lawsuit determines liability of Rose Hill and the amount in controversy as an *initial* matter. *See Vorbeck*, 660 F.2d 1260; *See Bell*, 2014 WL 4929466 at *2. At that point in time, Church Mutual can

meaningfully evaluate its indemnity obligations for Rose Hill's claim and issue a determination vis-à-vis coverage, perhaps obviating the need for courtroom intervention/resources entirely. Rose Hill wishes to breeze past this step, and seemingly expects this Court to follow hastily behind it. In this regard, Rose Hill is undoubtedly and impermissibly asking this Court to issue an advisory opinion for coverage for something yet to occur – an adverse judgment against Rose Hill and in favor of Service Restoration (which is highly contested by Rose Hill in the underlying case currently). In contrast, Church Mutual humbly requests that this Court continue to follow the Constitution, as well as its own time-honored precedent, and refuse to consume an unripe indemnity argument.

**C. Conclusion**

For the reasons set forth above, Defendant **Church Mutual Insurance Company, S.I**., respectfully requests that this Court stay any claims by Rose Hill seeking indemnity coverage against Church Mutual for the Rose Hill/Service Restoration Lawsuit until there is a final disposition on the merits of that case and for such other relief the Court deems just and proper.

Respectfully Submitted,

**WATTERS WOLF BUB & HANSMANN, LLC**

*/s/ Timothy J. Wolf*
Timothy J. Wolf, #2009230 (AR)
John F. Cooney, (Admitted Pro Hac Vice)
600 Kellwood Parkway, Suite 120
St. Louis, Missouri 63017
(636) 798-0570 Telephone
(636) 798-0693 Facsimile
twolf@wwbhlaw.com
jfcooney@wwbhlaw.com
*Attorney for Defendant Church Mutual Insurance Company*

**CERTIFICATE OF SERVICE**

The undersigned certified that a true and correct copy of the foregoing was via electronic mail this 26th day of November 2024, upon the following:

John Ogles
Ogles Law Firm, P.A.
200 S. Jeff Davis
Jacksonville, AR 72078
jogles@aol.com
*Attorney for Plaintiff*

*/s/ Timothy J. Wolf*